# EXHIBIT A

| | |
|---|---|
| **From:** | Ethan Corey |
| **To:** | Ethan Corey |
| **Cc:** | FOIAOJP |
| **Subject:** | Re: FOIA Request (10/10/2019): DCRA Data Collection Activities |
| **Date:** | Thursday, October 10, 2019 3:19:31 PM |

AMENDMENT TO MY REQUEST:

I neglected to provide a mailing address in my request. Though I anticipate that the requested records are all digital, if you need to contact me by mail, my address is:

Ethan Corey
1 Lawrence Dr, Apt. 602
Princeton, NJ 08540

On Thu, Oct 10, 2019 at 3:14 PM Ethan Corey <ethan.corey@theappeal.org> wrote:

To Whom It May Concern:

Pursuant to the Freedom of Information Act, I hereby request the following records:

-The number of jail deaths reported (and/or unique CJ-9 forms submitted) by each jail facility participating in the Mortality in Correctional Institutions reporting program (f.k.a. the Death in Custody Reporting Program) each year from 2000 to 2018, inclusive.

**Locating the Records:**

Record-level data on jail deaths reported by local jails from 2000-2013 are currently available in the National Archive of Criminal Justice Data, in the restricted-access data file ICPSR 34286 (https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/34286/summary). While public access to the full data file is restricted because of the personally-identifiable information it contains, Section 12 of the OPEN Government Act of 2007, Pub. L. No. 110-175, requires that agencies provide any reasonably segregable, non-exempt information contained in documents that are responsive to FOIA requests. At a minimum, the data recorded in the following columns contained in the data-file are clearly segregable, non-exempt information:  YEAR, STATE, FACLOC, FACNAME_J, CAUSECOL, FACID, PLACE2000_2013. I hereby request the data from those columns and any other non-exempt information contained in the ICPSR 34286 data file.

Additionally, CJ-9 forms are submitted by local facilities on an ongoing basis each year through an online portal maintained by BJS contractor RTI International (https://bjsmci.rti.org/). As such, the number of deaths reported/CJ-9 forms submitted by each facility is likely in the possession of RTI International. Because RTI International collects this data as part of BJS-funded research, the data are required to be disclosed under the Data Access Act of 1999 and OMB Circular A-110 Section 36(d)(1). If any portion of this data is determined to be exempt from disclosure for any reason, I request you provide any reasonably segregable, non-exempt information contained in the responsive records.

**Further Notes:**

I am making this request as a representative of the news media/press (TheAppeal.org), and

this request is made in the process of news gathering and not for commercial usage. The requested documents will be made available to the general public.

In the event that there are fees, I would be grateful if you would inform me of the total charges in advance of fulfilling my request. I would prefer the request be filled electronically, by e-mail attachment if available or DVD-ROM if not.

Thank you in advance for your anticipated cooperation in this matter. I look forward to receiving your response to this request within 20 business days, as the statute requires. If you have any questions in the meantime, please email me here or give me a call at (917) 794-4583.

Sincerely,

Ethan Corey


--
Ethan Corey (he/him)
Senior Fact Checker & Researcher
(917) 794-4583




--
Ethan Corey (he/him)
Senior Fact Checker & Researcher
(917) 794-4583



# EXHIBIT B

**U.S. Department of Justice**

Office of Justice Programs

Office of the General Counsel

_____

*Washington, D.C.  20531*

October 28, 2019

**VIA Electronic Mail**
ethan.corey@theappeal.org

Ethan Corey
Senior Fact Checker & Researcher
The Appeal
1 Lawrence Drive, Apt 602
Princeton, NJ  08540

Re:     OJP FOIA No. 20-FOIA-00016

Dear Mr. Corey:

This is to acknowledge receipt of your October 10, 2019, Freedom of Information Act/Privacy Act (FOIA/PA) request, which was received in the Office of Justice Programs (OJP), Office of the General Counsel, on the same date.  A copy of your request is attached for your convenience.

The records you seek require a search in another OJP office and so your request falls within "unusual circumstances."  See 5 U.S.C. § 552(a)(6)(B)(i)-(iii).  Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute.  We have not yet completed a search to determine whether there are records within the scope of your request.  The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located.  For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited.  Each request is then handled on a first-in, first-out basis in relation to other requests in the same track.  Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer.  At this time, your request has been assigned to the complex track.  You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

In addition, we note that you would like to be informed of the total charges in advance of fulfilling your request.

Your request is assigned to a member of our FOIA staff for processing.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the Office of the General Counsel at (202) 307-6235, via e-mail at FOIAOJP@usdoj.gov, or you may write to this office at:

US DOJ, Office of Justice Programs
Office of the General Counsel
810 7th Street, NW, Room 5400
Washington, D.C. 20531
Attn: FOIA

Please include the above-referenced OJP FOIA number. Lastly, you may contact our FOIA Public Liaison at the above telephone number to discuss any aspect of your request.

Thank you,


FOIAOJP

# EXHIBIT C



**U.S. Department of Justice**

Office of Justice Programs

Office of the General Counsel

_____

*Washington, D.C.  20531*

March 31, 2020

**VIA Electronic Mail**
ethancorey@theappeal.org

Ethan Corey
Senior Fact Checker & Researcher
The Appeal
1 Lawrence Drive, Apt. 602
Princeton, NJ  08450

Re:     OJP FOIA No. 20-FOIA-00016

Dear Mr. Corey:

This letter responds to your October 10, 2019, Freedom of Information Act/Privacy Act (FOIA/PA) request, which was received in the Office of Justice Programs (OJP), Office of the General Counsel, on the same date.  A copy of your request is attached for your convenience.

Please be advised that a search has been conducted in OJP and records consisting of 182,611 pages were located that are responsive to your request. After carefully reviewing the records, I have determined that 182,611 pages are exempt from disclosure pursuant to exemption (b)(3) of the Freedom of Information Act, 5 U.S.C. § 552 (2018). Exemption (b)(3) authorizes an agency to withhold information prohibited from disclosure by another statute.  This provision concerns matters specifically exempted from release by statute (in this instance, 34 U.S.C. §§ 10134 and 10231, which pertains to research or statistical information collected by the Bureau of Justice Statistics and must remain confidential). This completes the processing of your request by OJP.

You may contact a member of our FOIA staff at (202) 307-6235, via e-mail at FOIAOJP@usdoj.gov as well as our FOIA Public Liaison, for any further assistance and to discuss any aspect of your request at:

> US DOJ, Office of Justice Programs
> Office of the General Counsel
> 810 7th Street, NW, Room 5400
> Washington, D.C.  20531
> Attn:  FOIA

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information

Page 2

Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College
Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at
1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with OJP's determination in response to this request, you may
administratively appeal by writing to the Director, Office of Information Policy (OIP), United
States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may
submit an appeal through OIP's FOIA STAR portal by creating an account following the
instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal.
Your appeal must be postmarked or electronically transmitted within 90 calendar days of the date
of my response to your request. If you submit your appeal by mail, both the letter and the
envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

p.p. *Chandria Slaughter*

Rafael A. Madan
General Counsel

Attachment

# EXHIBIT D

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 1

Director, Office of Information Policy (OIP)
United States Department of Justice
441 G Street, NW, 6th Floor
Washington, D.C. 20530

Dear FOIA Appeals Officer:

This is a timely administrative appeal of the adverse determination of the United States Department of Justice's Office of Justice Programs ("OJP") on my October 10, 2019, Freedom of Information Act ("FOIA") request, No. 20-FOIA-00016. Specifically, I appeal the agency's use of Exemption 3; its failure to segregate non-exempt material from responsive records; and its failure to meet its burden under FOIA's "foreseeable harm" standard.

## Procedural History

On October 10, 2019, I submitted a FOIA request to the OJP's Office of the General Counsel, seeking access to records concerning "the number of jail deaths reported (and/or unique CJ-9 forms submitted) by each jail facility participating in the Mortality in Correctional Institutions reporting program (f.k.a. the Death in Custody Reporting Program) each year from 2000 to 2018, inclusive."[1] I expected the requested records would include data files from the National Archive of Criminal Justice Data ("NACJD"), CJ-9 forms submitted by jail administrators to the Bureau of Justice Statistics ("BJS"), and/or annual CJ-9A summary forms submitted by jail administrators to the BJS.[2] I requested a fee waiver as a representative of the news media.[3]

By letter, dated March 31, 2020, OJP's Office of the General Counsel provided its final determination, indicating that it had located 182,611 pages of records responsive to my FOIA request.[4] The letter stated that all 182,611 pages of the records were exempt from disclosure pursuant to exemption (b)(3) of the Freedom of Information Act, 5 U.S.C. § 552 (2018), which allows for the withholding of information specifically exempted from release by another statute.[5] This timely appeal follows the adverse determination regarding my request by the OJP Office of the General Counsel.

## Argument

### I.     Exemption 3 does not allow the withholding of the records at issue.

---

1. Letter from Ethan Corey to OJP Office of the General Counsel, October 10, 2019, at 2 (attached as Exhibit 1).
2. *Id.* at 3–4.
3. *Id.* at 5. I am a senior fact checker and researcher for the Appeal, a national, non-profit news agency that covers the criminal-legal system. *See* https://theappeal.org/about/.
4. Letter from Chandria Slaughter, OJP Office of the General Counsel, March 31, 2020, at 2 (attached as Exhibit 2).
5. *Id.*

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 2

Exemption 3 protects information that is "specifically exempted from disclosure by statute," provided that the statute either (1) requires the information "be withheld . . . in such a manner as to leave no discretion on the issue" or (2) "establishes particular criteria for withholding or refers to particular types of matters to be withheld."[6] In this case, the agency cites 34 U.S.C. §§ 10134 and 10231, which state in full, respectively:

Data collected by the Bureau [of Justice Statistics] shall be used only for statistical or research purposes, and shall be gathered in a manner that precludes their use for law enforcement or any purpose relating to a private person or public agency other than statistical or research purposes.[7]

And:

No officer or employee of the Federal Government, and no recipient of assistance under the provisions of this chapter shall use or reveal any research or statistical information furnished under this chapter by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with this chapter. Such information and copies thereof shall be immune from legal process, and shall not, without the consent of the person furnishing such information, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings.[8]

OJP has failed to meet its burden in demonstrating the applicability of either 34 U.S.C. § 10134 ("Section 10134") or 34 U.S.C. § 10231 ("Section 10231"). In the case of Section 10134, there is no evidence that the statute prohibits the disclosure of jail mortality data aggregated at the jurisdiction level; BJS currently makes a wide variety of jurisdiction-level data available to the public, much of it collected under the same authority as the jail mortality data.[9] As for Section 10231, the statute only prohibits the disclosure of "information . . . identifiable to a specific private person"; the records I requested either (1) contain no information identifiable to a specific private person or (2) to the extent they do contain such information, the records contain reasonably segregable, non-exempt information responsive to my request.

### A.  Section 10134 does not apply to data aggregated at the jurisdiction level.

Section 10134 restricts the use of data collected by BJS to "statistical or research purposes." This restriction prohibits the agency from using its data for non-statistical purposes, such as enforcing federal laws or regulations, but it does not bar BJS from sharing much of the data it collects with the public. The relevant question, therefore, is whether or not the publication of data aggregated at the local jurisdiction level is among the "statistical or research purposes"

---

6. 5 U.S.C. § 552(b)(3).
7. 34 U.S.C. § 10134.
8. 34 U.S.C. § 10231.
9. *See, e.g.*, the "Deaths in Custody Reporting Program: Jail Populations, 2000–2013 (ICPSR 36560)" data collection, publicly available at https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/36560/summary.

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 3

for which BJS is authorized to use its data. BJS's consistent practice of publishing other data at the jurisdiction level, including data collected as part of the Mortality in Correctional Institutions data collection program, makes it clear that Section 10134 does not bar the release of the jail mortality data records I requested.

The BJS's Data Protection Guidelines adopt the definition of "statistical purpose" as defined in Section 502(9)(A) of the E-Government Act of 2002, which defines the term as "the description, estimation, or analysis of the characteristics of groups, without identifying the individuals or organizations that comprise such groups."[10] As evidenced by the BJS's own practices, this definition does not prohibit the release of data aggregated at the jurisdiction level.

As part of the agency's mission to support research on the criminal-justice system, the BJS archives all data collected by the agency at NACJD. Pursuant to the agency's Data Protection Guidelines, "[d]ata that do not contain personally identifiable information are available for public access download."[11] NACJD already makes several data collections containing data aggregated at the individual jail jurisdiction level available for public access download.[12] In particular, the "Deaths in Custody Reporting Program: Jail Populations, 2000-2013 (ICPSR 36560)" data collection includes "year-end collections of population and admissions data from all jail jurisdictions nationwide," all aggregated at the jurisdiction level.[13] In fact, all of this data is collected pursuant to the agency's Mortality in Correctional Institutions reporting program, and most of this information is collected via the annual CJ-9A summary forms submitted by each jail jurisdiction to the BJS.[14] Section 10134 makes no distinction between different kinds of jurisdiction-level data: If the total number of correctional officers employed at each jail jurisdiction is subject to disclosure, then the total number of deaths at each jail jurisdiction is subject to disclosure as well.

---

10. Bureau of Justice Statistics Data Protection Guidelines, April 26, 2018, at 7 (available at https://www.bjs.gov/content/pub/pdf/BJS_Data_Protection_Guidelines.pdf); E-Government Act of 2002, Public Law 107-347, Section 502(9)(A).

11. *Id.* at 22.

12. In addition to the "Deaths in Custody Reporting Program: Jail Populations, 2000–2013 (ICPSR 36560)" data collection mentioned below, NACJD publishes the "Annual Survey of Jails" data collection, which includes jurisdiction-level data from roughly 900 jurisdictions each year (publicly available at https://www.icpsr.umich.edu/web/ICPSR/series/7). Additionally, the BJS's practice of making jurisdiction-level data publicly available extends beyond jails. See, for instance, the "Directory of Law Enforcement Agencies, 1996: [United States] (ICPSR 2260)" data collection, which includes "data on the number of sworn and nonsworn personnel" employed by "49 primary state law enforcement agencies and all sheriffs' departments, local police departments, and special police agencies (state or local) that are publicly funded and employ at least one sworn officer with general arrest powers," (publicly available at https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/2260/version/1).

13. "Deaths in Custody Reporting Program: Jail Populations, 2000–2013 (ICPSR 36560)" data collection, publicly available at https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/36560/summary.

14. Codebook for "Deaths in Custody Reporting Program: Jail Populations, 2000–2013 (ICPSR 36560)" (available for download at https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/36560/datadocumentation#).

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 4

In interpreting FOIA Exemption 3, courts have held that categories of records released by agencies in an "inconsistent manner" are generally not exempt from disclosure under Exemption 3.[15] The BJS's practice of releasing some jurisdiction-level data to the public therefore creates a presumption that Section 10134 does not prohibit the disclosure of jurisdiction-level data. In fact, if Section 10134 did prohibit such disclosure, the BJS would be in routine violation of the law, as it publishes jurisdiction-level data for more than 3,000 jail jurisdictions across the United States on an annual basis.[16]

To qualify as an Exemption 3 withholding statute, the statute must (1) require the information "be withheld . . . in such a manner as to leave no discretion on the issue" or (2) establish "particular criteria for withholding" or refer "to particular types of matters to be withheld."[17] The BJS's practice of releasing jurisdiction-level data gathered using the same CJ-9A forms I have requested indicates that the agency does have discretion on the issue, and the "particular criteria for withholding" or "particular types of matters to be withheld" outlined by Section 10134 provide no indication that mortality data aggregated at the jurisdiction level would be exempt from disclosure while other demographic data aggregated at the same jurisdiction level are not.

Therefore, to the extent that records responsive to my request contain information aggregated at the jurisdiction level, they do not qualify for exemption under Section 10134.

**B. Section 10231 only applies to personally identifiable information.**

A plain reading of the statute makes it clear that it applies only to "research or statistical information furnished under this chapter by any person *and identifiable to any specific private person* [emphasis added]."[18] Information that is *not* identifiable to any specific private person, therefore, is not covered by the statute. Because my request asked for records containing information aggregated at the jurisdiction level, Section 10231 does not apply.

Importantly, jail jurisdictions do not qualify as "private person[s]" for the purpose of Section 10231. Federal regulations governing the confidentiality of statistical information collected by executive-branch statistical agencies define "person" as including "individuals, organized groups of individuals, societies, associations, firms, partnerships, business trusts, legal

---

15. For instance, the Southern District of Ohio has held FBI rap sheets are subject to FOIA, because Exemption 3 does not cover statutes that give agencies discretion over the release of records. The court held that the FBI's past release of rap sheets to the public indicated that "the FBI had exercised such discretion by its inconsistent manner of releasing rap sheets to the public." (Reporters Comm., 816 F.2d at 736 n.9; see also Dayton Newspapers, Inc. v. FBI, S.D. Ohio Feb. 9, 1993.)
16. Both the Annual Survey of Jails and the Deaths in Custody Reporting Program collect and publish jurisdiction-level data on an annual basis. See, *supra*, notes 12 and 13.
17. 5 U.S.C. § 552(b)(3).
18. 34 U.S.C. § 10231.

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 5

representatives, companies, joint stock companies, and corporations."[19] Notably, this definition does not include public agencies or local government jurisdictions. Additionally, Section 10134 itself distinguishes between "private person[s]" and "public agenc[ies]." If Congress had intended Section 10231 to apply to public agencies or local government jurisdictions, they would have stated so explicitly.

Therefore, any records responsive to my request that contain information aggregated at the jurisdiction level that is not identifiable to any specific private person are not exempt from disclosure under Section 10231.

## II.     The OJP has failed to segregate non-exempt information from responsive records.

Under the OPEN Government Act of 2007, agencies must provide any reasonably segregable, non-exempt information contained in documents that are responsive to FOIA requests.[20] Assuming without conceding that information contained in some or all of the records I requested may include exempt, personally identifiable details, those records also contain reasonably segregable, non-exempt information that must be disclosed in response to my request.

Even in cases where full disclosure of a document or category of documents is specifically prohibited by law and/or covered by Exemption 3, courts have held that agencies must nonetheless release all reasonably segregable portions of documents that contain non-exempt information. For instance, in *Neufeld v. Internal Revenue Service*, the U.S. Circuit Court of Appeals for the District of Columbia held that statutes specifically prohibiting the disclosure of tax return information satisfied the requirements of Exemption 3; nonetheless the court ruled that "only if exempt and nonexempt information are 'inextricably intertwined' . . . may the court allow an entire document to be withheld pursuant to a FOIA exemption."[21]

Much of the information contained in the records responsive to my request likely falls in the category of reasonably segregable, non-exempt information. In the case of the CJ-9 forms, jail jurisdictions provide the BJS with the name, gender, date of birth, age, and cause of death, among other information, for each individual that dies in jail custody or in the process of arrest.[22] Assuming, *arguendo*, that much of this information is personally identifiable to a private person, the CJ-9 form contains many other pieces of information that clearly are not identifiable to any private person, such as the general location of the death (*i.e.*, in a general housing unit, in a segregation unit, etc.) and the general cause of death (*i.e.*, illness, homicide, suicide, etc.).

---

19. Office of Management and Budget, "Order Providing for the Confidentiality of Statistical Information and Extending the Coverage of Energy Statistical Programs Under the Federal Statistical Confidentiality Order," Federal Register Volume 62, Number 124 (Friday, June 27, 1997), at 35047.
20. OPEN Government Act of 2007, Pub. L. No. 110–175, Section 12.
21. *Neufeld v. Internal Revenue Service*, 646 F.2d 661, 665–666 (D.C. Cir. 1981).
22. *See, e.g.*, Form CJ-9, "Mortality in Correctional Institutions 2018 Death Report on Inmates Under Jail Jurisdiction," OMB No. 1121-0094 (available at https://www.bjs.gov/content/pub/pdf/CJ9_2018.pdf). Prior versions of the form are nearly identical in most ways.

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 6

Additionally, aside from perhaps an individual's date of birth, other demographic information such as race, gender, age, or legal status are not personally identifiable to any particular private person absent that individual's name. Thus, if the individual's name were redacted, almost none of the information contained in the CJ-9 form would be exempt from disclosure under either statute the agency cited.[23]

Another set of records presumably responsive to my request are those included in the NACJD's "Deaths in Custody Reporting Program: Local Jails, 2000–2013 (ICPSR 34286)" data collection.[24] While NACJD restricts public access to this dataset due to its inclusion of personally identifiable information, such as decedents' names, it also contains reasonably segregable, non-exempt information. At a minimum, the data recorded in the following columns contained in the data-file are clearly segregable, non-exempt information: YEAR (the year a death took place), STATE (the state in which a death occurred), FACLOC (the city in which the jail facility is located), FACNAME_J (the name of the jail facility in which the death occurred), CAUSECOL (the general cause of death), FACID (a unique identifier for each jail facility), and PLACE2000_2013 (the general location within the jail facility in which the death occurred).[25]

Other responsive records, such as the annual CJ-9A summary forms submitted by jail administrators, contain little if any personally identifiable or other exempt information.[26] Thus, there is no justification for withholding the non-exempt portions of these records.

### III.    OJP has not met its burden under the "foreseeable harm" standard.

Under the FOIA Improvement Act of 2016, an agency may only withhold information under FOIA if it meets the following "foreseeable harm" standard:

(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

---

23. Importantly, the D.C. Circuit Court of Appeals has held that simple redaction of personally identifiable information may be sufficient to render all other information in a document non-exempt, even if it pertains to a particular private person and would be exempt if it were disclosed in conjunction with personally identifiable information. In *Neufeld*, the court held, "It is conceivable that a taxpayer letter might contain some items of information listed in § 6103(b)(2)(A), for example, the 'amount of his income,' such that the disclosure of the letter would pose no risk of identifying the taxpayer if his name and address were deleted." *Neufeld v. Internal Revenue Service*, 646 F.2d 661, 665 (D.C. Cir. 1981).
24. NACJD, "Deaths in Custody Reporting Program: Local Jails, 2000–2013 (ICPSR 34286)," available at https://www.icpsr.umich.edu/icpsrweb/NACJD/studies/34286/summary.
25. NACJD, Codebook for "Deaths in Custody Reporting Program: Local Jails, 2000–2013 (ICPSR 34286)," available for download at https://icpsr.umich.edu/icpsrweb/NACJD/studies/34286/datadocumentation.
26. *See*, for instance, Form CJ-9, "Deaths in Custody—2016 Annual Summary on Inmates Under Jail Jurisdiction," OMB No. 1121-0094 (available at https://www.bjs.gov/content/pub/pdf/CJ9A_2016.pdf). Prior versions of the form are nearly identical in most ways.

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 7

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information.[27]

Under this "foreseeable harm" standard, an agency cannot withhold records merely on the basis of conclusory statements about the technical application of a statutory exemption; it must instead provide *precise* reasons why *specific* records, or portions thereof, could be reasonably foreseen to harm an interest protected by an exemption or are prohibited from disclosure by law.[28] Furthermore, when an agency does determine that full disclosure of a record would lead to a foreseeable harm or violation of federal law, the standard requires that the agency must also determine whether partial disclosure of the record is possible and take reasonable steps to segregate and release nonexempt information. OJP has not met its burden under this standard.

Courts have already recognized the impact of this new standard. For instance, in *Ecological Rights Foundation v. F.E.M.A.*, the Northern District of California held that an agency could not rely on Exemption 5, along with the deliberative process privilege, because it failed to "provide basic information about the deliberative process at issue and the role played by each specific document."[29] In *Rosenberg v. Department of Defense*, the D.C. district court allowed that agencies could "take a categorical approach" by grouping together like documents, but nonetheless agencies must still "explain the foreseeable harm of disclosure for each category" of documents.[30]

While 5 U.S.C. § 552(a)(8)(B) does state that "Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)," this does not relieve OJP of its burden to make specific determinations regarding the applicability of Exemption 3 to "each specific document" or "each category" of documents responsive to a request, as well as determinations regarding the partial disclosure of any portion of each specific document or category of documents if it determines that Exemption 3 prohibits full disclosure of the documents.

Given that the OJP found more than 180,000 pages of documents responsive to my request (presumably encompassing, at a minimum, three categories of documents: *viz*. CJ-9 death forms, CJ-9A summary forms, and NACJD data collections), a conclusory statement that Sections 10134 and 10231 cover *all of the documents in their entirety* does not meet this burden.

---

27. 5 U.S.C. § 552(a)(8)

28. *See* 162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016) (statement of Sen. Leahy) ("Importantly, codifying the presumption of openness will help reduce the perfunctory withholding of documents through the overuse of FOIA exemptions. It requires agencies to consider whether the release of particular documents will cause any foreseeable harm to an interest the applicable exemption is mean to protect.").

29. *Ecological Rights Foundation v. FEMA*, No. 16-cv-05254-MEJ, 2017 WL 5972702 (N.D. Cal., Nov. 30, 2017).

30. *Rosenberg v. DOD*, 342 F. Supp. 3d 62 (D.D.C. Sept. 27, 2018).

United States Department of Justice
June 20, 2020
Appeal: DOJ-OJP Request # 20-FOIA-00016
Page 8

The agency should therefore be required to articulate specific and precise reasons why Exemption 3 precludes both full and partial disclosure of each document or category of documents.

## <u>Conclusion</u>

For the foregoing reasons, the OJP's response to my October 10, 2019, FOIA request is inadequate. The agency improperly applied Exemption 3; failed to undertake reasonable efforts to segregate non-exempt material from responsive records; and failed to meet its burden under the "foreseeable harm" standard. Therefore, I respectfully request that OJP re-process the responsive records and disclose all non-exempt material contained in responsive records.

Thank you for your attention to this matter. If you have any questions about this appeal or the underlying request, you may contact me by telephone at (917)-794-4583 or by email at ethan.corey@theappeal.org.

Sincerely,

Ethan Corey
P.O. Box 652
Saranac Lake, NY 12983
(917)-794-4583

# EXHIBIT E



**U.S. Department of Justice**

Office of Information Policy

*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

July 07, 2020

Ethan Corey
P.O. Box 652
Saranac Lake, NY  12983
ethan.corey@theappeal.org

Dear Ethan Corey:

This is to advise you that the Office of Information Policy (OIP) of the U.S. Department of Justice received your administrative appeal from the action of the OJP regarding Request No. 20-FOIA-00016 on 06/26/2020.

In an attempt to afford each appellant equal and impartial treatment, OIP has adopted a general practice of assigning appeals in the approximate order of receipt. Your appeal has been assigned number A-2020-01346 . Please refer to this number in any future communication with OIP regarding this matter. Please note that if you provided an email address or another electronic means of communication with your request or appeal, this Office may respond to your appeal electronically even if you submitted your appeal to this Office via regular U.S. Mail.

We will notify you of the decision on your appeal as soon as we can. If you have any questions about the status of your appeal, you may contact me at (202) 514-3642. If you have submitted your appeal through FOIA STAR, you may also check the status of your appeal by logging into your account.

Sincerely,

*Priscilla Jones*

Priscilla Jones
Supervisory Administrative Specialist

# EXHIBIT F



**U.S. Department of Justice**

Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

November 30, 2020

Ethan Corey
Post Office Box 652
Saranac Lake, NY  12983
ethan.corey@theappeal.org

Re:  Appeal No. A-2020-01346

Request No. 20-FOIA-00016
CDT:PJA

**VIA:  Email**

Dear Ethan Corey:

You appealed from the action of the Office of Justice Programs (OJP) on your Freedom of Information Act request for access to records concerning the number of jail deaths reported (and/or unique CJ-9 forms submitted) by each jail facility participating in the *Mortality in Correctional Institutions* reporting program between 2000 and 2018.  I note that your appeal concerns the witholdings made by OJP pursuant to Exemption 3.

After carefully considering your appeal, I am affirming, on partly modified grounds, OJP's action on your request.  The FOIA provides for disclosure of many agency records.  At the same time, Congress included in the FOIA nine exemptions from disclosure that provide protection for important interests such as personal privacy, privileged communications, and certain law enforcement activities.   OJP properly withheld this information in full because it is protected from disclosure under the FOIA pursuant to 5 U.S.C. § 552(b)(3). This provision concerns matters specifically exempted from release by a statute other than the FOIA (in this instance, 34 U.S.C. § 10231, which pertains to research or statistical information collected by BJS and limits officers or employees of the federal government, including BJS employees or its data collection agents, from using or revealing any research or statistical information furnished in connection with a BJS data collection, including data identifiable to any specific private person, by any person for any purpose other than the purpose for which it was furnished).

Please be advised that this Office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of OJP in response to your request.

If you are dissatisfied with my action on your appeal, the FOIA permits you to file a lawsuit in federal district court in accordance with 5 U.S.C. §552(a)(4)(B).

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation. Using OGIS services does not affect your right to pursue litigation. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769. If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

X_____

Matthew Hurd,
Acting Chief, Administrative Appeals Staff

# EXHIBIT G



July 27, 2020

<u>**VIA ELECTORNIC MAIL**</u>

Monica Potter-Johnson
Office of Justice Programs
Office of the General Counsel
Attention: FOIA Staff
810 7th Street, NW
Room 5400
Washington, DC 20531

       **Re:**     <u>**Freedom of Information Act Request**</u>

Dear Ms. Potter-Johnson:

       I am a senior researcher for the Appeal, a nonprofit news organization that covers the impact of policy, politics, and the legal system on vulnerable communities.[1] The Appeal is an editorially independent project of the Justice Collaborative, a nonprofit group dedicated to providing deep legal, policy, communications, and networking support to organizations committed to building a society with justice and dignity for all.[2] As part of the Appeal's mission, we seek to help the public better understand the scope and impact of deaths that occur in the custody of law enforcement and correctional agencies in the United States. To that end, we are seeking comprehensive information about the scope and nature of deaths in custody.

       Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Appeal ("the Requestor") hereby requests access to the following records for the time period from October 1, 2019, to the date on which this request is fulfilled, inclusive:

1. All DCR-1 quarterly summary forms submitted by federal, state, and local agencies to the Office of Justice Programs ("OJP"), the Bureau of Justice Assistance ("BJA"), or any of its contractors or agents.[3]
2. All DCR-1A incident reports submitted by federal, state, and local agencies to OJP, BJA, or any of its contractors or agents.[4]
3. All Edward Byrne Memorial Justice Assistance Grant ("JAG") Performance Management Tool reports submitted by state and local agencies using the online portal

---

[1] The Appeal, "About The Appeal," accessed July 27, 2020, available at https://theappeal.org/about/.
[2] The Justice Collaborative, "About The Justice Collaborative," accessed July 27, 2020, available at https://thejusticecollaborative.com/about/.
[3] Form DCR-1, "Quarterly Summary," OMB No. 1121-NEW.
[4] Form DCR-1A, "Incident Report," OMB No. 1121-0365.

Corey FOIA Request: Page 2 of 4

located at https://bjapmt.ojp.gov/ that include reporting pursuant to the Death in Custody Act of 2013.[5]

## Request for fee waiver

Pursuant to 5 U.S.C. § 552(a)(4)(A), I request a waiver of any fees associated with this request. As noted above, the Appeal is a nonprofit news organization that covers the criminal-justice system. This request is made as part of the Appeal's newsgathering process. Any records obtained as part of this request will be made available to the public. Disclosure of this information is in the public interest, as it will help the public better understanding the nature and frequency of in-custody deaths, a topic of particular interest in the wake of protests triggered by high-profile deaths in police custody.

## Request for expedited processing

Due to the urgent need for more information about in-custody deaths amidst a national conversation around deaths in police custody, I request expedited processing under 5 U.S.C. § 552(a)(6)(E). The Appeal's primary mission is the dissemination of information related to the criminal-justice system, and any delays in fulfilling this request will reduce the impact of the requested information on public debate. State and local governments are already debating laws regarding the use of force by law enforcement officers, and the U.S. Congress is considering legislation that would expand the scope of data collected by the Department of Justice regarding police use of force.[6] Timely information about the data the Department of Justice already possesses serves an urgent public interest in better understanding deaths in custody.

## Requested records not exempt from disclosure under 34 U.S.C. §§ 10134 or 10231

In recent statements to the press, representatives of OJP have indicated that the agency believes data submitted pursuant to DCRA is subject to "BJS data protection guidelines," which presumably refers to BJS regulations designed to comply with 34 U.S.C. §§ 10134 or 10231, as no other federal statute can reasonably be construed as prohibiting the disclosure of data submitted pursuant to DCRA.[7]

---

[5] In the Fiscal Year 2020 State Formula Solicitation for the JAG program, BJA notes, "BJA requires reporting from states pursuant to DCRA, which requires states and federal law enforcement agencies to report certain information to the Attorney General regarding the death of any person occurring during interactions with law enforcement officers or while in custody. All reporting for DCRA will be submitted via the BJA Performance Management Tool (PMT), located at https://bjapmt.ojp.gov." Bureau of Justice Assistance, Edward Byrne Memorial Justice Assistance Grant (JAG) Program Fiscal Year 2020 State Formula Solicitation, March 12, 2020, available at https://www.bja.ojp.gov/sites/g/files/xyckuh186/files/media/document/bja-2020-17277.pdf.
[6] H.R. 7120 – George Floyd Justice in Policing Act of 2020, introduced June 8, 2020, available at https://www.congress.gov/bill/116th-congress/house-bill/7120.
[7] In fact, as recently as 2016, the Department of Justice had indicated it intended to make DCRA data available to the public. *See* Department of Justice, "Report of the Attorney General to Congress Pursuant to The Death in Custody Reporting Act," December 16, 2016, available at https://www.justice.gov/archives/page/file/918846/download. "The Department will publicly release data collected pursuant to the DCRA, including the State plans, the number of deaths reported for each agency and facility, and data on the circumstances surrounding those deaths."

Corey FOIA Request: Page 3 of 4

Sections 10134 and 10231, however, do not apply to data collected by the Bureau of Justice Assistance. The relevant language in the statutes refers to data "collected by the Bureau [of Justice Statistics]" (Section 10134) and research or statistical information furnished under [Chapter 101 of Title 34]" (Section 10231). Because DCRA data is collected by the Bureau of Justice Assistance, Section 10134 cannot prohibit its release. Because DCRA data is furnished under Chapter 601 of Title 34, not Chapter 101, neither does Section 10231 prohibit its release. Additionally, Section 10231 applies only to research or statistical information "identifiable to any specific private person." Under 34 U.S.C. § 10251(a)(27), "private person" means "any individual (including an individual acting in his official capacity) and any private partnership, corporation, association, organization, or entity (or any combination thereof)." Because this definition does not include prisons, jails, or law enforcement agencies, Section 10231 cannot be construed as prohibiting the release of information about such agencies.[8]

Moreover, even if one argues that DCRA data may be identifiable to individuals who die in the custody of prisons, jails, or law enforcement agencies (e.g., if an agency reports only a small number of deaths in a quarter), courts have held that protections under the Privacy Act and similar statutes typically do not protect information pertaining to deceased individuals.[9]

Finally, the legislative history of the Death in Custody Reporting Act clearly indicates that the data collected pursuant to the law was intended to be released to the public. In remarks supporting passage of the bill, Vermont Senator Patrick Leahy said the legislation would provide "important transparency to law enforcement efforts and our prison system" and further stated, "The Justice Department should have an opportunity to analyze the data and see what we can learn from it. And the American people deserve the same."[10] During debate over an identical bill in 2008, Representative Sheila Jackson-Lee of Texas said, "The Death in Custody Reporting Act is a critical oversight tool which allows State and local corrections officials and advocates to monitor in-custody suicides, homicides, drug and alcohol overdoses and other critical issues," making it clear that dissemination of data collected under the law beyond the federal government was an integral part of the legislative intent behind the Death in Custody Reporting Act.[11] Non-disclosure of mortality data collected under the law would frustrate the clearly stated legislative intent behind the statute.

**<u>Request for access to all reasonably segregable, non-exempt portions of responsive records.</u>**

---

[8] While little case law exists on the precise scope of Section 10231, the Seventh Circuit has held that Section 10231(a) creates "a right to be free from unwarranted disclosure of statistical information." *Polchowski v. Gorris*, 714 F.2d 749 (1983). The court did not address the issue of whether this right extends to statistical information about deceased individuals, but courts have consistently held that privacy rights cease upon an individual's death. *See, e.g., Monk v. Teeter*, 951 F.2d 361, 1992 WL 1681, at *2 (9th Cir.1992) (mem.) ("The right to privacy does not survive one's death."), quoted in *Warren v. Colvin*, 744 F.3d 841 (2014)
[9] Pavesieh v. New England Life Ins. Co., 122 Ga. 190, 50 S.E. 68
[10] *See* 160 Cong. Rec. S6341 (daily ed. Dec. 4, 2014) (statement of Sen. Patrick Leahy), available at https://www.congress.gov/congressional-record/2014/12/04/senate-section/article/S6341-2.
[11] *See* 154 Cong. Rec. E2245 (daily ed. Oct. 3, 2008) (statement of Hon. Sheila Jackson-Lee), available at https://www.congress.gov/congressional-record/2008/10/03/extensions-of-remarks/section/article/E2245-1.

Requestor anticipates that some records responsive to this request may contain information exempt from disclosure under FOIA. Under the OPEN Government Act of 2007, agencies must provide any reasonably segregable, non-exempt information contained in documents that are responsive to FOIA requests.[12] Requestor therefore respectfully access to all reasonably segregable, non-exempt information contained in any responsive documents subject to withholding under FOIA.

Even in cases where full disclosure of a document or category of documents is specifically prohibited by law, courts have held that agencies must nonetheless release all reasonably segregable portions of documents that contain non-exempt information. For instance, in *Neufeld v. Internal Revenue Service*, the U.S. Circuit Court of Appeals for the District of Columbia held that statutes specifically prohibiting the disclosure of tax return information satisfied the requirements of FOIA Exemption 3; nonetheless the court ruled that "only if exempt and nonexempt information are 'inextricably intertwined' . . . may the court allow an entire document to be withheld pursuant to a FOIA exemption."[13] In the case of personally identifiable information, simple redaction of names, social security numbers, and contact information is generally sufficient to render the remainder of the document disclosable under FOIA.[14]

## **Conclusion**

For the foregoing reasons, the Requestor is entitled to the records requested above. Should you have any questions about this request, you may email me at ethan.corey@theappeal.org or call at (917) 794-4583. Thank you for your diligent attention to this matter.

Sincerely,

Ethan Corey
P.O. Box 652
Saranac Lake, NY 12983

---

[12] OPEN Government Act of 2007, Pub. L. No. 110–175, Section 12.
[13] *Neufeld v. Internal Revenue Service*, 646 F.2d 661, 665–666 (D.C. Cir. 1981).
[14] *Id. at* 665.

# EXHIBIT H

**U.S. Department of Justice**

Office of Justice Programs

Office of the General Counsel

_____

*Washington, D.C.  20531*

July 28, 2020

**<u>VIA Electronic Mail</u>**
ethan.corey@theappeal.org

Ethan Corey
Senior Fact Checker & Researcher
TheAppeal.org
P.O. Box 652
Saranac Lake, NY 12983

Re: OJP FOIA No. 20-FOIA-00234

Dear Mr. Corey:

This is to acknowledge receipt of your July 27, 2020, Freedom of Information Act/Privacy Act (FOIA/PA) request, which was received in the Office of Justice Programs (OJP), Office of the General Counsel, on the same date.  A copy of your request is attached for your convenience.

The records you seek require a search in another OJP office and so your request falls within "unusual circumstances." See 5 U.S.C. § 552(a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the expedited track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

Your request for expedited processing has been granted. We will process your request accordingly. We have not yet made a decision on your request for a fee waiver. We will do so after we determine whether the processing of your request will result in any assessable fees.

Page **2** of **2**

Your request is assigned to a member of our FOIA staff for processing.  If you have any questions or wish to discuss reformulation or an alternative time frame for the processing of your request, you may contact the Office of the General Counsel at (202) 307-6235, via e-mail at FOIAOJP@usdoj.gov, or you may write to this office at:

>US DOJ, Office of Justice Programs
>Office of the General Counsel
>810 7th Street, NW, Room 5400
>Washington, D.C. 20531
>Attn: FOIA

Due to the COVID-19 pandemic, OJP's FOIA Office has adjusted its normal operations to balance the need of completing its mission as effectively and efficiently as possible while also adhering to the recommended social distancing for the safety of our staff.  As a result, you may experience a delay in receiving an initial acknowledgment as well as a substantive response to your FOIA request.  We will be able to acknowledge requests made electronically more quickly than by mail.  You may reach out to our FOIA Requester Service Center and FOIA Public Liaison at the telephone number above to discuss any aspect of your request. Please include the above-referenced OJP FOIA number.  We apologize for this inconvenience and appreciate your understanding and patience.

Thank you,

FOIAOJP

# EXHIBIT I



Ethan Corey <ethan.corey@theappeal.org>

## Status of FOIA Request 20-FOIA-00234
1 message

**Office of the General Counsel** <FOIAOJP@usdoj.gov>                    Mon, May 24, 2021 at 4:28 PM
To: ethan.corey@theappeal.org

Dear Mr. Corey:

I received notification of your 5/21/21 inquiry regarding the status of the above referenced FOIA request.  I am a newly hired FOIA Analyst assigned to the FOIA Backlog Team to assist with the reduction and processing of backlogged FOIA requests within the Office of the General Counsel, Office of Justice Programs (OJP).   Because your request seeks "records for the time period from October 1, 2019, to the date on which this request is fulfilled" I have resubmitted your request to the program office to provide updated data through the date on which they fulfill your request.  As soon as OJP receives the requested records, your request will be processed and submitted as soon thereafter as possible.  To keep you informed, I will let you know when OJP receives the documents for processing, and again when your request has been signed for closure (final letter to you and documents, if any, that are released via FOIAXpress FOIA OJP email).

Sincerely,

h'Enri Whitseyjohnson, FOIA Analyst (Contractor)

# EXHIBIT J



February 5, 2021

<u>**VIA ELECTORNIC MAIL**</u>

Monica Potter-Johnson
Office of Justice Programs
Office of the General Counsel
Attention: FOIA Staff
810 7th Street, NW
Room 5400
Washington, DC 20531

   Re:  **Freedom of Information Act Request**

Dear FOIA Officer:

  I am a senior researcher for Appeal Media, a nonprofit news organization that covers the criminal-justice system.[1] As part of Appeal Media's mission, we seek to help the public better understand the scope and impact of deaths that occur in the custody of law enforcement and correctional agencies in the United States. To that end, we are seeking comprehensive information about the scope and nature of deaths in custody.

  Pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, Appeal Media ("the Requestor") hereby requests access to the following record:

  1. All Death in Custody Reporting Act (DCRA) reports submitted by federal law enforcement agencies (including the Bureau of Prisons) from FY2016 until FY2020.

<u>**Request for fee waiver**</u>

  Pursuant to 5 U.S.C. § 552(a)(4)(A), I request a waiver of any fees associated with this request. As noted above, the Appeal is a nonprofit news organization that covers the criminal-justice system. This request is made as part of the Appeal's newsgathering process. Any records obtained as part of this request will be made available to the public. Disclosure of this information is in the public interest, as it will help the public better understanding the nature and frequency of in-custody deaths, a topic of particular interest in the wake of protests triggered by high-profile deaths in police custody.

<u>**Request for expedited processing**</u>

  Due to the urgent need for more information about in-custody deaths amidst a pandemic that has disproportionately impacted incarcerated people, I request expedited processing under 5 U.S.C. § 552(a)(6)(E). The Requestor's primary mission is the dissemination of information related to the criminal-justice system, and any delays in fulfilling this request will reduce the

---

[1] https://theappeal.org/about/

impact of the requested information on public debate. State and local governments are already debating laws regarding the use of force by law enforcement officers, and the U.S. Congress is considering legislation that would expand the scope of data collected by the Department of Justice regarding police use of force.[2] Timely information about the data the Department of Justice already possesses serves an urgent public interest in better understanding deaths in custody.

Additionally, this FOIA request is substantively similar to one already processed by the Office of Justice Programs last year.[3] Government Information Specialist Chaun Eason issued a final determination in writing on September 29, 2020, denying the request in full. The Requestor did not file an appeal by the statutory deadline of December 29, 2020, and respectfully requests an expedited decision in order to facilitate full consideration of the merits of the request by the Office of Information Policy.

## Request for access to all reasonably segregable, non-exempt portions of responsive records.

Requestor anticipates that some records responsive to this request may contain information exempt from disclosure under FOIA. Under the OPEN Government Act of 2007, agencies must provide any reasonably segregable, non-exempt information contained in documents that are responsive to FOIA requests.[4] Requestor therefore respectfully access to all reasonably segregable, non-exempt information contained in any responsive documents subject to withholding under FOIA.

Even in cases where full disclosure of a document or category of documents is specifically prohibited by law, courts have held that agencies must nonetheless release all reasonably segregable portions of documents that contain non-exempt information. For instance, in *Neufeld v. Internal Revenue Service*, the U.S. Circuit Court of Appeals for the District of Columbia held that statutes specifically prohibiting the disclosure of tax return information satisfied the requirements of FOIA Exemption 3; nonetheless the court ruled that "only if exempt and nonexempt information are 'inextricably intertwined' . . . may the court allow an entire document to be withheld pursuant to a FOIA exemption."[5] In the case of personally identifiable information, simple redaction of names, social security numbers, and contact information is generally sufficient to render the remainder of the document disclosable under FOIA.[6]

## Conclusion

For the foregoing reasons, the Requestor is entitled to the records requested above. Should you have any questions about this request, you may email me at ethan.corey@theappeal.org or call at (917) 794-4583. Thank you for your diligent attention to this matter.

---

[2] H.R. 7120 – George Floyd Justice in Policing Act of 2020, introduced June 8, 2020, available at https://www.congress.gov/bill/116th-congress/house-bill/7120.
[3] DOJ-OJP Request # 20-FOIA-00032.
[4] OPEN Government Act of 2007, Pub. L. No. 110–175, Section 12.
[5] *Neufeld v. Internal Revenue Service*, 646 F.2d 661, 665–666 (D.C. Cir. 1981).
[6] *Id. at* 665.

Corey FOIA Request: Page 3 of 4

Sincerely,

Ethan Corey
600 Hibben Magie Rd, Unit 201
Princeton, NJ 08540

# EXHIBIT K

**U.S. Department of Justice**

*Office of Justice Programs*

*Office of the General Counsel*

_____

*Washington, D.C.  20531*

February 9, 2021

**VIA Electronic Mail**
Ethan.Corey@theappeal.org

Ethan Corey
Senior Fact Checker & Researcher
THE APPEAL
600 Hibben Magie Rd. Unit 201
Princeton, NJ 08540

Re:     OJP FOIA No. 21-FOIA-00114

Dear Mr. Corey:

This is to acknowledge receipt of your February 5, 2021, Freedom of Information Act/Privacy Act (FOIA/PA) request, which was received in the Office of Justice Programs (OJP), Office of the General Counsel, on February 8, 2021.  A copy of your request is attached for your convenience.

The records you seek require a search in another OJP office and so your request falls within "unusual circumstances." See 5 U.S.C. § 552(a)(6)(B)(i)-(iii) (2018). Because of these unusual circumstances, we are extending the time limit to respond to your request beyond the ten additional days provided by the statute. We have not yet completed a search to determine whether there are records within the scope of your request. The time needed to process your request will necessarily depend on the complexity of our records search and on the volume and complexity of any records located. For your information, this office assigns incoming requests to one of three tracks: simple, complex, or expedited. Each request is then handled on a first-in, first-out basis in relation to other requests in the same track. Simple requests usually receive a response in approximately one month, whereas complex requests necessarily take longer. At this time, your request has been assigned to the expedited track. You may wish to narrow the scope of your request to limit the number of potentially responsive records or agree to an alternative time frame for processing, should records be located; or you may wish to await the completion of our records search to discuss either of these options.

We have not yet made a determination on your request for a fee waiver. We will do so after we determine whether the processing of your request will result in any assessable fees.

Please be advised that your request for expedited processing has been granted. The request has been assigned to a Government Information Specialist in this Office for processing and a records

search has been initiated in the appropriate office. If you have any questions or wish to discuss reformulation of your request, you may contact the Office of the General Counsel at (202) 307-6235, via email at FOIAOJP@usdoj.gov, or you may write to this office at:

> US DOJ, Office of Justice Programs
> Office of the General Counsel
> 810 7th Street, NW, Room 5400
> Washington, D.C. 20531
> Attn: FOIA

Due to the COVID-19 pandemic, OJP's FOIA Office has adjusted its normal operations to balance the need of completing its mission as effectively and efficiently as possible while also adhering to the recommended social distancing for the safety of our staff.  As a result, you may experience a delay in receiving an initial acknowledgment as well as a substantive response to your FOIA request.  We will be able to acknowledge requests made electronically more quickly than by mail.  You may reach out to our FOIA Requester Service Center and FOIA Public Liaison at the telephone number above to discuss any aspect of your request. Please include the above-referenced OJP FOIA number.  We apologize for this inconvenience and appreciate your understanding and patience.

Thank you,

FOIAOJP

# EXHIBIT L



**U.S. Department of Justice**

Office of Justice Programs

Office of the General Counsel

_Washington, D.C.  20531_

February 24, 2021

VIA Electronic Mail
Ethan.Corey@theappeal.org

Ethan Corey
Senior Fact Checker & Researcher
THE APPEAL
600 Hibben Magie Road, Unit 201
Princeton, NJ  08540

Re: OJP FOIA No. 21-FOIA-00114

Dear Mr. Corey:

This letter responds to your February 5, 2021, Freedom of Information Act/Privacy Act (FOIA/PA) request, which was received in the Office of Justice Programs (OJP), Office of the General Counsel, on February 8, 2021. A copy of your request is attached for your convenience.

Please be advised that a search has been conducted in OJP, and 1,674 records, consisting of 3,348 pages, were located that are responsive to your request.  After carefully reviewing the records, I have determined that 3,348 pages are exempt from disclosure pursuant to exemption (b)(3) of the Freedom of Information Act, 5 U.S.C. § 552 (2018).  Exemption (b)(3) authorizes an agency to withhold information prohibited from disclosure by another statute.  This provision concerns matters specifically exempted from release by statute (in this instance, 34 U.S.C. §10231, which pertains to research or statistical information collected by the Bureau of Justice Statistics and must remain confidential). This completes the processing of your request by OJP.

You may contact a member of our FOIA Staff at (202) 307-6235, via e-mail at FOIAOJP@usdoj.gov, as well as, our FOIA Public Liaison, for any further assistance and to discuss any aspect of your request at:

> US DOJ, Office of Justice Programs
> Office of the General Counsel
> 810 7th Street, NW, Room 5400
> Washington, D.C.  20531
> Attn:  FOIA

Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College

Page 2

Park, Maryland 20740-6001, e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

If you are not satisfied with OJP's determination in response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, 441 G Street, NW, 6th Floor, Washington, D.C. 20530, or you may submit an appeal through OIP's FOIA STAR portal by creating an account following the instructions on OIP's website: https://www.justice.gov/oip/submit-and-track-request-or-appeal. Your appeal must be postmarked or electronically transmitted within 90 calendar days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

Sincerely,

*Chaun Eason*

Chaun Eason
Government Information Specialist

Attachment

# EXHIBIT M

Director, Office of Information Policy (OIP)
United States Department of Justice
441 G Street, NW, 6th Floor
Washington, D.C. 20530

Dear FOIA Appeals Officer:

This is a timely administrative appeal of the adverse determination of the United States Department of Justice's Office of Justice Programs ("OJP") on my February 5, 2021, Freedom of Information Act ("FOIA") request, No. 21-FOIA-00114. Specifically, I appeal the agency's use of Exemption 3; its failure to segregate non-exempt material from responsive records; and its failure to meet its burden under FOIA's "foreseeable harm" standard.

## **Procedural History**

On February 5, 2021, I submitted a FOIA request to the OJP's Office of the General Counsel, seeking access to "[a]ll Death in Custody Reporting Act (DCRA) reports submitted by federal law enforcement agencies (including the Bureau of Prisons) from FY2016 until FY2020."[1] I requested a fee waiver as a representative of the news media.[2]

By letter, dated February 24, 2021, OJP's Office of the General Counsel provided its final determination, indicating that it had located 3,348 pages of records responsive to my FOIA request.[3] The letter stated that all 3,348 pages of the records were exempt from disclosure pursuant to exemption (b)(3) of the Freedom of Information Act, 5 U.S.C. § 552 (2018), which allows for the withholding of information specifically exempted from release by another statute.[4] This timely appeal follows the adverse determination regarding my request by the OJP Office of the General Counsel.

## **Argument**

### I.    **Exemption 3 does not allow the withholding of the records at issue.**

Exemption 3 permits agencies to withhold matters that are "specifically exempted from disclosure by [a] statute" other than FOIA itself. *See* 5 U.S.C. § 552(b)(3). To qualify, the statute must either

---

[1] Letter from Ethan Corey to OJP Office of the General Counsel, February 5, 2021, at 1 (attached as Exhibit 1).
[2] *Id.* at 1. I am a senior fact checker and researcher for The Appeal, a national, non-profit news agency that covers the criminal-legal system. *See* https://theappeal.org/about/.
[3] Letter from Chaun Eason, OJP Office of the General Counsel, February 24, 2021, at 1 (attached as Exhibit 2).
[4] *Id.*

(A)(i) require[] that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or

(ii) establish[] particular criteria for withholding or refers to particular types of matters to be withheld; and

(B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cite[] to this paragraph.

When an agency relies on a statute to deny a FOIA request under Exemption 3, it must first determine (1) whether the statute meets Exemption 3's requirements, and (2) whether the information that was withheld falls within the statute's coverage.[5]

In this case, the agency cites 34 U.S.C. §§ 10134 and 10231, which state in full, respectively:

Data collected by the Bureau [of Justice Statistics] shall be used only for statistical or research purposes, and shall be gathered in a manner that precludes their use for law enforcement or any purpose relating to a private person or public agency other than statistical or research purposes.[6]

And:

No officer or employee of the Federal Government, and no recipient of assistance under the provisions of this chapter shall use or reveal any research or statistical information furnished under this chapter by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with this chapter. Such information and copies thereof shall be immune from legal process, and shall not, without the consent of the person furnishing such information, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings.[7]

Neither 34 U.S.C. § 10134 ("Section 10134") nor 34 U.S.C. § 10231 ("Section 10231") justify the OJP's decision to withhold in-custody death reports submitted by federal law enforcement agencies pursuant to the DCRA. First, Sections 10134 and 10231 do not cover materials furnished to the Attorney General under the DCRA. Second, withholding in-custody death reports from release would contradict the clearly expressed legislative intent behind the DCRA.

### A.  Sections 10134 and 10231 do not apply to the records at issue.

---

[5] *Newport Aeronautical Sales v. Department of the Air Force*, 684 F.3d 160, 165 (D.C.Cir.2012); *Cal-Almond, Inc. v. U.S. Department of Agriculture*, 960 F.2d 105, 108 (9th Cir.1992).
[6] 34 U.S.C. § 10134.
[7] 34 U.S.C. § 10231.

As noted above, denying a FOIA request pursuant to Exemption 3 requires a two-pronged analysis, in which the agency must first demonstrate that "the statute identified by the agency is a statute of exemption within the meaning of Exemption 3," and then it must show that "the withheld records satisfy the criteria of the exemption statute."[8] In this appeal, I do not dispute that Sections 10134 and 10231 meet the first prong of this test.[9] Nevertheless, the records at issue in this request do not satisfy the criteria of Sections 10134 and 10231; thus, the second prong of the test is not met.

### i.    Section 10134

The criteria for exemption established by Section 10134 are unambiguous: "Data collected by the [BJS] shall be used only for statistical or research purposes." Data collected by any other agency, therefore, is not encompassed by the criteria for withholding established by Section 10134. This has the virtue of making the analysis here quite simple: The Death in Custody Reporting Act does not require the BJS to collect any data whatsoever. To the contrary, it states that "the head of each Federal law enforcement agency shall submit to the Attorney General a report (in such form and manner specified by the Attorney General) that contains information regarding the death of any person" who dies in the agency's custody.

In other words, the DCRA requires "the head of each Federal law enforcement agency" to collect data on deaths in that agency's custody, which the head of the agency then submits to the Attorney General. BJS's involvement in this process is entirely incidental and it flows directly from the discretionary authority granted by the DCRA to the Attorney General to determine the "form and manner" in which the heads of federal law enforcement agencies will report in-custody deaths.

Collection of DCRA reports from federal law enforcement agencies began in October 2016, pursuant to a memorandum written by then-Attorney General Loretta Lynch, which charged the BJS with creating two online survey instruments to receive each federal law enforcement agency's required reports (one for arrest-related deaths and one for deaths occurring while a person is detained or incarcerated in federal custody) and required federal law enforcement agencies to submit their reports through one or both of the two survey instruments.[10]

---

[8] *Center for Investigative Reporting v. Department of Justice*, No. 18-17356 (9th Cir. Dec. 3, 2020).

[9] The two most apposite cases here are *Seymour v. Barabba*, 559 F.2d 806 (D.C. Cir. 1977) and *Baldrige v. Shapiro*, 455 U.S. 345, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982), which determined that statutes prohibiting the disclosure of "statistical or research information" by the Census Bureau qualified for withholding under Exemption 3.

[10] *See* U.S. Department of Justice Office of the Inspector General, "Review of the Department of Justice's Implementation of the Death in Custody Reporting Act of 2013," 19-01, December 18, 2018, at 28–30, available at https://www.oversight.gov/sites/default/files/oig-reports/e1901.pdf.

The memorandum makes it clear that the decision to direct federal law enforcement agencies to report in-custody deaths to the BJS is a discretionary act by the Attorney General, noting "this memorandum specifies this form and manner in which each federal law enforcement agency shall report the required information to the Attorney General."[11] At no point does it state or suggest that the law requires the BJS to be involved in the implementation of the DCRA.

The DCRA's grant of *carte blanche* discretionary authority to the Attorney General over the "form and manner" in which in-custody deaths are reported is in sharp contrast to related statutes, such as the Prison Rape Elimination Act, which both specifically delegate data collection responsibility to the BJS and provide explicit confidentiality protections to ensure that data submitted pursuant to PREA is not improperly disclosed.[12] No such provisions exist in the language of the DCRA.

If BJS's mere involvement in receiving reports from federal law enforcement agencies were sufficient to bring the records under the scope of Section 10134, FOIA's presumption of disclosure would be completely vitiated. Congress amended Exemption 3 in 1976 with the explicit goal of "narrow[ing] the scope of the prior-existing exemption by excluding those broadranging statutes that give an agency *cart blanche* [*sic*] to withhold any information [it] pleases."[13] The "unmistakable thrust" of the modern Exemption 3, as modified by both the 1976 amendment and the 2009 OPEN FOIA Act, is "to assure that basic policy decisions on governmental secrecy be made by the Legislative rather than the Executive branch."[14]

Unless the statute authorizing a data collection explicitly delegates data collection responsibilities to the BJS or otherwise indicates the data ought to be governed by the BJS's data protection guidelines, the Attorney General's decision to delegate data collection authority cannot serve as a backdoor means for exempting the data collected from disclosure under the FOIA. To hold otherwise would allow the Department of Justice to withhold any records it chooses merely by furnishing them to the Bureau of Justice Statistics, undermining the transparency and accountability interests that the FOIA exists to protect.

### ii.     Section 10231

Like Section 10134, Section 10231 contains clear, simple criteria for withholding records from release: "No officer or employee of the Federal Government, and no recipient of assistance

---

[11] *Id.* at 28.

[12] Pub. L. 108-79, § 4(a). "The Bureau of Justice Statistics of the Department of Justice…shall carry out, for each calendar year, a comprehensive statistical review and analysis of the incidence and effects of prison rape…. [T]he Bureau shall, in addition to such other methods as the Bureau considers appropriate, use surveys and other statistical studies of current and former inmates from a sample of Federal, State, county, and municipal prisons. The Bureau shall ensure the confidentiality of each survey participant."

[13] *CNA Financial Corp. v. Donovan*, 830 F.2d 1132, 1137-38 (D.C. Cir. 1987).

[14] *Id.*

under the provisions of this chapter shall use or reveal any research or statistical information furnished under this chapter by any person and identifiable to any specific private person for any purpose other than the purpose for which it was obtained in accordance with this chapter." In other words, for a record to be covered by Section 10231, it must a) be "research or statistical information," b) be "furnished under [34 U.S.C. Chapter 101: Justice System Improvement]," c) be "identifiable to any specific private person," and d) its release must be for "purpose[s] other than the purpose for which it was obtained." If any one of those criteria does not apply, Section 10231 cannot justify withholding a record from release under Exemption 3.

The second criterion offers the clearest litmus test in this instance. Section 10231 does not cover any records furnished under any statutory authority *except* 34 U.S.C. Chapter 101. The DCRA's requirement that federal law enforcement agencies report in-custody deaths to the Attorney General is not part of that chapter; rather, it falls under 18 U.S.C. Chapter 301: General Provisions. Thus, any data collected pursuant to the Death in Custody Reporting Act is not "furnished under" 34 U.S.C. Chapter 101, meaning Section 10231 has no relevance whatsoever to the records at issue.

Furthermore, even assuming *arguendo* that Section 10231 covers all research or statistical information provided to the BJS, regardless of the legal authority for collecting such information, DCRA reports would still be subject to disclosure under FOIA. As noted above, the DCRA leaves the "form and manner" by which DCRA reports are collected to the Attorney General's discretion. Because Section 10231 would not apply to federal law enforcement agencies' DCRA reports but for the Attorney General's decision to delegate data collection to the BJS, it cannot grant protection from withholding under Exemption 3.

Additionally, the third criterion is similarly inapplicable in this case. The DCRA reports contain information about the deaths of persons in the custody of federal law enforcement agencies. Courts have consistently ruled that upon death, a person no longer possesses privacy rights.[15] As such, the privacy rights that Section 10231 exists to protect are not implicated in this case. This is a sharp contrast to cases like *Seymour v. Barabba* and *Baldrige v. Shapiro*, which both emphasize that confidentiality provisions limiting the release of data collected by federal statistical agencies exist in order to protect the privacy rights of individuals who provide the federal government with their personal information.[16]

---

[15] *See Diamond v. FBI*, 532 F. Supp. 216, 227 (S D.N.Y. 1981).

[16] "The concern of Congress with the confidentiality of census data had been manifested some years earlier. After the Supreme Court in *St. Regis Paper Company v. United States* held that census information was not immunized from legal process directed to copies of the census report retained by private businesses, quickly responding to the urgings of the Administration, and noting that general public assumptions of confidentiality of census data should be assured, Congress expressly overruled this holding." *Seymour v. Barabba*, 559 F.2d 806 (D.C. Cir. 1977). And "The foregoing history of the Census Act reveals a congressional intent to protect the confidentiality of census information by prohibiting disclosure of raw census data reported by or on behalf of individuals. Subsequent congressional action is consistent with this interpretation. In response to claimed undercounts in the census of 1960 and of 1970, Congress considered, but ultimately rejected, proposals to allow local officials limited access to census

Finally, Section 10231 only prohibits the release of data for "purpose[s] other than the purpose for which it was obtained." This directly implicates the question of why the Attorney General collects data in in-custody deaths in the first place. As outlined in the following section, the legislative history of the DCRA itself makes it clear that the purpose of the data collection is to provide public transparency about the frequency of and circumstances under which in-custody deaths occur. Releasing the data to the public, in other words, is exactly the "purpose for which it was obtained."

### B. Withholding in-custody death reports from public release contradicts the legislative intent of the DCRA.

The first iteration of the DCRA was introduced in 2000 as a response to a series of investigative reports by *Asbury Park Press* journalist Mike Masterson, who found that little public information existed about in-custody deaths, despite the suspicious circumstances under which many such deaths occur.[17] In his remarks supporting passage of the bill, sponsor Rep. Asa Hutchinson said, "This legislation will provide openness in government and will bolster public confidence and trust in our judicial system."[18] Likewise, in a speech supporting the current version of the DCRA in 2014, Sen. Patrick Leahy said the legislation would provide "important transparency to law enforcement efforts and our prison system" and further stated, "The Justice Department should have an opportunity to analyze the data and see what we can learn from it. And the American people deserve the same."[19] During debate over an identical bill in 2008, Representative Sheila Jackson-Lee of Texas said, "The Death in Custody Reporting Act is a critical oversight tool which allows State and local corrections officials and advocates to monitor in-custody suicides, homicides, drug and alcohol overdoses and other critical issues," making it clear that dissemination of data collected under the law beyond the federal government was an integral part of the legislative intent behind the Death in Custody Reporting Act.[20]

Had Congress intended data collected under the DCRA to be exempt from disclosure, it would be quite strange for the legislation's principal supporters to say the opposite in their public remarks on the bill. In fact, if Congress's intent were to make the data collected under DCRA exempt from disclosure under the FOIA, the OPEN FOIA Act of 2009, passed just five years earlier, provided them a straightforward, unambiguous means of doing so: Congress merely had to cite Exemption 3 of the FOIA in the text of the act, and the data collected under the act would

---

data in order to challenge the census count." *Baldrige v. Shapiro*, 455 U. S. 358, 102 S.Ct. 1103, 71 L.Ed.2d 199 (1982).

[17] *See* 146 Cong. Rec. H6736-H6737 (daily ed. July 24, 2000) (statement of Hon. Asa Hutchinson), available at https://www.congress.gov/congressional-record/2000/07/24/house-section/article/H6736-1.

[18] *Id.*

[19] *See* 160 Cong. Rec. S6341 (daily ed. Dec. 4, 2014) (statement of Sen. Patrick Leahy), available at https://www.congress.gov/congressional-record/2014/12/04/senate-section/article/S6341-2.

[20] *See* 154 Cong. Rec. E2245 (daily ed. Oct. 3, 2008) (statement of Hon. Sheila Jackson-Lee), available at https://www.congress.gov/congressional-record/2008/10/03/extensions-of-remarks-section/article/E2245-1.

be indisputably exempt from disclosure. The fact that Congress did not do so is a clear indication that it intended for data collected under the DCRA to remain available to the public.

As such, accepting OJP's argument that Sections 10134 and 10231 prevent the disclosure of data collected in fulfillment of the DCRA would undermine the very purpose for which the DCRA was enacted. Thus, while the DCRA gives the Attorney General broad discretion over the form and manner in which to collect in-custody death data, that discretion cannot be construed so broadly as to allow the Attorney General to circumvent the fundamental purpose of the DCRA itself, *viz.* to provide the public with "important transparency" about "law enforcement efforts and our prison system."

The importance of this point is compounded by the fact that the Attorney General has yet to comply with the DCRA's requirement that he "carry out a study of information reported under" the DCRA in order to "determine means by which such information can be used to reduce the number of such deaths" and "prepare and submit to Congress a report that contains the findings of the study."[21] A 2018 report by the Department of Justice's Office of the Inspector General notes that "the Department does not have plans to submit a required report that details results of a study on DCRA data."[22] As such, the FOIA is the only means by which the public can obtain *any* information on deaths in custody reported to the Attorney General under the DCRA.

## II.     The OJP has not met its burden under the "foreseeable harm" standard.

Under the FOIA Improvement Act of 2016, an agency may only withhold information under FOIA if it meets the following "foreseeable harm" standard:

(A) An agency shall—

(i) withhold information under this section only if—

(I) the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b); or

(II) disclosure is prohibited by law; and

(ii) (I) consider whether partial disclosure of information is possible whenever the agency determines that a full disclosure of a requested record is not possible; and

(II) take reasonable steps necessary to segregate and release nonexempt information.[23]

---

[21] Pub. L. 113–242, §§ 2(f) and 3(c), Dec. 18, 2014, 128 Stat. 2861
[22] U.S. Department of Justice Office of the Inspector General, "Review of the Department of Justice's Implementation of the Death in Custody Reporting Act of 2013," 19-01, December 18, 2018, at i.
[23] 5 U.S.C. § 552(a)(8).

Under this "foreseeable harm" standard, an agency cannot withhold records merely on the basis of conclusory statements about the technical application of a statutory exemption; it must instead provide *precise* reasons why *specific* records, or portions thereof, could be reasonably foreseen to harm an interest protected by an exemption or are prohibited from disclosure by law.[24] Furthermore, when an agency determines that full disclosure of a record would lead to a foreseeable harm or violation of federal law, the standard requires that the agency must also determine whether partial disclosure of the record is possible and take reasonable steps to segregate and release nonexempt information. OJP has not met its burden under this standard.

Courts have already recognized the impact of this new standard. For instance, in *Ecological Rights Foundation v. F.E.M.A.*, the Northern District of California held that an agency could not rely on Exemption 5, along with the deliberative process privilege, because it failed to "provide basic information about the deliberative process at issue and the role played by each specific document."[25] In *Rosenberg v. Department of Defense*, the D.C. district court allowed that agencies could "take a categorical approach" by grouping together like documents, but nonetheless agencies must still "explain the foreseeable harm of disclosure for each category" of documents.[26]

While 5 U.S.C. § 552(a)(8)(B) does state that "Nothing in this paragraph requires disclosure of information that is otherwise prohibited from disclosure by law, or otherwise exempted from disclosure under subsection (b)(3)," this does not relieve OJP of its burden to make specific determinations regarding the applicability of Exemption 3 to "each specific document" or "each category" of documents responsive to a request, as well as determinations regarding the partial disclosure of any portion of each specific document or category of documents if it determines that Exemption 3 prohibits full disclosure of the documents.

In this case, OJP failed to articulate specific determinations for each category of documents responsive to the request, and it neglected to make any determination about the possibility of partial disclosure of the records at issue. Given that the OJP found more than 3,000 pages of documents responsive to the request (presumably encompassing, at a minimum, two categories of documents: *viz.* DCR-1 death forms and DCR-1A quarterly summary forms), a conclusory statement that Sections 10134 and 10231 cover *all of the documents in their entirety* does not meet this burden. The agency should therefore be required to articulate specific and precise reasons why Exemption 3 precludes both full and partial disclosure of each document or category of documents.

---

[24] *See* 162 Cong. Rec. S1496 (daily ed. Mar. 15, 2016) (statement of Sen. Leahy) ("Importantly, codifying the presumption of openness will help reduce the perfunctory withholding of documents through the overuse of FOIA exemptions. It requires agencies to consider whether the release of particular documents will cause any foreseeable harm to an interest the applicable exemption is mean to protect.").

[25] *Ecological Rights Foundation v. FEMA*, No. 16-cv-05254-MEJ, 2017 WL 5972702 (N.D. Cal., Nov. 30, 2017).

[26] *Rosenberg v. DOD*, 342 F. Supp. 3d 62 (D.D.C. Sept. 27, 2018).

United States Department of Justice
May 8, 2021
Appeal: DOJ-OJP Request # 21-FOIA-00114
Page **9** of **9**

### <u>Conclusion</u>

For the foregoing reasons, the OJP's response to my November 4, 2019, FOIA request is inadequate. The agency improperly applied Exemption 3 and failed to meet its burden under the "foreseeable harm" standard. Therefore, I respectfully request that OJP re-process the responsive records and disclose all non-exempt material contained in responsive records.

Thank you for your attention to this matter. If you have any questions about this appeal or the underlying request, you may contact me by telephone at (917)-794-4583 or by email at ethan.corey@theappeal.org.

Sincerely,
Ethan Corey
600 Hibben Magie Rd., Unit 201
Princeton, NJ 08540

# EXHIBIT N



**U.S. Department of Justice**
Office of Information Policy
*Sixth Floor*
*441 G Street, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Ethan Corey                                          January 5, 2022
The Appeal
Unit 201
600 Hibben Magie Road                    Re:   Appeal No. A-2021-01778
Princeton, NJ  08540
ethan.corey@theappeal.org                     Request No. 21-FOIA-00114
                                                          DRC:MGS

**VIA: Email**

Dear Ethan Corey:

        You appealed from the action of Office of Justice Program of the United States
Department of Justice (OJP) on your Freedom of Information Act request for access to records
concerning Death in Custody Reporting Act (DCRA) reports submitted by federal law
enforcement agencies (including the Bureau of Prisons) from FY2016 until FY2020.  I note that
your appeal concerns OJP's denial of your request.

        After carefully considering your appeal, I am affirming OJP's action on your request.
The FOIA provides for disclosure of many agency records.  At the same time, Congress
included in the FOIA nine exemptions from disclosure that provide protection for important
interests such as personal privacy, privileged communications, and certain law enforcement
activities.  OJP properly withheld this information in full because it is protected from disclosure
under the FOIA pursuant to 5 U.S.C. § 552(b)(3).  This provision concerns matters specifically
exempted from release by a statute other than the FOIA (in this instance, 34 U.S.C. §10231,
which pertains to the protection of research and statistical information collected by the Bureau
of Justice Statistics).

        Please be advised that this Office's decision was made only after a full review of this
matter.  Your appeal was assigned to an attorney with this Office who thoroughly reviewed and
analyzed your appeal, your underlying request, and the action of OJP in response to your
request.

        If you are dissatisfied with my action on your appeal, the FOIA permits you to file a
lawsuit in federal district court in accordance with 5 U.S.C. §552(a)(4)(B).

        For your information, the Office of Government Information Services (OGIS) offers
mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-

exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.  If you have any questions regarding the action this Office has taken on your appeal, you may contact this Office's FOIA Public Liaison for your appeal.  Specifically, you may speak with the undersigned agency official by calling (202) 514-3642.

Sincerely,

X_____

Matthew Hurd,

Chief, Administrative Appeals Staff