**EXHIBIT 6 – Declaration of Ethan Corey**

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**
**EASTERN DIVISION**

THE APPEAL, INC. and ETHAN
COREY,

                    *Plaintiffs,*

v.                                                    Case No. 5:22-cv-02111 WLH-SK

U.S. DEPARTMENT OF JUSTICE'S
OFFICE OF JUSTICE PROGRAMS,
                    *Defendant.*

**DECLARATION OF ETHAN COREY IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

I, Ethan Corey, pursuant to 28 U.S.C. § 1746, hereby declare and say the following under penalty of perjury:

1.      I am a research and projects editor at *The Appeal*. I have worked at *The Appeal* for almost 6 years. I earned my Bachelor's degree from Amherst College. I frequently write about criminal justice reform. My research and reporting has been featured in several outlets including *In These Times*, *The Nation*, *New York Focus*, *Retro Report*, and *BuzzFeed News*. I submit this declaration in support of Plaintiffs' cross motion for summary judgment. This declaration is based on my personal knowledge, except as otherwise indicated.

2.      *The Appeal* "is a nonprofit news organization that envisions a world in which systems of support and care, not punishment, create public safety." *See* https://theappeal.org/about-us/

3.      "We produce fact-based reporting and analysis that centers the voices of the people directly impacted by the issues we cover and educates the public on how the criminal legal system

1

works. We correct common misconceptions and counter tough-on-crime narratives to assert that a world without mass incarceration and criminalization is possible and necessary." *Id.*

4.      As part of my reporting, I have experience obtaining and analyzing data from government records to help readers better understand the functioning of the U.S. criminal justice system. My work often focuses on the challenges involved in collecting comprehensive and accurate criminal justice statistics, such as jurisdictional fragmentation, antiquated computer systems, and underfunded statistical agencies. I also regularly make records requests under the Freedom of Information Act ("FOIA") and state public record laws.

5.      Recently, I have published articles such as "Locked In, Priced Out: How Prison Commissary Price-Gouging Preys on the Incarcerated," a first-of-its-kind database of prices charged for toiletries and other essential products in prison commissaries across 46 states, which revealed prices up to five times higher than in the community and markups as high as 600 percent.

6.      I became interested in the Justice Department's collection of in-custody death reports after reading the Office of the Inspector General's December 2018 Review of the Department of Justice's Implementation of the Death in Custody Reporting Act of 2013, which documented delays in the Department's efforts to implement the Death in Custody Reporting Act and warned that the Department's proposed data collection plan may lead to unreliable counts of in-custody deaths. I spoke to policy experts and former Justice Department officials to better understand these issues and published my findings in an article for The Appeal on June 24, 2020, titled "How the Federal Government Lost Track of Deaths in Custody." As part of my reporting process, I hoped to compare in-custody death reports submitted to the Bureau of Justice Statistics under the Mortality in Correctional Institutions reporting program with those submitted to the Bureau of Justice Assistance under the Department's new data collection protocol in order to

2

determine whether the concerns raised by the Inspector General and policy experts were justified. As explained below, I was unable to obtain these records. However, subsequent reports published in September 2022 by the Government Accountability Office, the Senate Permanent Committee on Investigations, and the Office of Justice Programs confirmed that many in-custody deaths have not been reported to the Attorney General as required by the Death in Custody Reporting Act of 2013.

7.      On October 10, 2019, I sent a FOIA request to the Department of Justice's Office of Justice Programs ("OJP") requesting copies of records (including electronic records) that provide "the number of jail deaths reported (and/or unique CJ-9 forms submitted) by each jail facility participating in the Mortality in Correctional Institutions reporting program (formerly known as the Death in Custody Reporting Program) each year from 2000 to 2018, inclusive." The OJP assigned request number 20-FOIA-00016. *See* Exhibits A-B of the Complaint, ECF 1.

8.      DOJ stated that it had identified 182,611 pages of responsive records in the OJP and claimed that all 182,611 pages were exempt from disclosure pursuant to Exemption 3. *See* Exhibit C of the Complaint, ECF 1.

9.      On June 20, 2020, I appealed the OJP's denial of the October 2019 Request. The DOJ Office of Information Policy ("OIP") assigned it number A-2020-01346. *See* Exhibits D-E of the Complaint.

10.      On November 30, 2020, the OIP affirmed OJP's denial. *See* Exhibit F of the Complaint.

11.      On July 27, 2020, I submitted another FOIA request. On July 28, 2020, the OJP acknowledged receipt and assigned it the request number 20-FOIA-00234. *See* Exhibits G-H of the Complaint. I requested:

     a.   All DCR-1 quarterly summary forms submitted by federal, state, and local agencies to the OJP, BJA, or any of its contractors or agents.

     b.   All DCR-1A incident reports submitted by federal, state, and local agencies to OJP, BJA, or any of its contractors or agents.

     c.   All Edward Byrne Memorial Justice Assistance Grant ("JAG") Performance Management Tool reports submitted by state and local agencies using the online portal located at https://bjapmt.ojp.gov/ that include reporting pursuant to the Death in Custody Act of 2013.

12.     On May 21, 2021, I requested a status update on the July 2020 Request. *See* Exhibit I of the Complaint, ECF 1.

13.     I sent a third request on February 5, 2021 requesting "[a]ll Death in Custody Reporting Act (DCRA) reports submitted by federal law enforcement agencies (including the Bureau of Prisons) in FY2016, FY2017, FY2018, FY2019 and FY2020." The OJP acknowledged receipt and assigned it the request number 21-FOIA-00114. *See* Exhibits J-K of the Complaint.

14.     In a letter dated February 24, 2021, DOJ stated that it had identified 3,348 pages of responsive records in the OJP and claimed that all 3,348 pages were exempt pursuant to Exemption 3. *See* Exhibit L of the Complaint.

15.     On May 8, 2021, I appealed the OJP's denial of the February 2021 Request. *See* Exhibit M of the Complaint.

16.     In a letter dated January 5, 2022, the OIP affirmed the OJP's denial. *See* Exhibit N of the Complaint.

17.     In January 2024, the DOJ produced several fully-redacted spreadsheets pursuant to this litigation.

18.     I have reviewed similar records that were produced to *USA Today* pursuant to FOIA litigation, *Gannett v. Satellite Information Network, LLC v. U.S. Department of Justice*, Case No. 1:22-cv-00475-BAH.[1] These records were not subject to Exemption 3, pursuant to a summary judgment ruling in *Gannett*.

19.     I understand that k-anonymity redaction algorithm was used on these records.

20.     Based on my review, the following redactions were applied:

Last name: 100%
First name: 100%
Middle name: 100%
DOB month: 100%
DOB day: 100%
DOB year: 100%
Force specification: 100%
Self-injury specification: 98%
Homicide specification: 89%
Illness specification: 83%
Drug specification: 82%

Offense of incarceration: 78%
Suicide specification: 62%
Facility name: 58%
Facility location: 58%
Admission year: 38%
Admission day: 35%
Death day: 31%
State: 23%
Admission month: 20%
Death month: 17%

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th of May, 2024, in Plainsboro, New Jersey.

_____
Ethan Corey

---

[1] *Available here*,
https://view.officeapps.live.com/op/view.aspx?src=https%3A%2F%2Fwww.ojp.gov%2Fsites%2Fg%2Ffiles%2Fxyckuh241%2Ffiles%2Fmedia%2Fdocument%2Fmcistatedatastatedata16_19.xlsx&wdOrigin=BROWSELINK.

**EXHIBIT 7 – Declaration of Michele Deitch**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

THE APPEAL, INC. and ETHAN
COREY,

                *Plaintiffs,*

v.

U.S. DEPARTMENT OF JUSTICE'S
OFFICE OF JUSTICE PROGRAMS,
                *Defendant.*

Case No. 5:22-cv-02111 WLH-SK

## DECLARATION OF MICHELE DEITCH IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

I, Michele Deitch, pursuant to 28 U.S.C. § 1746, hereby declare and say the following under penalty of perjury:

1.     I am a distinguished senior lecturer at The University of Texas at Austin, with a joint appointment at the Lyndon B. Johnson School of Public Affairs and the University of Texas School of Law. I also serve as the Director of the LBJ School's Prison and Jail Innovation Lab. I co-chair the American Bar Association's Subcommittee on Correctional Oversight. I also helped draft the ABA's Standards on the Treatment of Prisoners. I previously served as a federal court-appointed monitor of conditions in the Texas prison system in the landmark case of *Ruiz v. Estelle*. I submit this declaration in support of Plaintiffs' cross motion for summary judgment. This declaration is based on my personal knowledge, except as otherwise indicated.

2.     The LBJ School's Prison and Jail Innovation Lab is a national policy resource center that conducts research and publishes resources for policymakers on prison and jail conditions, including best practices for correctional oversight and transparency.

1

3. My research and scholarship includes: "But Who Oversees the Overseers?: The Status of Prison and Jail Oversight in the United States," 47 Am. J. Crim. L. 207 (2020)[1]; "Hidden Figures: Rating the COVID Data Transparency of Prisons, Jails, and Juvenile Agencies," Lyndon B. Johnson School of Public Affairs (March 2021)[2]; "COVID and Corrections: A Profile of COVID Deaths in Custody in Texas," Lyndon B. Johnson School of Public Affairs (November 2020)[3]; and "Dead Man Waiting: A Brief Profile Of Deaths In Texas Prisons Among People Approved For Parole Release," Lyndon B. Johnson School of Public Affairs (June 2021).[4] I am also currently conducting a study of natural deaths in custody in Texas prisons.

4. People should not be dying inside prisons and jails. They're supposed to be kept safe and healthy while they're inside. When they do die, the American public has a right to know about these deaths because they happened under our government's watch.

5. The United States is one of the only Western countries without a formal system of external oversight for prisons and jails. Most other western nations, particularly those in Europe, have robust mechanisms in place to perform regular inspections in all places of confinement. Additionally, there is more transparency with respect to deaths in custody in these other countries. For example, the United Kingdom[5] and Australia[6] also release information and reports of deaths in custody that include sensitive information such as names, medical histories, and causes of death.

6. While transparency about in-custody deaths is always essential, it is even more urgent in a country that lacks rigorous oversight mechanisms that include on-site inspections of facilities with publicly available reports about conditions in these prisons and jails. Such

---

[1] *Available at* https://utexas.app.box.com/v/ButWhoOverseestheOverseers
[2] *Available at* https://repositories.lib.utexas.edu/items/2362d249-4830-4ec7-aa7c-264cf6913bc8
[3] *Available at* https://repositories.lib.utexas.edu/items/4ff329e5-83ca-408e-b7e5-b6aa7f194100
[4] *Available at* https://repositories.lib.utexas.edu/items/19c27c6b-b417-4b2e-93b2-8e4a1a181562
[5] *Available at* https://ppo.gov.uk/document/fii-report/
[6] *Available at* https://antar.org.au/issues/justice/deaths-custody/

2

transparency is essential for holding the government accountable for its treatment of people involuntarily in its care.

7.      Data is key to transparency, since it is the only way to understand what transpires within correctional facilities and how conditions are changing over time. Access to individual-level data is indispensable for researchers seeking to understand the causes and consequences of in-custody deaths. My research has relied on access to individual-level data to conduct analyses on the mortality of people in custody. In particular, access to this data has allowed me to research and write reports about people who died from COVID while in prison or jail; people who died in prison while awaiting release on parole; and people who died from natural causes/medical reasons while in prison. Each of these studies has revealed numerous concerns about the management and treatment of incarcerated people and has shown that many of these deaths were preventable.

8.      Effective oversight—by legislators, regulators, court monitors, press, and others—also requires access to meaningful and accurate data in order to create and evaluate policy, identify areas of concern, seek accountability, or simply identify and investigate custodial deaths.

9.      With full compliance, the federal Death in Custody Reporting Act (DCRA) provides an important source of oversight of our nation's correctional facilities by providing a structure and incentive to report comprehensive and accurate data from federal, state, and local prisons and jails, which individual jurisdictions often do not have. Collecting data at this scale allows policymakers, researchers, and law enforcement professionals to see overarching patterns, compare jurisdictions, and provide recommendations.

10.     I understand that Plaintiffs filed Freedom of Information Act requests seeking the Death in Custody Records collected by the Attorney General.

11.     Disclosure of these records allows the public—through independent researchers or the press—to review the effectiveness of the oversight function Congress delegated to the Attorney General through DCRA by conducting its own research and statistical analysis of the data.

12.     Refusing to disclose the data is a troubling position for the DOJ to take. There is no issue on which transparency is more critical than deaths in custody. Access to data about who died in prisons and jails is the bare minimum of what should be publicly available. And the DOJ should welcome further insights that come from analysis of this data, especially since this research could lead to the prevention of future deaths in custody.

13.     Relying on a patchwork of state policy and reporting has not provided sufficient oversight, as the majority of states lack external correctional oversight mechanisms for their prisons. Almost half lack statewide regulation of their jails. And many states do not require the reporting of data about deaths in custody. These gaps make comprehensive nationwide reporting mechanisms and oversight all the more critical.

14.     In my home state of Texas, the prison and jail death counts are extensively tracked by the Texas Justice Initiative (TJI), a nonprofit organization. TJI monitors custodial death reports filed with the Texas Office of the Attorney General, news releases published by the Federal Bureau of Prisons and Texas Department of Criminal Justice, and daily tallies from the Texas Commission on Jail Standards from county jails. TJI publishes an online database of deaths in custody that is as comprehensive as possible and that allows researchers and policy makers to conduct very granular analyses of the data. TJI data contains names associated with every death whenever possible, and this is essential for analysis. I have personally relied heavily on TJI's database in order to conduct my studies of deaths in custody.

4

15.     But, even with the data, there are rarely independent investigations of deaths in custody.   And the Texas Attorney General simply collects the information with no separate investigation or follow-up.

16.     Moreover, deaths in custody should be reviewed by an external entity with an eye towards assessing the quality of care the inmate received prior to death, looking for patterns across multiple deaths, and learning lessons from these incidents. Such post-mortality reviews are exceptionally rare, meaning that there is typically no accountability for the deaths and no opportunity to derive lessons that can help prevent future deaths.

17.     A veil of secrecy hides many of these deaths from the public.

18.     Disclosure of this data can also help provide explanations and insight to the bereaved family of the person who died. Families of those who die in prison or jail are often left entirely in the dark as to what happened to their loved one, leaving them without any sense of closure, let alone a humane and dignified response to such a devastating loss.

19.     The federal government—through the DOJ—is the obvious entity to provide information about deaths in custody, a critical aspect of effective correctional oversight. The first step required is to accurately collect and routinely disclose the data.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed this 27th of May, 2024, in Oslo, Norway.

Michele Deitch, J.D., M.Sc.

**EXHIBIT 8 – Declaration of Josh Vaughn**

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

THE APPEAL, INC. and ETHAN
COREY,

                                    *Plaintiffs*.                    Case No. 5:22-cv-02111 WLH-SK

v.

U.S. DEPARTMENT OF JUSTICE'S
OFFICE OF JUSTICE PROGRAMS,
                          *Defendant*.

## DECLARATION OF JOSH VAUGHN IN SUPPORT OF PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT

I, Joshua Vaughn, pursuant to 28 U.S.C. § 1746, hereby declare and say the following under penalty of perjury:

1.      I am a reporter for *PennLive* in Pennsylvania. I have been a reporter for 11 years. I frequently write about criminal justice and criminal justice reform. I submit this declaration in support of Plaintiffs' cross motion for summary judgment. This declaration is based on my personal knowledge, except as otherwise indicated.

2.      Recently, I have published an article on reported deaths in Pennsylvania jails. I found that the deaths in Pennsylvania jails were undercounted. My reporting uncovered dozens of other cases that were not reported for various reasons, such as Anthony Talotta who died from a heart a heart attack triggered by septic shock from an improperly treated infection in his leg. *See*

3.      As part of my reporting, I made several public record requests to the Pennsylvania Commission on Crime and Delinquency under the Pennsylvania Right-to-Know Law.

1

4.      Beginning in 2020, I made multiple requests for spreadsheets of all deaths in custody and all DCR-1A forms submitted by agencies to PCCD—one for each quarter starting with the third quarter of 2019 and running through the fourth quarter of 2023.

5.      I understand that Plaintiffs requested identical data from the Department of Justice, including CJ-9, DCR-1, and DCR-1A forms, as well as data submitted under DCRA using the online portal.

6.      In response to my requests, I received individual DCR-1A forms for decedents throughout Pennsylvania. They were redacted only to remove certain identifying information like social security numbers and dates of birth.

7.      I also received CJ-11A forms, some of which redacted the address where the death occurred and the decedents' dates of birth.

8.      I also received some records of deaths in custody that were submitted on form OMB #1121-0365. which I understand to be the most recent form authorized for collecting DRCA data.

9.      I also received spreadsheets of the deaths, which included, when submitted, full name, gender, race, ethnicity, birth year, date of death, time of death, street address of the facility, city, state, and zip code, the type of facility, custodial agency, manner of death, and a brief description.

10.     The spreadsheets were not redacted.

11.     Attached as Exhibit A is a true and correct copy of representative examples of documents I received.

I declare under the penalty of perjury that the foregoing is true and correct. Executed this 23rd of May, 2024, in Waynesboro, Pennsylvania.

Joshua Vaughn

2

# Vaughn Exhibit A

## Representative Examples of Right-to-Know Law Responses



**COMMONWEALTH OF PENNSYLVANIA**
**PENNSYLVANIA COMMISSION ON CRIME AND DELINQUENCY**
**AGENCY OPEN RECORDS OFFICE**
**P.O. BOX 1167**
**HARRISBURG, PENNSYLVANIA 17108-1167**
**TELEPHONE: (717) 705-0888**
**FAX: (717) 705-0891**

February 5, 2024

VIA Email:     jvaughn@pennlive.com

Joshua Vaughn
833 Summit Avenue
Waynesboro, PA 17268

Re:     RTKL 2024-06
        Death In Custody Records

Dear Mr. Vaughn:

This letter acknowledges receipt by the Pennsylvania Commission on Crime and Delinquency (PCCD) of your request for records under the Pennsylvania Right-to-Know Law (RTKL). 65 P.S. §§67.101, et seq. Your request is deemed received by this office on February 2, 2024. A response to your request is due on or before February 9, 2024.

You requested "…a copy of the deaths in custody spreadsheet and all DCR-1A submitted to PCCD by agencies for the 4th quarter of 2023."

Your request is granted.  This email contains a link to the records responsive to your request. Confidential data, such as birthdates, social security numbers, and private residence addresses have been redacted.

You have a right to appeal this response in writing to the Office of Open Records (OOR). If you choose to file an appeal, you must do so within 15 business days of the mailing date of this response and provide all the following to OOR:

- A copy of the RTKL request.
- A copy of the Agency's response (or a notation that the request was "deemed denied," meaning the Agency didn't respond at all).
- A written statement explaining why you think the requested record is public.
- A written statement addressing any grounds stated by the agency for denying the request.

RTKL 2024 06
Page 2

The OOR strongly recommends that appeals be submitted through the online version of the official OOR Appeal Form. You may access the site and all forms at: https://www.openrecords.pa.gov/Appeals/HowToFile.cfm

If that is not possible, the OOR also accepts appeals via email, fax, postal mail and in-person submission.

Office of Open Records
333 Market Street, 16th Floor
Harrisburg, PA 17101-2234
Fax: (717)425-5343
Email: openrecords@pa.gov

Sincerely,

Derin Myers
AORO



# Standard Right-to-Know Law Request Form

*Good communication is vital in the RTKL process. Complete this form thoroughly and retain a copy; it may be required if an appeal is filed. You have 15 business days to appeal after a request is denied or deemed denied.*

**SUBMITTED TO AGENCY NAME:** PCCD _____(Attn: AORO)

Date of Request: 2/1/2024 _____ Submitted via: ☑ Email ☐ U.S. Mail ☐ Fax ☐ In Person

**PERSON MAKING REQUEST:**

Name: Joshua Vaughn _____ Company (if applicable): PennLive _____

Mailing Address: ██████████ _____

City: Waynesboro _____ State: Pa ____ Zip: 17268 _____ Email: jvaughn@pennlive.com _____

Telephone: 717-██████ _____ Fax: _____

How do you prefer to be contacted if the agency has questions?  ☐ Telephone ☑ Email ☐ U.S. Mail

**RECORDS REQUESTED:** *Be clear and concise. Provide as much specific detail as possible, ideally including subject matter, time frame, and type of record or party names. RTKL requests should seek records, not ask questions. Requesters are not required to explain why the records are sought or the intended use of the records unless otherwise required by law. Use additional pages if necessary.*

I am requesting a copy of the deaths in custody spreadsheet and all DCR-1A submitted to PCCD by agencies for the 4th quarter of 2023.

**DO YOU WANT COPIES?**  ☐ Yes, printed copies (*default if none are checked*)

☑ Yes, electronic copies preferred if available

☐ No, in-person inspection of records preferred (*may request copies later*)

Do you want certified copies? ☐ Yes (*may be subject to additional costs*) ☐ No

*RTKL requests may require payment or prepayment of fees. See the Official RTKL Fee Schedule for more details.*

**Please notify me if fees associated with this request will be more than ☐ $100 (or) ☐ $_____.**

_____

## ITEMS BELOW THIS LINE FOR AGENCY USE ONLY

Tracking: _____ Date Received: _____ Response Due (5 bus. days): _____

30-Day Ext.? ☐ Yes ☐ No (If Yes, Final Due Date: _____) Actual Response Date: _____

Request was: ☐ Granted ☐ Partially Granted & Denied ☐ Denied  Cost to Requester: $_____

☐ Appropriate third parties notified and given an opportunity to object to the release of requested records.

*NOTE: In most cases, a completed RTKL request form is a public record.*                    Form updated Feb. 3, 2020
*More information about the RTKL is available at https://www.openrecords.pa.gov*

PADOC Death Report Q3 2023

| INMATE NUMBER | LAST NAME | FIRST NAME | MID INIT | SS # | Date Of Death | Time of Death | LOCATION OF EVENT | SEX | DOB (YYYY) | ETHNICITY | RACE | LOCATION CATEGORY | AGENCY | DATE OF RECEPTION | FACILITY TYPE | Circumstances of Death | If Unattended investigation Pending, Agency Conducting Investigation | If Unattended investigation Pending, Approximate # Days Until Determination | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | MITCHELL | WILLIAM | | | 7/1/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | ASCVD; cardiac; Diabetes; Hypertension |
| | BROCK | DAVID | | | 7/2/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Metastatic Colon Cancer |
| | GRAY | MATTHEW | | | 7/7/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Metastatic neoplasm brain metastasis |
| | CUYLER | CYRIL | | | 7/9/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Sepsis; Respiratory failure |
| | DUGGAN | STEVEN | | | 7/10/2023 | | | Female | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Hemorrhagic shock; acute UGI bleed; Cirrhosis |
| | WEBB | WESLEY | | | 7/12/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Cardiac arrest |
| | ROONEY | THOMAS | | | 7/13/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Metastatic pancreatic cancer |
| | BROWN | JAMES | | | 7/16/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Acute Renal Failure |
| | CUNNINGHAM | DAVID | | | 7/18/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Chronic Kidney Disease |
| | REED | ALBERT | | | 8/1/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | End Stage Liver Disease |
| | PEARSON | CALVIN | | | 8/8/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Acute and chronic respiratory failure with hypoxia; Pneumonia; COPD |
| | THOMPSON | CARL | | | 8/10/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Sepsis; perforated gastric ulcer; Follicular lymphoma; ASCVD |
| | JACKSON | PAUL | | | 8/20/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Respiratory Failure; Klebsiella Pneumonia; CVA |
| | SMITH | JAMES | | | 8/24/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Metastatic lung cancer |
| | O'HANDLON | KEVIN | | | 8/27/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Suspicious cell CA of lung w/ mets to liver |
| | LEWIS | THOMAS | | | 9/2/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Hypertensive Cardiovascular Disease |
| | MARTIN | RICHARD | | | 9/6/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Acute cardiac arrest; cardiomyopathy |
| | TAYLOR | GEORGE | | | 9/14/2023 | | | Male | | Unknown | Black or African American | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Family decided comfort care only |
| | MOORE | PETER | | | 9/18/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Corona virus artery; COPD; CHF; respiratory failure; BPH |
| | GARCIA | NATHAN | | | 9/24/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Metastatic cancer |
| | WILLIAMS | ROBERT | | | 9/26/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Pancreatic Cancer |
| | WAKELAND | ROBERT | | | 9/30/2023 | | | Male | | Unknown | White | Law Enforcement Facility | PADOC | | State Prison | Natural Causes | | | Aspiration pneumonia; ASCVD |

## DEATH IN CUSTODY REPORTING ACT

The Death in Custody Reporting Act of 2013 requires states that receive allocations under specified provisions of the Omnibus Crime Control and Safe Streets Act of 1968 to report certain information regarding the death of any person in law enforcement custody. This may include individuals who are detained, arrested, en route to incarceration, or incarcerated in state or local facilities or a boot camp prison.

1. Please provide the following decedent information. If you have multiple deaths in custody, you will report one at a time.
    A. Decedent Name: <u>Nathan James Wazalis</u>
    B. Gender
        1. Male <u>X</u>
        2. Female _____
        3. Other gender identity: _____
    C. Race (Select all that apply)
        1. American Indian or Alaska Native _____
        2. Asian
        3. Black or African American _____
        4. Native Hawaiian or Other Pacific Islander _____
        5. White <u>X</u>
        6. Unknown _____
    D. Ethnicity
        1. Hispanic, Latino, or Spanish origin _____
        2. Not of Hispanic, Latino, or Spanish origin _____
        3. Unknown <u>X</u>
        Birth Year (YYYY). If unknown, please enter "9999": <u>1975</u>

2. Please list the following information regarding the decedent's death.
    A. Date of Death (MM-DD-YYYY): <u>11-24-2022</u>
    B. Time of Death (24-hour clock): <u>08:29AM</u>
    C. Location of Death
        1. Location Name (if applicable). This could be the name of a facility, place of business, or other designation for the location of death: <u>PPSB (Philadelphia Public Service Building)</u>
        2. Street Address: <u>400 N Broad St</u>
        3. City: <u>Philadelphia</u>
        4. State (postal abbreviation): <u>PA</u>
        Zip: <u>19130</u>

Page **1** of **2**

D. If the event causing the death occurred in any of the following facilities, please indicate the appropriate facility below. If the event causing the death did not occur in one of the facilities listed below, please use the "None of the above" answer choice.
   1. Municipal or county jail ____
   2. State prison ____
   3. State-run boot camp prison ____
   4. Contracted boot camp prison ____
   5. Any state or local contract facility ____
   6. Other local or state correctional facility (to include any juvenile facilities) _X__
   7. None of the above ____

3. Please list the name of the department or agency that detained, arrested, or was in the process of arresting the deceased.
   A. Agency Name:  Philadelphia Police Dept

4. Please indicate the manner of death (Mark only one).
   A. Execution (i.e., capital punishment) ____
   B. Accident ____
   C. Death attributed to use of force by a law enforcement or corrections officer ____
   D. Homicide (e.g., an incident between two or more incarcerated individuals resulting in a death) ____
   E. Natural causes ____
   F. Suicide ____
   G. Unavailable, investigation pending _X__
      1. If yes, please report the agency conducting the investigation and an approximate end date.: _____
   H. Other
      1. If other, please explain: _____

5. Please provide a brief description of the circumstances leading to the death (e.g., details surrounding an event that may have led to the death, the number and affiliation of any parties involved in an incident, the location and characteristics of an incident, other context related to the death, etc.).

Male was brought in after being arrested for a warrant, male appeared to be having a medical issue so he was taken to the hospital after being released he was taken back to the PPSB for processing. The male told the nurse that he had no medical issues except heartburn however the nurse discovered he was treated for drug withdrawl, the male was refusing to be processed and verbally unresponsive but otherwise found to be healthy by the nurse. The male was placed in his cell and when checked he was unresponsive and stiff. Decedent's DOB: ██████████

Page **2** of 2



# DEATH IN CUSTODY REPORTING ACT
## Fiscal Year 2020

U.S. DEPARTMENT OF JUSTICE
BUREAU OF JUSTICE ASSISTANCE

ACTING AS COLLECTION AGENT

**FORM DCR-1A**

For each reportable death identified in your Quarterly Summary, please respond to all of the following questions regarding the decedent's characteristics and the circumstances surrounding the death. Information provided on this form must have originated from official government records, documents, or personnel.  You will not be able to SAVE the information unless all fields are completed.

For directions on how to complete this form, please refer to the "Instructions for Completion."

## DATA SUPPLIED BY:

| | |
|---|---|
| Name: Ivan Marshall | Email: Ivan.Marshall@Prisons.Phila.Gov |
| Title: Correctional Sergeant (Investigator) | Telephone: (215) 685-0442 |
| Agency: Philadelphia Department of Prisons | Fax: (215) 671-0454 |
| State: Pennsylvania | Date: 12/11/2019 |

| Decedent Name (Last, First, Middle Initial) | SSN (if known) | Date of Death | Time of Death |
|---|---|---|---|
| Irving, Robert, D | ▇▇▇▇▇ | 12-6-2019 | 21:37 |

Location of Event Causing the Death (Street Address, City, State, Zip)
7901 State Road, Philadelphia, PA, 19136

**1. What was the decedent's sex?**
- ☒ Male
- ☐ Female

**2. What was the decedent's date of birth (or approximate age at death if DOB is unknown)?** ▇▇▇▇
- ☐ Unknown

**3. What was the decedent's ethnic origin? (Mark only one)**
- ☐ Hispanic or Latino
- ☒ Not Hispanic or Latino
- ☐ Unknown

**4. What was the decedent's race? (Mark all that apply)**
- ☐ American Indian or Alaska Native
- ☐ Asian
- ☒ Black or African American
- ☐ Native Hawaiian or Other Pacific Islander
- ☐ White
- ☐ Other
- ☐ Unknown

**5. What location category best describes where the event causing the death occurred? (Mark only one)**
- ☐ Residence/home
- ☐ Law enforcement facility
- ☐ Business – please specify type: _____
- ☒ Other – please specify: Jail Facility -CFCF (C2 Pod 3 - Cell #22)
- ☐ Unknown

**6. Law enforcement agency that detained, arrested, or was in the process of arresting the deceased:**
Philadelphia Police

**7. Date of facility admission/arrest:** 11/27/2019

**8. Facility Type (if applicable):**
- ☒ Municipal or County Jail
- ☐ State Prison
- ☐ State-Run Boot Camp Prison
- ☐ Contracted Boot Camp Prison
- ☐ Any State or Local Contract Facility
- ☐ Other Local or State Correctional Facility (to include any juvenile facilities)



# DEATH IN CUSTODY REPORTING ACT
## Fiscal Year 2020

**FORM DCR-1A**

U.S. DEPARTMENT OF JUSTICE
BUREAU OF JUSTICE ASSISTANCE

ACTING AS COLLECTION AGENT

For each reportable death identified in your Quarterly Summary, please respond to all of the following questions regarding the decedent's characteristics and the circumstances surrounding the death. Information provided on this form must have originated from official government records, documents, or personnel.  You will not be able to SAVE the information unless all fields are completed.

For directions on how to complete this form, please refer to the "Instructions for Completion."

## DATA SUPPLIED BY:

| | |
|---|---|
| Name: Ivan Marshall | Email: Ivan.Marshall@Prisons.Phila.Gov |
| Title: Correctional Sergeant (Investigator) | Telephone: (215) 685-0442 |
| Agency: Philadelphia Department of Prisons | Fax: (215) 671-0454 |
| State: Pennsylvania | Date: 12/11/2019 |

| Decedent Name (Last, First, Middle Initial) | SSN (if known) | Date of Death | Time of Death |
|---|---|---|---|
| Irving, Robert, D | ████████ | 12-6-2019 | 21:37 |

Location of Event Causing the Death (Street Address, City, State, Zip)

7901 State Road, Philadelphia, PA, 19136

9. **Brief description of the circumstances surrounding the death:**

☐ Accident

☐ Death attributed to use of force by a law enforcement or corrections officer

☐ Homicide (e.g., an incident between two or more incarcerated individuals resulting in a death)

☐ Natural Causes

☐ Suicide

☒ Unavailable, investigation pending:

- If yes, please report the agency conduction the investigation and an approximate end date. When the investigation has concluded, please contact the PMT Help Desk to update this report: _____

☐ Other:

- If other, please explain: _____

☐ Please provide a brief description of the circumstances leading to the death (e.g., details surrounding an event that may have led to the death, the number and affiliation of any parties involved in an incident, the location and characteristics of an incident, other context related to the death, etc.). ___See Below:___

Inmate Robert Irving was involved in a physical altercation with another Inmate and died a short time later in an area hospital (Jefferson-Torresdale Campus Hospital).

OMB number 1121-0365, expires on 06/30/2021

# CJ-11A ADDENDUM

OMB No. 1121-0249 Approval Expires 12/31/2012

**RETURN TO: State reporting coordinator**
*(See form CJ-11 for a national listing, or call the Bureau of Justice Statistics at 202.307.0765.)*

Form CJ-11A
**ARREST-RELATED DEATH REPORT**
**2012**



State __Pennsylvania__

Reporting period *(Mark only one)*
◉ Quarter 1 (January 1–March 31)  ○ Quarter 2 (April 1–June 30)  ○ Quarter 3 (July 1–September 30)  ○ Quarter 4 (October 1–December 31)

**1. What was the name of the deceased?**

| Last | First | Middle initial |
|---|---|---|
| Graham | Wayne | R |

**2. What was the time and date of death?**
__8 : 25__ ◉AM ○PM  Month: __02__  Day __9__  2012

**3. Where did the event causing the death occur?**
Street address ████████████████
City, State, Zip ████████████████

**4. What law enforcement agency was involved?**
Name __Pennsylvania State Police__
ORI# __PAPSP0900__

**5. What was the deceased's date of birth?**
████████████████

**6. What was the deceased's sex?**
01 ◉ Male
02 ○ Female

**7. What was the deceased's race/ethnic origin?**
01 ◉ White (not of Hispanic origin)
02 ○ Black, or African American (not of Hispanic origin)
03 ○ Hispanic or Latino
04 ○ American Indian/Alaska Native (not of Hispanic origin)
05 ○ Asian (not of Hispanic origin)
06 ○ Native Hawaiian or Other Pacific Islander (not of Hispanic origin)
07 ○ Two or more races (not of Hispanic origin)
08 ○ Additional categories in your information system
   *Specify* _____

98 ○ Don't know

**8. What was the manner of death?**
01 ○ Homicide by law enforcement officer(s)
02 ○ Other homicide
03 ◉ Suicide
04 ○ Accidental injury to self
05 ○ Accidental injury caused by others
06 ○ Accidental alcohol/drug intoxication
   *Specify* _____
07 ○ Illness—*Specify* _____
08 ○ Other—*Specify* _____

**9. What was the cause of death?**
__Self-Inflicted Shotgun Wound to Head__

**10. Was the cause of death listed above determined from information in a death certificate?**
01 ◉ Yes
02 ○ No—other—*Specify* _____

**11. Did the deceased commit or allegedly commit any criminal offenses in the events leading up to the death?**
01 ◉ Yes
02 ○ No—medical/mental health assistance call
03 ○ No—other—*Specify* _____

**12. What were the most serious reported offenses by the deceased?**
01 __Recklessly Endangering Another Person__
02 __Fleeing and Eluding Police__
03 __Driving Under the Influence of Drugs and/or Alcohol__

**13. Did the deceased die from a medical condition, injuries sustained during the arrest process, or alcohol/drug intoxication?**—*Mark (x) all that apply*
01 ☐ Medical condition (e.g., heart attack)
02 ☒ Injuries
03 ☐ Alcohol/drug intoxication
98 ☐ Don't know

---

**Burden Statement**

Under the Paperwork Reduction Act, we cannot ask you to respond to a collection of information unless it displays a currently valid OMB control number. The burden of this collection is estimated to average 60 minutes per response, including reviewing instructions, searching existing data sources, gathering necessary data, and completing and reviewing this form. Send comments regarding this burden estimate or any aspect of this survey, including suggestions for reducing this burden, to the Director, Bureau of Justice Statistics, 810 Seventh Street, N.W., Washington, DC 20531.

Name of deceased Graham, Wayne R

**14. If the deceased died from arrest-related injuries, how were these injuries sustained?—Mark (x) all that apply**

- 01 ☐ Inflicted by law enforcement officers at crime/arrest scene
- 02 ☐ Inflicted by others at crime/arrest scene
- 03 ☐ Inflicted by law enforcement officers during transit/booking
- 04 ☐ Self-inflicted—Accidental
- 05 ☒ Self-inflicted—Suicide
- 98 ☐ Don't know
- 99 ☐ Not applicable

**15. Were any of the following used by law enforcement officers during the arrest process?**

- 01 ○ Yes—Mark (x) all that apply
  - 01 ☐ Handcuffs
  - 02 ☐ Leg shackles
  - 03 ☐ Pepper spray, mace
  - 04 ☐ Conducted energy device (e.g., taser, stun-gun)
  - 05 ☐ Firearm discharge
  - 06 ☐ Other device (e.g., tire deflation device)

    Specify _____
- 02 ⊙ No
- 98 ○ Don't know

**16. At any time during the arrest process, did the deceased—Mark (x) all that apply**

- 01 ☒ Appear intoxicated (either alcohol or drugs)?
- 02 ☒ Exhibit any mental health problems?
- 03 ☒ Verbally threaten the officer(s) involved?
- 04 ☐ Resist being handcuffed or arrested?
- 05 ☒ Attempt to escape/flee from custody?
- 06 ☐ Attempt to grab, hit or fight with the officer(s) involved?
- 97 ☐ None of the above
- 98 ☐ Don't know

**17. During the arrest process, did the deceased do any of the following—Mark (x) all that apply**

- 01 ☒ Carry or possess a weapon?—Specify weapons
  .410 Rossi Model Shotgun
- 02 ☒ Use a weapon to threaten the officer(s)?—Specify
  .410 Rossi Model Shotgun
- 03 ☐ Use a weapon to threaten other persons?—Specify
  _____
- 04 ☐ Use a weapon to assault the officer(s)?—Specify
  _____
- 05 ☐ Use a weapon to assault other persons?—Specify
  _____
- 97 ☐ None of the above

**18. If a weapon caused the death, what types of weapons were used?—Mark (x) all that apply**

- 01 ☐ Handgun
- 02 ☒ Rifle/shotgun
- 03 ☐ Firearm, unspecified
- 04 ☐ Nightstick or baton
- 05 ☐ Conducted energy device
- 06 ☐ Other weapon

  Specify _____
- 98 ☐ Don't know
- 99 ☐ Not applicable

**19. Where did the death occur?**

- 01 ○ At booking center/police lockup—Complete items 20–23
- 02 ⊙ At crime/arrest scene
- 03 ○ At medical facility following clinical intervention
- 04 ○ Dead on arrival at medical facility
- 05 ○ En route to booking center/police lockup
- 06 ○ Elsewhere

  Specify location _____

  *Form complete, stop here*

Complete the rest of this form only if the death occurred at a booking center.

**20. What was the time and date of the deceased's entry into the law enforcement facility where the death occurred?**

___:___  ○ AM ○ PM  Month_____ Day_____ 2012

**21. At the time of entry into the law enforcement facility, did the deceased—Mark (x) all that apply**

- 01 ☐ Appear intoxicated (either alcohol or drugs)?
- 02 ☐ Exhibit any mental health problems?
- 03 ☐ Exhibit any medical problems?
- 97 ☐ None of the above
- 98 ☐ Don't know

**22. If death was an accident or homicide, who caused the death?**

- 01 ○ Deceased
- 02 ○ Other detainees
- 03 ○ Law enforcement/correctional staff
- 04 ○ Other persons

  Specify _____
- 98 ○ Don't know
- 99 ○ Not applicable; cause of death was suicide, intoxication, or illness

**23. If death was an accident, homicide or suicide, what was the means of death?—Mark (x) all that apply**

- 01 ☐ Firearm
- 02 ☐ Blunt instrument
- 03 ☐ Knife, cutting instrument
- 04 ☐ Hanging, strangulation
- 05 ☐ Drug overdose
- 06 ☐ Other

  Specify _____
- 99 ☐ Not applicable; cause of death was intoxication or illness

**Notes**