BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
CORMAC A. EARLY (D.C. Bar No. 1033835)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-7420
E-mail: cormac.a.early@usdoj.gov

Attorneys for Defendant
U.S. Department of Justice,
Office of Justice Programs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC. and ETHAN COREY,<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS,<br><br>　　　　Defendant. | No. 5:22-cv-02111-JFW (AFMx)<br><br>REPLY BRIEF ON SUMMARY JUDGMENT MOTION<br><br>Motion Hearing: July 12, 2024<br>Time: 11:00 a.m.<br>Courtroom: 9B<br>First Street Courthouse<br>350 W. First Street<br>Los Angeles, CA 90012<br><br>Hon. Wesley L. Hsu<br>United States District Judge |

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 1

ARGUMENT .............................................................................................................. 1

    I.      Defendant's Searches Were Adequate ............................................... 1

    II.     Defendant Properly Invoked Exemption 3 ....................................... 2

          A. The records were "furnished under" Title I of the Crime Control Act ............................................................................................... 2

          B. The records are "identifiable to any specific private person" ................. 5

          C. The records would not be disclosed for the purposes for which they were obtained ............................................................................. 5

          D. The other disclosures that Plaintiffs cite do not change the analysis ...... 6

    III.    Defendant Properly Invoked Exemptions 6 and 7(C) ..................... 6

          A. Disclosure of the records Plaintiff seeks would constitute a clearly unwarranted invastion of personal privacy ................................. 7

          B. The privacy interests at stake outweigh the public interest in disclsoure ............................................................................................ 8

          C. Releasing the records would foreseeably harm privacy ......................... 9

          D. BJS appropriately redacted the records ................................................. 10

CONCLUSION ......................................................................................................... 10

# TABLE OF AUTHORITIES

**CASES**

*Amiri v. Nat'l Sci. Found*,
    664 F. Supp. 3d 1 (D.D.C. 2021) ............................................................................ 9

*Cameranesi v. DOD*,
    856 F.3d 626 (9th Cir. 2017) ................................................................................ 10

*Clemente v. FBI*,
    867 F.3d 111 (D.C. Cir. 2017) ................................................................................ 1

*Dep't of Air Force v. Rose*,
    425 U.S. 352 (1976) .............................................................................................. 10

*FBI v. Abramson*,
    456 U.S. 615 (1982) ................................................................................................ 7

*Nat'l Archives & Records Admin v. Favish*,
    541 U.S. 157 (2004) ................................................................................................ 5

*Seymour v. Barabba*,
    559 F.2d 806 (D.C. Cir. 1977) ................................................................................ 4

*U.S. DOJ v. Reporters Comm. for Freedom of Press*,
    489 U.S. 749 (1989) ............................................................................................ 6, 9

**STATUTES**

34 U.S.C. § 10131 ........................................................................................................ 4
34 U.S.C. § 10132 ........................................................................................................ 5
34 U.S.C. § 10134 .................................................................................................... 4, 6
34 U.S.C. § 10231 ........................................................................................................ 5
34 U.S.C. § 10251 ........................................................................................................ 2
34 U.S.C. § 60105 .................................................................................................... 2, 5

# INTRODUCTION

The records Plaintiffs seek were furnished under Title I of the Crime Control Act, and are thus protected in full under that statute's confidentiality provision and FOIA Exemption 3. Should the Court determine otherwise, it should still affirm Defendant's selective redactions to protect privacy under Exemptions 6 and 7(C).

# ARGUMENT

## I. Defendant's Searches Were Adequate

Plaintiffs do not dispute that agency staff searched all locations reasonably likely to contain responsive records. JAF 20, 29, 34. That includes the search for Plaintiffs' second request, which sought all responses to two BJA forms that only state agencies submit, JAF 8, 11, plus "reports *submitted by state and local agencies*" using a specified BJA website. JAF 8 (emphasis added). Plaintiffs complain that Defendant may not have searched for other forms that "fulfill the substance of the Requests," specifically citing forms submitted by "federal agencies" (not state and local agencies) *to BJS* in response to their second request. Joint Brief ("JB") 29-30; *see also* JAF 96. That argument is meritless as there is no obligation to conduct further searches once the agency has found "the precise records covered by [the] request," *Clemente v. FBI*, 867 F.3d 111, 118 (D.C. Cir. 2017), and, regardless, forms from federal agencies would not be responsive to Plaintiffs' second request.

1

II. **Defendant Properly Invoked Exemption 3**

Plaintiffs do not dispute that records "furnished under" Title I of the Crime Control Act are exempt from release under Title I's confidentiality provision and Exemption 3. JB 30. Instead, they argue that that provision does not apply here.

A. **The records were "furnished under" Title I of the Crime Control Act**

Plaintiffs' first request seeks data "reported by local jails" to the MCI program. JAF 1, 2; ECF 1-1 at 2. Plaintiffs do not dispute that both DCRA 2000 and DCRA 2013 imposed their reporting requirements on *states*, or that DCRA 2013's definition of the term "State" is incompatible with the separately defined term "unit of local government." 34 U.S.C. § 60105(a) (citing *id.* § 10251(a)).

Plaintiffs argue that responsive data may have been submitted by states rather than local jails. JB 33. But their request specifically seeks information reported "*by local jails*." ECF 1-1 at 2. Plaintiffs also argue that "DOJ has offered no evidence that local subdivisions provided DCRA data independently of their state," because DCRA requires states to provide information about local facilities. JB 33. That argument conflates *who* must report the information with the distinct question of *what* the information must cover. If "local subdivisions" directly reported the data, they necessarily did so *independently of DCRA*, because DCRA has always required *states*—and only states—to report. And DCRA's definition of a "state" precludes attributing local submissions to the state itself.

For information submitted between 2006 and DCRA 2013's effective date of October 1, 2015, DCRA is additionally irrelevant because neither version of the statute

2

was in effect. Plaintiffs claim that such information was still "furnished under" DCRA because "BJS continued to use the forms authorized to implement DCRA," and participation was thus "subject to DCRA's guidelines and for DCRA's purposes." JB 32-33. But DCRA had no guidelines and no purposes when it was not in effect.

Plaintiffs cite a BJS form containing instructions for reporting arrest-related deaths in 2009, which stated that collecting the names of the deceased "was required" by DCRA 2000, and that BJS policy prohibited releasing the names associated with death records. JAF 78. Plaintiffs argue that the instructions did not specify that any other information would be kept confidential. JB 33. But the instructions do not support the inference that Plaintiffs attempt to draw. The point of mentioning what "was required" under DCRA 2000, and that BJS would not release the names, was to explain why BJS collected that information in the first place: "Names are used to sort and identify these records internally, and when discussing them with the State reporters involved." JAF 78. Unlike other information that BJS requested, names would not be reported even in aggregate form, so it made sense to explain the need to collect that information.

There is no dispute that Plaintiffs' second and third requests seek information "furnished under" DCRA 2013; those records are still protected, however, because they were *also* "furnished under" Title I, and the confidentiality provision is not limited to information furnished *exclusively* under that title.

Plaintiffs argue that Title I and DCRA cannot both apply here, because "DCRA promotes transparency and anticipated disclosure of the records," rather than

3

confidentiality. JB 34. But DCRA says nothing about releasing data, except for requiring the Attorney General to prepare a report to Congress, which is fully consistent with the statistical uses of data that Title I's confidentiality provision contemplates.

Plaintiffs next argue that Defendant's reading of "furnished under" would be redundant with another provision, 34 U.S.C. § 10134, which applies to data "collected by" BJS. There is no such problem, because the confidentiality provision applies to *all* Title I entities and all information "furnished under" that title, whereas the provision Plaintiffs cite is specific to BJS. In any case, Plaintiffs' reading would create far more problems, because it would imply that *none* of the data "collected by" BJS falls under the confidentiality provision, and that Congress intended for all the raw data collected by BJS to be publicly available for any purpose under FOIA—despite the statutory command that BJS data "shall be used only for statistical or research purposes." *Id.*

Finally, Plaintiffs dispute the relevance of *Seymour v. Barabba*, 559 F.2d 806 (D.C. Cir. 1977), which held that records were "furnished under" the Census Act when they were gathered by the Census Bureau and categorized and assembled for the Bureau's purposes. Here, Plaintiffs argue, BJS and BJA collected DCRA data "*for the purposes of DCRA*," not for under their Title I authority. JB 35. But the Title I purpose of BJS is to collect statistics about the criminal justice system, *see* 34 U.S.C. § 10131, and that of BJA is to administer law enforcement grants, and promote federal-state cooperation in criminal justice activities; there is no conflict between those purposes and DCRA's purposes, so the reasoning of *Seymour* fully applies here.

4

### B. The records are "identifiable to any specific private person"

Plaintiffs next argue that the confidentiality provision does not apply because it only governs records "identifiable to any specific private person," 34 U.S.C. § 10231, and the decedents here do not count as "persons" because they are dead. JB 35-36.

Plaintiffs' argument is premised on the contention that privacy "do[es] not survive death." *Id.* at 35. But even if certain privacy rights do not survive death in the specific examples Plaintiffs cite, privacy rights plainly do survive death in many other important contexts—including under FOIA. *See Nat'l Archives & Records Admin v. Favish*, 541 U.S. 157, 170 (2004). There is thus no reason to presume that Congress intended to protect only the privacy of specific private *living* persons under Title I.

### C. The records would not be disclosed for the purposes for which they were obtained

Plaintiffs argue that because they intend to use the records for research and statistical purposes, release would not violate the confidentiality provision, which only bars disclosure of information for purposes other than the purposes for which it was obtained. JB 36-37. But their professed reasons for seeking the records are insufficient, for two reasons. First, the purpose for which the records were collected, whether solely Title I or also under DCRA, was for statistical analysis *by BJS and BJA*, not by the public at large. *See* 34 U.S.C. § 60105(f) (requiring the Attorney General to "carry out a study of the information submitted"); 34 U.S.C. § 10132 (authorizing BJS to "collect and analyze" criminal justice data). Second, because information released under FOIA is equally available to all, Plaintiffs' own idiosyncratic purposes are not the correct yardstick;

5

instead, the relevant purpose would be to comply with a FOIA request, which would make the information publicly available for any purpose. *See U.S. DOJ v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 771 (1989).

### D. The other disclosures that Plaintiffs cite do not change the analysis

Plaintiffs cite various instances of entities disclosing information that they submitted to BJS, which they argue shows that Defendant's interpretation of the confidentiality provision must be wrong. JB 37-38. But in each case, the entity in question released *its own* information, while the confidentiality provision applies to *BJS* and *BJA*'s information. The reading that Plaintiffs impute to Defendants would be absurd: it would mean, for example, that the federal Bureau of Prisons would be barred from releasing the name of an inmate who died in prison if it also reported that name to BJS. Of course not. The statutory prohibition is on releasing the information held by BJS and BJA, which is the information that Plaintiffs seek.

## III. Defendant Properly Invoked Exemptions 6 and 7(C)

As Defendant has shown, FOIA's privacy exemptions, 6 and 7(C), apply here because the records implicate substantial privacy interests but would only minimally advance the public interest, and Defendant properly redacted the records. JB 21-28.

Plaintiffs argue that the records do not satisfy Exemption 7(C), because they were not compiled for law enforcement purposes. They argue that BJS is precluded from using its data for law enforcement purposes, *see* 34 U.S.C. § 10134, but what matters is that the information was "initially contained in a record made for law enforcement purposes," even

6

if, as here, it was "reproduced or summarized in a new document for a non-law-enforcement purpose." *FBI v. Abramson*, 456 U.S. 615, 631-32 (1982).

Plaintiffs do not dispute that information compiled pursuant to the law enforcement purpose of protecting inmates, staff, and the community satisfies Exemption 7 but argue that these records do not qualify because they are mere "summary accounts of the *facts* of an inmate's death." JB 40. But those accounts are the product of investigations into the circumstances of death, compiled for the law enforcement purpose of protecting inmates, staff, and the community.

### A. Disclosure of the records Plaintiffs seek would constitute a clearly unwarranted invasion of personal privacy

The records here include detailed information about decedents' criminal and medical histories and the circumstances of their deaths; the privacy interests they implicate are thus substantial. JB 23-25. Plaintiffs do not dispute that at least the surviving family members of the deceased retain privacy interests even after an inmate's death, but assert without support than those interests are trivial here. JB 41. But the surviving families' interest in privacy over, for example, graphic details of an inmate's suicide, or information about their medical and psychiatric care, are plainly more than trivial, and Plaintiffs cite no authority to the contrary.

Plaintiffs complain that Defendant has not identified particular details within the records that warrant protection for privacy. JB 41. But Plaintiffs seek the records in their entirety, so Defendant appropriately considered the privacy impact of the records as a

7

whole. As Plaintiffs concede, JB 43, the privacy interests at stake may be higher for some records, such as records of decedents who were never convicted, but it does not follow that the privacy interests are not sufficiently substantial across the board.

**B. The privacy interests at stake outweigh the public interest in disclosure**

The only public interest that matters under FOIA is in shedding light on what the federal government—not state or local governments—is up to, and Plaintiff bears the burden of showing that disclosure would advance the public interest at the margin. JB 25. Plaintiffs do not dispute any of that, but nevertheless rely on the public interest in discovering "intentional misconduct at the *state* level," JB 45, and fail to explain what difference the information they seek would make over what is already publicly available.

Plaintiffs identify a public interest in understanding how DOJ has implemented DCRA, including its financial enforcement mechanism. JB 44. But the public sources Plaintiffs rely on already explain DOJ's choices in implementing DCRA, and Plaintiffs do not argue that any of the additional information they seek would matter at the margin.

Plaintiffs argue that disclosing the raw data could allow additional statistical analysis to inform how federal grants should be allocated, and more generally to "spark federal investigation, guidance, or policy" to address deaths in custody. JB 43-44. But DOJ already analyzes the data and publishes its results. JB 26. Plaintiffs must show a specific *additional* benefit from releasing the raw data, which they have not done. JB 25.

In any case, the possibility of statistical slicing and dicing of "information about *private citizens* that happens to be in the warehouse of the Government" is not a sufficient

8

public interest under FOIA. *Reporters Comm.*, 489 U.S. at 774. For example, although there is, "unquestionably, *some* public interest" in the contents of the millions of rap sheets that the FBI maintains, that nevertheless "falls outside the ambit of the public interest that FOIA was enacted to serve." *Id.* at 775. Detailed information about vast numbers of citizens would obviously allow statistical analyses that might illuminate any number of federal functions, but that interest is insufficient when it comes to rap sheets. The same is true of the records here.

### C.  Releasing the records would foreseeably harm privacy

Releasing the records Plaintiffs seek would foreseeably harm privacy because it would reveal detailed criminal and medical histories, and information about the circumstances of death, for tens of thousands of deceased inmates. Plaintiffs do not dispute that the privacy exemptions contain a built-in harm analysis that satisfies the statutory "foreseeable harm" standard. *See Amiri v. Nat'l Sci. Found*, 664 F. Supp. 3d 1, 21 (D.D.C. 2021). But they argue that any harm from releasing the "quasi-identifiers" that Defendant redacted is speculative, because some of the redacted variables, such as gender and facility name, are not highly sensitive by themselves. JB 46.

Plaintiffs' argument misunderstands the nature of the redactions in this case. Defendant partially redacted "quasi-identifier" variables in the dataset because those variables carry the greatest risk that an entry in the dataset might be definitively identified with other, public, information. JB 28. The reason to redact a given variable such as facility name for a given entry in the dataset is not that the facility name by itself is necessarily

9

highly sensitive, but rather that knowing the facility name, in the context of other publicly available information, would allow definitive identification of the decedent, and would thus reveal all of the *other* sensitive information in the dataset. That harm is far from speculative.

### D. BJS appropriately redacted the records

As already explained, the k-anonymity method allowed for the smallest number of redactions possible to avoid direct identification of entries in the dataset, which include highly sensitive private information, with particular individuals. JB 26-29.

Plaintiff complains that the resulting redactions prevent "meaningful analysis." JB 47. But Defendant's obligation is to protect the privacy interests in the records, not to facilitate Plaintiffs' private use of them. Plaintiffs also assert that "individualized analysis of each decedent's privacy interests" is necessary, *id.*, but the case they cite requires consideration of context, not a separate privacy assessment for every entry in a vast dataset. *See Dep't of Air Force v. Rose*, 425 U.S. 352, 381 (1976). Courts routinely assess the privacy balance for whole categories of records together, *see, e.g.*, *Cameranesi v. DOD*, 856 F.3d 626, 645 (9th Cir. 2017), and this Court should do the same here.

## CONCLUSION

The Court should grant summary judgment in favor of Defendant on all of Plaintiff's claims. Should the Court determine that Exemption 3 does not apply, it should nevertheless grant summary judgment in favor of Defendant on Exemptions 6 and 7(C).

| | | |
|---|---|---|
| 1 | Dated: June 10, 2024 | Respectfully submitted, |
| 2 | | |
| 3 | | BRIAN M. BOYNTON<br>Principal Deputy Assistant Attorney General |
| 4 | | |
| 5 | | MARCIA BERMAN<br>Assistant Branch Director |
| 6 | | |
| 7 | | */s/ Cormac A. Early*<br>CORMAC A. EARLY |
| 8 | | D.C. Bar. No. 1033835<br>Trial Attorney, U.S. Department of Justice |
| 9 | | Civil Division, Federal Programs Branch |
| 10 | | 1100 L Street, N.W.<br>Washington, D.C. 20005 |
| 11 | | Tel.: (202) 616-7420 |
| 12 | | cormac.a.early@usdoj.gov |
| 13 | | *Counsel for Defendants* |

11