BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
CORMAC A. EARLY (D.C. Bar No. 1033835)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 616-7420
E-mail: Cormac.a.early@usdoj.gov

E. MARTIN ESTRADA
United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
JOANNE S. OSINOFF
Assistant United States Attorney
Chief, General Civil Section
JOHN C. KOREVEC (Cal. Bar No. 310157)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-7423
Facsimile: (213) 894-7819
E-mail: john.korevec@usdoj.gov

Attorneys for Defendant
U.S. Department of Justice,
Office of Justice Programs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC. and ETHAN COREY,<br>    Plaintiffs,<br><br>          v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS,<br>    Defendant. | No. 5:22-cv-02111-WLH-AFM<br><br>**DEFENDANT'S SUBMISSION OF CATEGORIES OF INFORMATION FOR WITHHOLDING PURSUANT TO EXEMPTION 6**<br><br>Hon. Wesley L. Hsu<br>United States District Judge |

# INTRODUCTION

Pursuant to the Court's Orders of October 15, 2024, ECF 54, and November 6, 2024, ECF 58, Defendant respectfully submits its proposal for categories of information to withhold under Freedom of Information Act ("FOIA") Exemption 6. Complete listings of the categories of information in the datasets responsive to Plaintiffs' FOIA requests are provided in Exhibits 1-11 accompanying this filing.

Exhibit 1 pertains to data collected by the Bureau of Justice Assistance ("BJA") under the Deaths in Custody Reporting Act ("DCRA") of 2013, starting October 1, 2019. Exhibits 2 and 3 cover state and local data collected by the Bureau of Justice Statistics from 2000 to 2009 (when the Census Bureau acted as the collection agent) and from 2010 to 2019 (when RTI International acted as the collection agent), respectively.[1] Exhibits 4 through 11 cover federal data collected on form CJ13A (Arrest Related Death Report) (Exhibits 4, 6, 8, and 10) and CJ13B (Detention/Incarceration Death Report) (5, 7, 9, 11) for 2016, 2017, the combined years 2018 and 2019, and 2020.

In total, for all data collections and all relevant years, there are over 660 categories of data (with substantial overlap between some categories in different collections – for example, every collection has a distinct variable for the last name of the decedent, which thus accounts for 11 of the categories). In keeping with the Court's prior holding on the proper construction of Exemption 6, Defendant proposes that approximately 470 categories (over 70% of the total) can be released in their entirety.[2]

Of the remaining categories, Defendant respectfully submits that a small number should be withheld in their entirety. Those include categories the Court has already held

---

[1] Pursuant to the Court's summary judgment opinion on Exemption 3, Defendant will continue to withhold all data for the period from 2006 to 2015 when neither DCRA 2000 nor DCRA 2006 was in effect. *See* ECF 54 at 10.

[2] Defendant respectfully preserves its position, for potential appeal, that the k-anonymity redaction method correctly balances the public and private interests in these datasets for purposes of Exemption 6. The proposed alternative redactions in this filing are consistent with the Court's summary judgment opinion, which rejected that position.

may be redacted on a categorical basis, such as direct personally identifiable information ("PII") including names and dates of birth. *See* ECF 54 at 17. Defendant has also identified a handful of categories that, by their nature, "characteristically support an inference" that the requirements of Exemption 6 have been met, *Nation Magazine, Washington Bureau v. U.S. Customs Service*, 71 F.3d 885, 893 (D.C. Cir. 1995).

Finally, Defendant has identified certain categories that require partial redaction of some entries. Many, but not all, entries under those categories contain information that requires redaction under Exemption 6, such as direct PII pertaining to the decedent, or to still-living third parties, as well as certain detailed medical information. Cells in those categories will require line-by-line review and redaction.

For ease of reference, Defendant has color-coded the rows in the attached exhibits, green for categories that can be released in their entirety pursuant to the Court's summary judgment opinion, red for categories to be withheld in their entirety, and yellow for categories that require further line-by-line review.

**I.    Categories to be withheld in their entirety**

The Court has already held that direct "personally identifiable information"—"including name, birth date, and social security number"—may be withheld under Exemption 6. ECF 54 at 17. That holding was correct. Under Exemption 6, what counts is not the public interest in the general subject matter of deaths in custody, but rather the "marginal additional usefulness" of each particular piece of information. *Lahr v. NTSB*, 569 F.3d 964, 978 (9th Cir. 2009) (internal quotation marks and citation omitted). The Court has recognized a public interest in "increas[ing] public accountability and transparency" surrounding deaths in custody, ECF 54 at 14, but direct PII about decedents, such as names and dates of birth, do not marginally advance that interest beyond the voluminous demographic information contained in other categories that

Defendant proposes to release.³ Defendant thus proposes to withhold categories that contain the decedent's full name and month and day of birth (or month, day, and year where reported as a single variable), as well as the decedent's assigned identification number.

In addition, Defendant has identified two additional sets of categories that should be withheld in their entirety. The first set of categories relates to mental health care provided to the decedent, without any particular required connection to that individual's death. Three categories in the datasets ask whether the decedent ever stayed overnight in a mental health facility after admission to the correctional facility. *See* Ex. 3 row 25; Ex. 5 row 29; Ex. 7 row 27. To the extent that information about in-patient mental health care may be relevant to the circumstances of death, that information will almost certainly be captured by other categories, such as those that list the location of death. *See, e.g.*, Ex. 3 rows 26, 27. The public interest in knowing about in-patient mental health care that may have had no relation to the inmate's death is minimal at best, and is certainly outweighed by the highly sensitive nature of that information.

The second set of categories concerns alleged criminal conduct by the decedent in the course of an arrest-related death, that, by its nature, never resulted in charges or conviction. The 2020 Form CJA13, for example, asks both "Did the decedent commit or allegedly commit any criminal acts in the events leading up to the death?" and, if so, "What were the most serious offenses committed or allegedly committed by the decedent?"⁴ Plaintiff has already conceded that privacy interests are higher for arrest-related deaths than for deaths in jail awaiting trial or in prison after conviction. *See* JB 43. Moreover, to the extent that there may be a public interest in the circumstances of the

---

³ Where year of birth is reported as a separate category, Defendant proposes to release that information to allow for calculation of the decedent's age at death.

⁴ *See* https://bjs.ojp.gov/content/pub/pdf/cj13a_2020.pdf. The CJA13 forms for all years are available at https://bjs.ojp.gov/data-collection/federal-law-enforcement-agency-deaths-custody-reporting-program-fdcrp#1-0.

arrest or the decedent's conduct during the arrest, other categories that may be released cover much if not all of that information. For example, the 2020 Form CJ13A asks for the "primary reason for the initial contact between the decedent and law enforcement personnel," as well as numerous questions about the decedent's comportment and actions during the incident, such as whether the decedent appeared intoxicated, used a weapon, injured or threatened law-enforcement officers or civilians, and more.[5] There is no marginal public benefit to be gained from additionally airing unproven, uncharged (and unchargeable) criminal allegations against decedents who necessarily cannot contest those allegations.

## II.   Categories potentially requiring partial withholding

Several additional categories gave respondents the option to provide open-ended text responses, and some, but not all, of the responses in those categories contain information that should be withheld. Defendant seeks to withhold two types of information from those responses: Direct PII concerning the decedent or third parties, and certain detailed medical information.

Direct PII concerning the decedent should be redacted for the reasons already discussed. In addition, direct PII for third parties, such as law enforcement officers or other inmates, who are presumptively still alive, warrants protection for the same reasons and more. The Court has recognized that the deceased have a "diminished privacy interest," ECF 54 at 13, but that does not apply to third parties who happen to be directly identified in these datasets. They thus enjoy heightened privacy interests, and there is no public interest in knowing the particular names of third parties who are otherwise not described in the datasets.

Defendant also seeks to withhold sensitive medical details that are likely to cause the decedent's survivors anguish and that go well beyond what is necessary for "meaningful analysis" of "how inmates die, where, and why." ECF 54 at 17. As the

---

[5] *See* https://bjs.ojp.gov/content/pub/pdf/cj13a_2020.pdf at 2-3.

4

Supreme Court has noted, the FOIA's privacy protections were written in light of—and extend beyond—a common law background that protected surviving relatives' "rights in the character and memory of the deceased." *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 169 (2004) (quoting *Schuyler v. Curtis*, 147 N.Y. 434, 447 (1895)). Many of the free-response answers in the datasets here contain information that does not directly relate to the cause of death, and may be upsetting or embarrassing to the surviving relatives of the decedent. Defendant proposes to redact information in those responses that is not directly relevant to the cause of death, while releasing information that is specific to the cause of death.

Some examples from the dataset may help to illustrate the concern, and Defendant's proposed approach. Defendant would propose to redact the underlined portions of the following examples drawn from the datasets:

- Death ruled an overdose.  <u>Investigation concluded that inmate had injected balloons filled with</u> heroin and methamphetamine.  <u>Balloon burst in stomach.</u>
- <u>He was found unresponsive by his toilet with emesis present on face and in mouth.</u> EMS was activated and responded. Cause of death was ruled acute methamphetamine intoxication.
- <u>He asked for a bedpan, but had defecated in a diaper and on the sheets prior to its arrival.  As nursing staff were attempting to clean him up, inmate [name] was vomiting and choking on it,</u> and at 1716 he became unresponsive and chest compressions were begun.
- <u>He had a history of Bipolar Disorder, Mood Disorder, and Schizophrenia. He presented with disorganized, regressed and primitive behaviors including spitting, urinating in public, trying to drink his own urine, head banging , masturbating in front of female staff members, and smearing feces.</u>
- <u>Inmate was a mentally ill person who was not taking his medications. He</u>

<u>was on several restrictions due to flooding his cell, blocking his toilet, tearing up items and smearing feces. Staff would serve him his meals and would give him fluids in a cup.</u> Inmate [name] did not eat or drink what he was given. Due to this and poor procedures in place at that time the inmate died of dehydration.

- <u>There was a bench warrant out for her arrest, inmate went to hospital for undisclosed reason, stole a needle, got heroin on the way home, got home and shot up the drug, the police came to arrest her for the bench warrant, she was taken into custody, she collapsed and was taken to the hospital where she died.</u> The ME report had Internal bleeding from puncture wounds as the COD.

- Do have an autopsy report: preplanned suicide <u>by going into the shower, slit his wrists & arms w/razor</u> and then stayed in the shower until he lost so much blood he collapsed.

## CONCLUSION

Defendant respectfully submits that the Court should enter judgment allowing Defendant to withhold certain categories in full, and to process additional categories for further withholdings, as described above.

Dated: December 5, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MARCIA BERMAN
Assistant Branch Director

*/s/ Cormac A. Early*
CORMAC A. EARLY
D.C. Bar. No. 1033835
Trial Attorney, U.S. Department of Justice

6

Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Tel.: (202) 616-7420
cormac.a.early@usdoj.gov

*Counsel for Defendants*