THOMAS R. BURKE (State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

SARAH E. BURNS (State Bar No. 324466)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: sarahburns@dwt.com

LEENA M. CHARLTON (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
Email: leenacharlton@dwt.com

Attorneys for Plaintiffs
THE APPEAL, INC., and ETHAN COREY

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC., and ETHAN COREY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS,<br><br>Defendant. | Case No. 5:22-cv-02111-WLH-AFM<br><br>**PLAINTIFFS' OBJECTIONS TO DEFENDANT'S PROPOSED CATEGORIES OF INFORMATION FOR WITHHOLDING PURSUANT TO EXEMPTION 6**<br><br>Hon. Wesley L. Hsu<br>United States District Judge |

Objections to Proposed Categories of Information
For Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

Pursuant to the Court's October 15, 2024 and November 6, 2024 Orders, ECF 54, ECF 58, Plaintiffs respectfully submit these objections to the Department of Justice's proposal for redacted categories under FOIA Exemption 6. The DOJ's proposed redactions exclude vital information well beyond what Exemption 6 allows and, if accepted by this Court, will render the Death in Custody Act ("DCRA") dataset and oversight meaningless, contrary to the public interest.

## LEGAL STANDARDS

Exemption 6 protects "personnel and medical files and similar files the disclosure of which *would constitute a clearly unwarranted invasion of personal privacy*." 5 U.S.C. § 552(b)(6) (emphasis added). Exemption 6 protects the privacy interests of living persons. *See McDonnell v. U.S.*, 4 F.3d 1227, 1253-54 (3d Cir. 1993). If a person is deceased, "then the Government must assert some privacy interest other than the individual's interest in keeping this personal information from public view in order to justify continued withholding of the requested information." *Id.* at 1254. A court must "balance the individual's right of privacy against the basic policy of opening agency action to the light of public scrutiny," *U.S. Dep't of State v. Ray*, 502 U.S. 164, 175 (1991) (citations omitted). Exemption 6 "'tilt[s] the balance (of disclosure interests against privacy interests) in favor of disclosure,' and creates a 'heavy burden' for an agency invoking Exemption 6." *Schoenman v. F.B.I.*, 573 F. Supp. 2d 119, 148 (D.D.C. 2008) (citing *Morley v. C.I.A.,* 508 F.3d 1108, 1128 (D.C.Cir. 2007)). "The scope of a privacy interest under Exemption 6 will always be dependent on the context in which it has been asserted." *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 581 (D.C. Cir. 1996). "Reliance on an Exemption 7[] case… is therefore not wholly adequate. " *Id.* Because of this heavy, context-dependent burden, information may not be categorically withheld. *Id.*

DOJ must also identify a foreseeable harm, by "articulat[ing] both the nature of the harm [from release] and the link between the specified harm and specific

information contained in the material withheld." *Reporters Comm. For Freedom of the Press* ("*R.C.F.P.*") *v. F.B.I.,* 3 F.4th 350, 369 (D.C. Cir. 2021) (citations omitted). It "cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment." *Id.*; *Air Force v. Rose,* 425 U.S. 352, 380 n.19 (1976) ("Exemption 6 was directed at threats to privacy more palpable than mere possibilities."). "Nor may the government meet its burden with 'generalized assertions[.]'" *R.C.F.P. v. F.B.I.*, 3 F.4th at 369. DOJ must disclose "any reasonably segregable" portions of the requested records. 5 U.S.C. § 552(b).

## ANALYSIS

With limited exceptions, Defendant's proposed redactions are overexpansive and improper under Exemption 6 and, therefore, should be rejected. Instead, the Court should only approve redactions to any social security numbers, the month and/or day from the decedents' birthdates, and the direct personally identifiable information ("PII") for inmates, medical professionals, and non-supervisory administrative employees. Defendant has not met its burden for the remainder of its proposed redactions.

### A.   PII

Defendant has proposed withholding two categories of PII: 1) "the decedent's full name and month and day of birth (or month, day, and year where reported as a single variable), as well as the decedent's assigned identification number," ECF 62 at 4; and 2) "direct PII for third parties, such as law enforcement officers or other inmates, who are presumptively still alive." *Id.* at 5. Plaintiffs unambiguously object to the redaction of the decedents' names, because this information is essential to the DCRA dataset. However, Plaintiffs do not object to redaction of certain other PII as described below.

1. **Decedents' PII**

In the context of the Death in Custody Act records, the decedents' names are under no circumstances appropriately withheld. FOIA does not "categorically exempt individuals' identities" from disclosure, *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 15.3 (2006) (citing *Armstrong,* 97 F.3d at 82 (requiring the government to justify its redaction of the names of all "lower level" FBI agents)); *see also News-Press v. D.H.S.*, 489 F.3d 1173, 1205 (11th Cir. 2007) (redacting names, but not addresses, of FEMA grant recipients); *D.O.D. v. F.L.R.A.,* 510 U.S. 487, 501 (1994) (redacting union member home addresses, but not names), and Defendant has not shown it is appropriate here. The decedents' identities and the circumstances of their deaths are the *entire purpose* of the DCRA database. There is no question that their names are essential to determining who is dying in law enforcement custody, how, and why, and thus the balance of interests weighs in favor of disclosure.

This is especially true because, as Defendant recognizes, *see* ECF 62 at 5, withholding names under Exemption 6 rests heavily on whether the individual is alive or dead. Indeed, "[a]n agency invoking FOIA Exemption 7(C) or Exemption 6 must make a reasonable effort to ascertain life status, and the agency's efforts in that respect speak to the reasonableness of its response to a FOIA request." *Schoenman v. F.B.I.*, 604 F. Supp. 2d 174, 203 (D.D.C. 2009) (citations omitted). Here, no such effort is needed. By definition, each entry in the DCRA database is for a deceased individual and should be disclosed.

Similarly, Defendant has given no reasons to withhold the decedents' assigned identification numbers. See ECF 62 at 4. Identification in and of itself is not a "clearly unwarranted invasion of privacy"—especially here, where the database was created to collect that precise information—nor does it precipitate a foreseeable harm. Importantly, the decedents' registration numbers assist with further investigation into a particular death. Retrieving recordings or documentation from a law enforcement

agency will likely require some subset of the information DOJ seeks to withhold.[1] For example, the Bureau of Prisons Inmate Locator[2] requires either an ID number or the name, age, race, and sex of the inmate. Because each jurisdiction may have different requirements, it would be prudent to release the registration numbers as well as any other identifying information, such as race.[3] Therefore, without a suitable justification for withholding the information, identification numbers should also be disclosed. *Schoenman (2008)*, 573 F. Supp. 2d at 148 (Exemption 6 "'tilt[s] the balance…in favor of disclosure'").

These disclosures are in line with Plaintiffs prior arguments. In their motion for summary judgment, Plaintiffs argue that, if anything, *only* PII is appropriately redacted from the DCRA dataset under Exemption 6. ECF 44-1 at 47 ("Even assuming any redaction is warranted, there is no evidence that anything more than PII (*i.e.*, full names and birth dates, and social security numbers) is appropriate."). At oral argument, Plaintiffs argued that "the Exemption 6 logic doesn't apply to this data unless you're looking at a nurse's name or someone who would come up in this dataset [incidentally]." Oct. 4, 2024 Oral Argument Tr. at 37. At no point have Plaintiffs conceded that *decedents' identities* should be redacted. Redaction of PII must be done within the bounds of Exemption 6, and it does not allow for withholding the identities of the deceased.

---

[1] The videos of some of these deaths are public records and may be released to the public. Recently, the New York State Attorney General released the bodycam footage of several law enforcement officers beating and ultimately killing a handcuffed inmate. Erik Ortiz, "'Shocking' bodycam video released of New York officers fatally beating prisoner, NBCNews.com, (Dec. 27, 2024), at https://www.nbcnews.com/news/us-news/shocking-bodycam-video-released-new-york-officers-fatally-beating-pris-rcna185537.

[2] *Available at* https://www.bop.gov/inmateloc/ (last visited Jan. 10, 2025).

[3] Confusingly, DOJ does not propose redactions for most race categories, but marks some categories related to race for redaction. *See, e.g.*, ECF 62-9 at row 34. There is no justification for withholding any race information.

Indeed, Plaintiffs have not found a single case where identities of the deceased were withheld under Exemption 6. Rather, the opposite is true: where the government has determined an individual is dead, the names are almost reflexively disclosed, even for third parties who presumably have stronger privacy interests than the subjects of a FOIA request.[4] *See Pickering v. D.O.J.*, 2021 WL 5810396, at *13 (W.D.N.Y. Dec. 7, 2021) (DOJ agreed to release names it "inadvertently redacted," such as the names of the "now-deceased former FBI Agents" and other deceased individuals, while the court allowed for the names of living third parties to be withheld); *Schoenman (2008)*, 573 F. Supp. 2d at 148–49 ("upon learning that one of the individuals is deceased, the State Department released a new copy of Document P323 to Plaintiff without the redaction of that individual's name"); *McDonnell*, 4 F.3d at 1254-57 ("Persons who are deceased have no privacy interest in nondisclosure of their identities, so the Government should disclose information about them…"); *cf. Schrecker v. D.O.J.*, 349 F.3d 657, 661 (D.C. Cir. 2003) (under Exemption 7, "the Government has taken the necessary 'basic steps to ascertain whether an individual was dead or alive'" because "the privacy interest in nondisclosure of identifying information may be diminished where the individual is deceased"); *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 169 (2004); *cf. D.O.J. v. R.C.F.P.*, 489 U.S. 749, 762 n.13 (1989) (citing *Cox Broadcasting Corp. v. Cohn*, 420 U.S. 469 (1975) (the Constitution prohibited penalizing publication of the name of deceased rape victim obtained from public records)). The same is required here.

Plaintiffs, of course, recognize that when a name is disclosed in combination with a social security number and/or birthdate, some redaction is warranted, as harms such as identity theft are possible even postmortem. Therefore, Plaintiffs do not object to the redaction of social security numbers, to the extent they are included in

---

[4] Defendant incorrectly asserts that the names of third parties should be uniformly redacted whether they are dead or alive. ECF 62 at 5. This is not borne out in the case law.

the database, or of the month and/or day from birthdates.[5] The age of the decedent is an important factor when analyzing deaths in custody, but it does not need to be exact. Thus, redaction of the birth month and/or day is acceptable as long as either the birth year or the age at death *and* the date of death are available. DOJ has indicated agreement with such a compromise. ECF 62 at 4, n.3.

Because DOJ has not shown a "clearly unwarranted invasion of privacy" and a foreseeable harm from the disclosure of decedents' identifying information, it should be disclosed. *See Pinson v. D.O.J.*, 160 F. Supp. 3d 285, 300 (D.D.C. 2016) (rejecting OIP argument that disclosure would result in harm, because it was unsupported by facts).

### 2. Third Parties' PII

At this stage, neither Plaintiffs nor their counsel have seen the narrative or descriptive responses where the names of third parties are likely to appear. For that reason, it is nearly impossible to create rules for redaction for the data as it actually exists. Therefore, Plaintiffs offer general rules to address likely scenarios where third parties may be identified. Because the law and Defendant's own proposal anticipate case-by-case review of these open-ended categories, *see* ECF 62 at 3, Plaintiffs propose either that DOJ flags representative examples of these responses for review or that counsel for the parties review the unredacted data with the Court, such that more specific rules can be crafted if needed. *See* Oct. 4, 2024 Oral Argument Tr. 9:16-25.

While there is no categorial rule for the withholding of third-party identities, *see Armstrong, supra*, Plaintiffs do not object to withholding the majority of PII related to third parties. Plaintiffs agree that names of inmates as well as medical professionals, and non-supervisory law enforcement officers and administrators who

---

[5] Some of the DCRA forms contain a field for the decedent's social security number, but that information does not appear in the database categories as presented by the Defendant.

may be named in the database can be redacted, provided there is no apparent culpability by the third party. However, the names of senior law enforcement officers and administrators are not appropriately redacted.

First, privacy interests of inmates are likely not outweighed by the public interest, as long as the fact of inmate involvement is disclosed.[6] Even in circumstances where an inmate was the proximate cause of the death, disclosure of their name raises more concerns for them than it alleviates for the public. While patterns of specific inmate behavior may be discernable, it is ultimately the government's responsibility to enforce safety measures. *See Illinois v. Perkins,* 496 U.S. 292, 303 (1990) (Brennan, J. concurring) (the state "has virtually complete control"). The DCRA database does not track further investigations of these deaths or disclose the extent of the inmate's culpability, whether and how that person was disciplined, or even whether they are still incarcerated. Thus, it cannot address the inmates' varied privacy interests without significant further investigation. *See ACLU v. DOJ,* 750 F.3d 927, 931 (D.C. Cir. 2014) (privacy interests dependent on arrest, charges, convictions, or acquittals). For example, the database may note that an inmate was suspected of providing drugs that led to an overdose. But, it does not include confirmation after investigation that the inmate actually provided the drugs or explain how the inmate was able to provide those drugs in a prison environment, which is the more important inquiry. In an abundance of caution, Plaintiffs agree that redaction of other inmates' identities is appropriate.

The names of medical professionals and subordinate law enforcement and administrative officers may be redacted for similar reasons, provided there is no indication of culpability, misconduct, or illegal behavior on their part. For example, a nurse who provides chest compressions at the hospital does not need to be identified. However, if a nurse is responsible for withholding food, providing

---

[6] This can be done by replacing the inmate's name with "inmate" or similar.

contraband, or other illegal or grossly negligent behavior, that nurse's name should be disclosed. In other words, if there is indicia of culpability by a third party employee or contractor, regardless of their rank or authority, their name should be disclosed.

Second, the names of senior law enforcement officers and administrators must be disclosed. DOJ has not shown that the balance of interests requires withholding these names. *See Armstrong,* 97 F.3d at 581-82 (prohibiting categorical redaction of FBI agents); *Schoenman (2008)*, 573 F. Supp. 2d at 144 (releasing name of deceased State Department employee). Rather such disclosures allow for identification of people or systems that are routinely involved in, and ultimately responsible for, in-custody deaths. Furthermore, DOJ has again failed to identify a foreseeable harm. In *Jud. Watch*, 449 F.3d at 152-53, the court determined that names and addresses of agency personnel, private individuals, and manufacturers involved in the approval of abortion medications could be withheld by the FDA, when presented with evidence of previous instances of abortion-related violence, such a murder and stalking. *Id.* The DOJ must actually make a showing that harms will likely result from a "clearly unwarranted invasion of privacy." *See Pinson*, 160 F. Supp. 3d at 300. It has yet to do so.

Finally, whether these third parties are appropriately redacted rests on whether they are alive or dead. *See Schoenman, supra.* But Plaintiffs recognize that ascertaining that information for possibly thousands of third parties is impractical, and do not object to proceeding on the assumption that the third party is alive.

### 3. **"Marginal Additional Usefulness" and "Mosaic Theory" are not properly applied.**

Attempting to meet its burden, the DOJ improperly relies on two doctrines: "marginal additional usefulness" and "mosaic theory." ECF 62 at 3-4.

A "marginal additional usefulness" analysis is not appropriate because the DOJ has not released any information from this dataset, and similar data has been subjected

1  to the flawed k-anonymity redaction. Thus, it is premature to determine what
2  information provides "marginal additional usefulness" to the Plaintiffs'
3  understanding of the dataset. *See Lahr v. Nat'l Trans. Safety Bd.*, 569 F.3d 964, 978
4  (9th Cir. 2009) (applying the doctrine under Exemption 7, when "only the names of
5  the witnesses and agents are missing from the released documents"); *Painting Indus.*
6  *of Hawaii Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1486 (9th
7  Cir. 1994) (regarding prior production of detailed payroll information, the court found
8  that "the employees' privacy interests are not outweighed by the marginal additional
9  usefulness that the names and addresses would serve").

10      Second, the doctrine does not obviate the DOJ's requirement to specify a
11 privacy interest and a harm from disclosure. *See supra* at 1-2. Neither has been
12 offered here. Instead, for most of the proposed redactions, DOJ implicitly invokes the
13 "mosaic theory" to justify nondisclosure. *See generally* ECF 62. The mosaic theory
14 allows an agency to withhold information that "when taken together…creates a body
15 of information that illuminates a 'mosaic' of classified information." *Edmonds v.*
16 *D.O.J.,* 405 F. Supp. 2d 23, 32–33 (D.D.C. 2005) ("pieces of seemingly innocuous
17 information can be analyzed and fitted into place to reveal with startling clarity how
18 the unseen whole must operate"). The mosaic theory is invoked under Exemption 7
19 to protect classified information, law enforcement techniques, or national security
20 secrets. *See, e.g.*, *Ctr. for Nat'l Security Studies v. D.O.J.,* 331 F.3d 918, 924-29
21 (D.C.Cir.2003); *C.I.A. v. Sims,* 471 U.S. 159, 178 (1985); *R.C.F.P. v. F.B.I.*, 2024
22 WL 5264334, at *6 n.3 (D.D.C. Sept. 20, 2024) ("Exemption 7(E) protects both 'the
23 full mosaic from disclosure,' and 'also shields each individual piece of the mosaic to
24 prevent anyone from constructing it.'"). Because the information the DOJ ultimately
25 seeks to withhold—the decedents' identities and circumstances of their deaths—is
26 not classified or similarly protected, the mosaic theory is not properly applied.

27
28

**B.     The Remaining Proposed Redactions are Improper**

DOJ also proposes "partial withholding" of categories "containing information that requires redaction under Exemption 6…as well as certain detailed medical information." ECF 62 at 5. These categories can be grouped broadly by medical history and criminal history, and are all highly relevant to the public interest as they relate to the circumstances of the decedent's death. The proposed redactions are improper and should be rejected.

First, this Court has already determined that Exemption 7 does not apply to the DCRA records. ECF 54 at 11. Yet, DOJ relies *only* on cases applying Exemption 7—which is far more permissive than Exemption 6—to justify these redactions. ECF 62 at 3, 6; *Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 893 (D.C. Cir. 1995) (applying Exemption 7(c)); *Favish,* 541 U.S. 157 (same). Any categories that DOJ proposes to redact pursuant to an inapplicable FOIA exemption or another undisclosed privacy principle should be rejected.

Second, DOJ has still not presented any cases, and Plaintiffs have found none, that allow the redaction of the circumstances of death even under Exemption 7. DOJ relies heavily on *Favish*, which restricted only the most sensitive information related to Foster's death. His name, the location, method, the weapon, and results of the investigation were all disclosed. The court withheld only some of the death scene images. *Favish*, 541 U.S. at 167. And, as stated above, these findings are not categorical and do not map cleanly onto Exemption 6. Indeed, *Favish* was quickly distinguished by other courts. *See Showler v. Harper's Magazine Found.*, No. 05-178, slip op. at 6 (ECF No. 97) (E.D. Okla. Dec. 22, 2005) (requiring disclosure of the photograph of the deceased because it "was taken at a public, newsworthy event" and "was the same scene the funeral attendees observed"). Most importantly, however, Plaintiffs are not asking for graphic images or audio of the decedents' last

10

Objections to Proposed Categories of Information
For Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

words. Instead, they are seeking the same information that is routinely released, including in *Favish*—the circumstances of the decedents' deaths.

### 1. Medical Information Should Be Disclosed

DOJ seeks to withhold all information related to the mental health conditions of the deceased as well as some other medical details, which would require line-by-line review of the dozens of categories in the dataset. ECF 62 at 4-5. These details are incredibly important and provide the most insight into the circumstances of an individual death. Details within these categories may show an inmate's apparent distress prior to death as well as neglect by the law enforcement agency.[7] They may also show that contraband, such as drugs, were involved in the death. Such information is inextricably related to the public interest in the DCRA records. Attempting to meet its burden for foreseeable harm, DOJ points only to potential embarrassment by unidentified family members, ECF 62 at 6 ("Many of the free-response answers…may be upsetting or embarrassing to the surviving relatives of the decedent."), which cannot justify nondisclosure. *R.C.F.P. v. F.B.I.,* 3 F.4th at 369 (agency "cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment.").

Furthermore, DOJ's proposal for redaction is impractical and internally incoherent. The proposal leaves it up to the DOJ to decide what is and is not important—a task it has proven incapable of. Specifically, it proposes "to redact information in those responses that is not directly relevant to the cause of death, while

---

[7] These medical and mental health details have been essential to investigations and reporting on similar deaths. *See* Tana Ganeva, "Indiana Jail Let Man with Schizophrenia Starve to Death in Solitary, Lawsuit Alleges," The Appeal.com (Apr. 12, 2023), at https://theappeal.org/joshua-mclemore-died-solitary-jackson-county-jail-indiana/; Julia Marnin, Detainee held in jail 'freezer' died of hypothermia, suit says. Death Ruled Homicide," MiamiHerald.com ( Mar. 1, 2024), at https://www.miamiherald.com/news/nation-world/national/article286140151.html.

11

releasing information that is specific to the cause of death." ECF 62 at 6. The DOJ provides no clear method or reasoning for how it would be done.

For example, the DOJ argues that some mental health information must be redacted in its entirety, but assures the Court that to the extent there is important mental health information, it would be available in other categories, such as location of death. ECF 62 at 4. However, it then includes the location of death as a category that requires redaction. *See e.g.*, ECF 62-2 at row 24; 62-3 at row 27; 62-4 at rows 10-11.

As a further example, DOJ proposes the following redactions: "Death ruled an overdose. <u>Investigation concluded that inmate had injected balloons filled with</u> heroin and methamphetamine. <u>Balloon burst in stomach;</u>" and "<u>He asked for a bedpan, but had defecated in a diaper and on the sheets prior to its arrival. As nursing staff were attempting to clean him up, inmate [name] was vomiting and choking on it</u>, and at 1716 he became unresponsive and chest compressions were begun." ECF 62 at 6. But there is no clear reason why a balloon full of drugs bursting in an inmate's stomach is not directly relevant to their death, when the cause of death was an overdose. And there's no reason an inmate's obvious illness at the time of death is not directly relevant to his cause of death.

Certainly, *all* of the information provided in the database should be "directly relevant to the cause of death." These details were determined by the law enforcement agencies to be relevant and important information about the circumstances of the decedent's death. The DOJ should not be allowed to override those determinations and essentially rewrite the DCRA records.

**2. Details of Decedent's Criminal History Should be Disclosed**

Defendant also proposes redacting criminal history or conduct for arrest-related deaths.[8] ECF 62 at 4-5. Plaintiffs acknowledge that courts have found that

---

[8] Other categories are not addressed in the proposal, such as use of force, law enforcement weapon use, manner of death, non-arrestee criminal offenses, incident

privacy interests in criminal records vary depending on whether the suspect was charged, convicted, or served their sentence. *See ACLU v. DOJ*, 750 F.3d 927, 931-33 (D.C. Cir. 2014). They have also found that those interests are greatly diminished upon death. *See U.S. v. Schlette,* 842 F.2d 1574, 1580-81 (9th Cir. 1988) (privacy interests may weigh against "disclosure of a defendant's 'previous criminal record, early life and developmental history…mental and physical condition, religion, habits, attitudes, [and] associates,'" but "when the defendant is dead…this ground for nondisclosure is foreclosed").

      Importantly, the balance of interests flips in the context of DCRA. For the same reasons uncharged arrestees or suspects have heightened privacy interests in life, the public has the same interest once the person is deceased. Rather than creating potential embarrassment (which, again, is insufficient for nondisclosure), the information reveals the level of interaction with law enforcement at death. It is undoubtedly of public interest what circumstances, including alleged criminal conduct, led to the arrestee's extrajudicial death, especially when the criminal offenses are non-violent or highly speculative. It is qualitatively different if the arrestee was caught committing murder, than if they were pulled over at a stoplight.

      In sum, allowing the DOJ to redact criminal history, "medical details that are likely to cause the decedent's survivors anguish," and other circumstances of their deaths, ECF 62 at 5, allows for disclosures that go far beyond the limits of Exemption 6 without demonstrating a strong privacy interest or a foreseeable harm to justify the redaction.

---

location, decedent race, decedent action, etc., but marked for redaction in whole or in part. Plaintiffs object to these remaining proposed redactions to the extent they are related to the categories above and because Defendant failed to articulate its reasons for withholding the information.

# CONCLUSION

Plaintiffs respectfully submit the Court should enter judgment rejecting Defendant's proposed redactions, except as described above.

DATED: January 10, 2025            DAVIS WRIGHT TREMAINE LLP

                                   By: */s/ Thomas R. Burke*
                                       Thomas R. Burke
                                       Attorneys for Plaintiffs