BRETT A. SHUMATE
Acting Assistant Attorney General
MARCIA BERMAN
Assistant Branch Director
EITAN R. SIRKOVICH (D.C. Bar No. 90030102)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 353-5525
E-mail: Eitan.R.Sirkovich@usdoj.gov
YURI S. FUCHS (CA Bar No. 300379)
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington, DC 20005
Phone:  202-598-3869
Fax: 202-616-8460
Email: Yuri.S.Fuchs@usdoj.gov

Attorneys for Defendant
U.S. Department of Justice,
Office of Justice Programs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC. and ETHAN COREY,<br><br>Plaintiffs,<br><br>v. | No. 5:22-cv-02111-WLH-SK<br><br>**REPLY TO PLAINTIFFS' OBJECTIONS TO DEFENDANT'S SUBMISSION OF CATEGORIES OF INFORMATION FOR WITHHOLDING PURSUANT TO EXEMPTION 6** |

i

| | |
|---|---|
| UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS,<br><br>            Defendant. | Hon. Wesley L. Hsu<br>United States District Judge |

ii

# INTRODUCTION

Following this Court's October 15, 2024 and November 6, 2024 Orders, ECF 54, 58, Defendant submitted its proposal for categories of information to withhold under Freedom of Information Act ("FOIA") Exemption 6, *see* ECF 62 (hereinafter "Submission"). Therein, Defendant asserted that certain direct personally identifiable information ("PII"), such as names and birth dates of decedents, did not marginally advance the public interest recognized by this Court and proposed to withhold this information. In addition, Defendant identified categories potentially requiring partial withholding such as direct PII concerning the decedent or third parties, and certain medical information about a decedent not directly related to his or her cause of death.

In response, Plaintiffs submitted Objections to Defendant's Proposed Categories of Information for Withholding Pursuant to Exemption 6, ECF 64 (hereinafter "Objections"). Plaintiffs objected to withholding decedents' names and identifications as well as any mental healthcare they received unrelated to their death in custody and any unaired criminal accusations. Additionally, they objected to partially withholding PII of certain third parties as well as decedents' sensitive medical details that are likely to cause survivors' anguish. Plaintiffs' arguments that these categories of information are not protected by Exemption 6 are not well taken. Caselaw highlights that despite Plaintiffs' arguments to the contrary, marginal additional usefulness remains the appropriate framework. Under this framework, the privacy interests of the decedents, their survivors, and third parties whose PII is in the data are not outweighed by the marginal additional usefulness that disclosure of this information would serve. For the foregoing reasons and those discussed further herein, Defendant respectfully submits that the Court should enter judgment allowing Defendant to process redactions in the manner described in its Submission.

# ARGUMENT

## I. All data proposed to be withheld are protected by Exemption 6.

Plaintiffs' Objections fail in their argument that Defendant's proposed redactions are improper under Exemption 6. The Court has clarified the FOIA public interest central in this case: "shedding light on . . . the DOJ's response, or lack thereof, to address [state agency wrongdoing]." MSJ Op., ECF 54 at 14. In addition to this interest, the Court noted a more general one in increasing "accountability and transparency." *Id*.

Definitionally, every piece of disclosed information has the effect of increasing transparency; hence it is critical to scrutinize each disclosure's "marginal additional usefulness" if the exemptions within FOIA are to offer any meaningful protection. *Lahr v. NTSB*, 569 F.3d 964, 978 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Painting Indus. of Hawaii Mkt. Recovery Fund v. U.S. Dep't of Air Force*, 26 F.3d 1479, 1486 (9th Cir. 1994) ("as a matter of law, the employees' privacy interests are not outweighed by the marginal additional usefulness that the names and addresses would serve in uncovering 'what the government is up to.'"). Plaintiffs must show an "interest more specific than having the information for its own sake, particularly [when] the information . . . discloses next-to-nothing about the activities or operations of the agenc[y]." *Voice of San Diego v. Naval Crim. Investigative Serv.*, 2024 WL 4471146 at *20 (S.D. Cal. Oct. 8, 2024).

Plaintiffs assert that the use of the marginal additional usefulness framework is "premature" and "not appropriate because the DOJ has not released any information from this dataset." Objs. at 9-10. Plaintiffs' cited cases—which merely involved instances where some information happened to have been released, *see id.* at 10—do not stand for the proposition that some information from a dataset must be released before the marginal additional usefulness framework can be applied.

More importantly, Plaintiffs' Objections put the cart before the horse. The point of identifying redactions is to let *the Court* determine what categories of information Defendant should release from the dataset to begin with. *See* MSJ Op.*,* ECF 54 at 18 ("The Court will rule category by category as to which data must be redacted in compliance with FOIA's Exemption 6."). The marginal additional usefulness framework thus aids the Court in determining whether the information Defendant proposes to withhold provides marginal additional usefulness beyond what will otherwise be released. Plaintiffs do not, of course, object to the approximately 470 categories of information that Defendant proposes to *release*, so there is no problem with the Court using that volume of demographic information as the benchmark against which to assess the marginal additional usefulness of releasing the categories of information that Defendant proposes to withhold.

If the marginal public benefit of releasing sensitive information is outweighed by the relevant privacy interests, the information is properly withheld under Exemption 6. *See Lahr,* 569 F.3d at 978. When, as here, "the government identifies a cognizable privacy interest, the requester then must demonstrate that the public interest served by disclosure (1) '"is a significant one, an interest more specific than having the information for its own sake,"' and (2) 'that disclosure is likely to advance that interest.'" *Voice of San Diego*, 2024 WL 4471146, at *19 (quoting *Lahr*, 569 F.3d at 637 (quoting *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 172 (2004)). In other words, for each piece of requested private information, Plaintiffs must show that the additional light it will shed on DOJ's response to state agency wrongdoing—or the amount it will otherwise substantially promote accountability and transparency—outweighs the extent to which it violates survivors' privacy interests. They fail to do so here for the reasons discussed below.

### A. Decedent's names and identifications

Defendant's Submission proposed to withhold in their entirety categories

3

from the data that contain decedents' names, dates of birth, and identification numbers. These redactions should have been uncontroversial given the Court's prior holding that PII, including name, birth date, and social security number, may be withheld under Exemption 6, based on Plaintiffs' own concession. MSJ Op., ECF No. 54 at 17. Plaintiffs nonetheless object to the withholding of decedents' names and identification numbers, but their objections are not well taken.

To begin, Plaintiffs cannot, nor do they attempt to, show how disclosure of the decedents' names and identification numbers sheds light on DOJ's response to deaths in state and local facilities. ECF 54 at 14. It simply does not, and there is no marginal public benefit to disclosing this information given the privacy interests of the decedents and their families. *See Voice of San Diego*, 2024 WL 4471146, at *13 ("Courts have recognized that decedents' surviving family members likewise have protected privacy interests.") (collecting cases).

Having failed to tie the information to DOJ's response to state agency wrongdoing, Plaintiffs argue that the information will otherwise enhance accountability and transparency because "decedents' identities and the circumstances of their deaths are the entire purpose of [DCRA]." Objs. at 4. Plaintiffs do not elaborate on or provide any support for this assertion. This point is not correct in any event. The entire purpose of DCRA is to collect data on the causes of death in state and local facilities, which Defendant proposes to release, not primarily the names of decedents. *See* 34 U.S.C. § 12104(a)(2) (noting that the reports are primarily for "information regarding the death of any person who is in the process of arrest, is en route to be incarcerated, or is incarcerated" in any state or local correctional facility).

Plaintiffs next assert that the deceased have a reduced interest in privacy, ultimately concluding with the claim that they "have not found a single case where identities of the deceased were withheld under Exemption 6." Objs. at 6. But

4

although caselaw does note that the deceased have a *reduced* interest in privacy, it does not hold that they lack such an interest *altogether*. In fact, individuals who have died in custody as well as their family members have a particular privacy interest here. As Defendant noted in its Submission, release of the identifying information of decedents could bring their survivors anguish and have no marginal additional usefulness for analyzing how inmates die, where, and why. Sub. at 4. Furthermore, caselaw has, in fact, recognized that the names and identifying information of decedents are properly withheld under Exemption 6. *See, e.g., Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 554 (D.D.C. 2014) (recognizing that disclosure of name of third-party decedent "could result in unwanted attention for or harassment of the individual's surviving family members"); *Mobley v. C.I.A.*, 924 F. Supp. 2d 24, 71 (D.D.C. 2013).

Plaintiffs argue that "Defendant has given no reasons to withhold the decedents' assigned identification numbers," Objs. at 4, but disclosure of these identification numbers does not marginally advance the FOIA public interest advanced by this Court or otherwise bear on information about how, where, and why inmates die. Instead, Plaintiffs' argument appears to be that they want this information to conduct a "further investigation into a particular death." *Id*. But further investigation into particular deaths does little to hold DOJ accountable since the federal government's role under DCRA is to review the data in the aggregate to inform broad-based policy decisions. *See* 34 U.S.C. § 60105(f) (directing the Attorney General to prepare a report that "stud[ies] the information . . . [to] determine means by which such information can be used to reduce the number of such deaths; and . . . examine the relationship, if any, between the number of such deaths and the [states'] actions . . . relating to such deaths."). And although Plaintiffs argue that disclosure of identification numbers does not "precipitate a foreseeable harm," *id.* releasing identification numbers could allow individuals to ascertain other

5

identifiable information of decedents including their names, the fact of their custody, and personal details of their deaths; all of which weigh on the privacy interests of decedents and their loved ones.

### B. Third parties' PII

In their Objections, Plaintiffs do acknowledge that the privacy interest in third party PII generally outweighs any public interest in its disclosure. Objs. at 7-8 (agreeing with withholding "names of inmates as well as medical professionals, and non-supervisory law enforcement officers and administrators . . . provided there is no apparent culpability"). They take issue, however, with withholding the PII of third parties who are "senior" law enforcement officers or administrators and any other individuals who may be "culpable" for a death in custody. *See id*. Plaintiffs' arguments fail as a legal and practical matter.

As a legal matter, Plaintiffs argue that disclosure of this information is necessary because "such disclosures allow for identification of people or systems that are routinely involved in, and ultimately responsible for, in-custody deaths." Objs. at 8. But as with Plaintiffs' requests for decedents' names and identifying information, this is not a FOIA public interest recognized by this Court. It sheds no light on DOJ's response to deaths in local and state facilities. Plaintiffs again articulate an interest in investigating the exact deaths reported, but as already discussed, further investigation into particular deaths does little to hold DOJ accountable since the federal government's role under DCRA is to review the data in the aggregate to inform broad-based policy decisions. *See* 34 U.S.C. § 60105(f).

As a practical matter though, Plaintiffs' proposal is untenable. OJP has no standard by which to determine that a third-party employed by another entity is "senior," nor is there an even-handed way to determine "apparent culpability." Objs. at 8. That information is simply not discernible from the dataset and there is no requirement under FOIA and its Exemption 6 to apply the value judgments that

6

would necessarily underpin any suggested seniority analysis or culpability assessment.

Finally, in arguing that the names of senior law enforcement officers and administrators can be disclosed, Plaintiffs point to caselaw where courts prohibited full redaction of various *federal* government employees. *See id.* at 8 (citing *Armstrong v. Exec. Off. Of the President*, 97 F.3d 575 (D.C. Cir. 1996) and *Schoenman v. F.B.I.*, 573 F. Supp. 2d 119 (D.D.C. 2008)). Yet, a short glimpse of these cases highlights how inapposite they are to the withholding of third-party PII here. Specifically, Plaintiffs point to cases where the courts released information regarding federal government officials that, furthering the purposes of FOIA, would shed light on the operation of the federal government. By contrast, Plaintiffs object to the withholding of third-party PII of *state and local* officials whose release would serve no public interest under FOIA in learning about the operations of the federal government. *See Rimmer v. Holder*, 700 F.3d 246, 258 (6th Cir. 2012) ("[W]e note that FOIA is concerned only with shedding light on misconduct of the federal government, not state governments.").

### C. Medical history with no direct connection to circumstances of death and other disturbing and graphic details

Plaintiffs also seek all private medical information available in these datasets, regardless of whether the information has any connection to the circumstances of a death in custody. Objs. at 12. This goes well beyond the scope of what is necessary to satisfy the public interest under FOIA. Whether, for example, an individual spent time in inpatient care years before their death simply does not inform the public about DOJ's response or increase accountability and transparency about deaths in custody. Thus, Defendant's Submission proposed to redact this information and suggested that if it were relevant to circumstances of death it could be found elsewhere, such as in the location data. *See* Sub. at 4.

7

Plaintiffs seized on this statement to argue that Defendant contradicted itself because location data is marked yellow in the Submission. *See* Objs. at 13. But this reflects a fundamental misunderstanding DOJ's proposal. The data in the exhibits to Defendant's Submission marked yellow, *see* ECF 62-1 to 62-11, are designated for partial withholding, meaning that they will require line-by-line review to determine if they contain protected private information. These data categories almost exclusively contain free-response fields in which the submitter may have included an unknown amount of private information protected by Exemption 6. *See id*. It will thus take time for OJP to closely review these data line-by-line, likely at least 2-3 months, although for most data no redactions will be necessary. It may even be that most categories of information marked yellow will ultimately be released in their entirety.[1]

Plaintiffs also misstate the privacy interest in the medical information as limited to the potential embarrassment of the survivors. Objs. at 12. Although this is one element of the foreseeable harm survivors might experience, it is not the only one. Courts "have recognized that surviving family members have cognizable privacy interests in the medical records and autopsy reports of their close relatives." *Voice of San Diego*, 2024 WL 4471146 at *14. Furthermore, "[i]t requires no stretch of the imagination to conclude that releasing [medical] information 'could reasonably be expected to constitute an unwarranted invasion of personal privacy,' 5 U.S.C. § 552(b)(7)(C), as its release could cause 'additional anguish' to the surviving family." *Id*. at *15 (quoting *Katz v. Nat'l Archives & Records Admin.*, 862 F. Supp. 476, 485 (D.D.C. 1994), *aff'd* 68 F.3d 1438 (D.C. Cir. 1995)). This is so

---

[1] The same is true of other categories marked yellow that Plaintiffs object to any withholding of, such as use of force and decedent's race. Objs. at 5, n. 3, 12-13, n. 8. These categories were designated for further review because they are free-response fields. Sub. at 6.

8

even when the medical information is in the form of reports and interviews, not just the death scene images from which Plaintiffs attempt to distinguish their request. *See* Objs. at 11; *Voice of San Diego,* 2024 WL 4471146 at *14 ("'[F]amily members have a privacy interest in the medical and autopsy records at issue [] even if the records do not depict graphic death scenes'") (quoting *Wessler v. United States Dep't of Just.*, 381 F. Supp. 3d 253 (S.D.N.Y. 2019)).

Plaintiffs argue that all private medical information is essential to understanding the circumstances of death because it answers key questions such as whether contraband was involved, whether the decedent was in distress, or whether there was neglect by law enforcement agencies. *See* Objs. at 12. But Defendant's proposed redactions do not withhold the answer to these types of questions; they simply propose to exclude *additional* unnecessary, sensitive details that are likely to cause surviving families' significant distress.

Several examples provided by Defendant in its Submission prove this point. For instance, Defendant proposed—and Plaintiffs specifically oppose—the following two redactions:

- Death ruled an overdose. <u>Investigation concluded that inmate had injected balloons filled with</u> heroin and methamphetamine. <u>Balloon burst in stomach</u>.
- <u>He asked for a bedpan, but had defecated in a diaper and on the sheets prior to its arrival. As nursing staff were attempting to clean him up, inmate [name] was vomiting and choking on it,</u> and at 1716 he became unresponsive and chest compressions were begun.

These redactions are appropriate because it is not necessary to know gruesome or vulgar details likely to cause survivors anguish to understand the circumstances of death. With respect to the first, the fact of the death by "overdose" and the involvement of contraband (heroin and methamphetamine) would be released; release of the details beyond that would not marginally advance the FOIA public

9

interest recognized by this Court. Regarding the second, the details are so patently disturbing that it is proper to recognize the public interest in their disclosure is outweighed by the foreseeable privacy harms. Even without providing names and identifications, family members and scrupulous journalists can use this information to identify individual decedents through matching facilities, dates of death, and other circumstances to other publicly available information.

Plaintiffs' attempt to reframe the standard governing the issue as one of simple relevance should be rejected. Objs. at 12 ("there is no clear reason why a balloon full of drugs bursting in an inmate's stomach is not directly relevant to their death"). While it is possible to conceive of a balloon full of drugs or the decedent defecating in a diaper as "relevant" to the causes of death, this does not answer the question of whether the "public interest in disclosure . . . outweigh[s] the intrusion that such disclosure would bring about." *Painting Indus. of Hawaii*, 26 F.3d at 1484. In both these instances, it does not.

Defendant also proposed the following redaction:
- Do have an autopsy report: preplanned suicide <u>by going into the shower, slit his wrists & arms w/</u>razor <u>and then stayed in the shower until he lost so much blood he collapsed.</u>

This redaction is also appropriate because, again, the disturbing and graphic details of how an individual committed suicide are not necessary to understand that this person who had "preplanned suicide" was experiencing distress.

As a final example, Defendant proposed:
- <u>Inmate was a mentally ill person who was not taking his medications. He was on several restrictions due to flooding his cell, blocking his toilet, tearing up items and smearing feces. Staff would serve him his meals and would give him fluids in a cup.</u> Inmate [name] did not eat or drink what he was given. Due to this and poor procedures in place at that time the inmate died of

10

dehydration.

These redactions likewise serve to spare this inmates' survivors the anguish of disturbing details while remaining completely transparent about the possibility of neglect by law enforcement and failures of procedure. Defendant's proposed redactions therefore demonstrate that it is possible to accommodate the public interest while also safeguarding the privacy interests of decedents and their survivors. Plaintiffs do not require the totality of each decedent's medical information to shed light on DOJ's response to state agency wrongdoing or increase transparency about the details surrounding deaths in custody.

### D. Criminal history and alleged criminal conduct

Finally, as explained in Defendant's Submission, releasing decedents' criminal history—both conduct leading to their incarceration and alleged criminal conduct in instances where there was a death in the course of an arrest—would also be an undue invasion of privacy. *See* Sub. at 5 ("There is no marginal public benefit to be gained from additionally airing unproven, uncharged (and unchargeable) criminal allegations against decedents who necessarily cannot contest those allegations."). Decedents' criminal histories are temporally and spatially removed from their deaths in state custody such that this information cannot possibly contain anything relating to the circumstances of their deaths or DOJ's response.

With respect to criminal conduct alleged in the course of arrests leading to deaths in custody, there is minimal public interest in knowing alleged charges that were never brought against decedent. *See ACLU v. U.S. Dep't of Just.*, 750 F.3d 927, 932 (D.C. Cir. 2014) ("we have regularly concluded that individuals have a 'strong interest' in avoiding disclosure of their involvement in 'alleged criminal activity.'"). To the extent these details are relevant, they will be included elsewhere in the datasets describing the circumstances of death.

Arguing to the contrary, Plaintiffs rely on a 1988 case, *U.S. v. Schlette*, 842

11

F.2d 1574, 1581 (9th Cir. 1988), for an outdated statement of the law that a decedent's criminal history is "personal to the [decedent] and do[es] not survive his death." *Id*. Thus that court stated, because the decedent is dead, "this ground for nondisclosure is foreclosed." *Id*. But, as this Court has already acknowledged, FOIA law has developed to recognize that although the deceased have a diminished privacy interest, this "does not mean that the family of a deceased person has *no* privacy interest regarding the information released about the decedent." MSJ Op., ECF 54 at 13.

Confusingly and without support from any authority, Plaintiffs suggest that when contemplating disclosure of criminal histories and alleged criminal conduct, "the balance of interests flips in the context of DCRA" because "[f]or the same reasons uncharged arrestees or suspects have heightened privacy interests in life, the public has the same interest once the person is deceased." Objs. at 14. But the reason that uncharged arrestees and suspects have heightened privacy interests is grounded in "[t]he presumption of innocence [that] stands as one of the most fundamental principles of our system of criminal justice." *ACLU*, 750 F.3d at 931-33. Why this justification for nondisclosure would become a reason favoring disclosure upon one's death is unclear and unfounded in DCRA.

Lastly, Plaintiffs assert that this information must be disclosed when it reveals the qualitative circumstances of a death in custody. *See* Objs. at 14 ("It is undoubtedly of public interest what circumstances, including alleged criminal conduct, led to the arrestee's extrajudicial death, especially when the criminal offenses are non-violent or highly speculative."). This understanding comports with Defendant's Submission, which stated that "to the extent that there may be a public interest in the circumstances of the arrest or the decedent's conduct during the arrest, other categories that may be released cover much if not all of that information." Sub. at 4. For example, the 2020 Form CJ13A available in ECF 62-10 asks for the

"primary reason for the initial contact between the decedent and law enforcement personnel," as well as numerous questions about the decedent's compliance and actions during the incident, such as whether the decedent appeared intoxicated, used a weapon, injured or threatened law-enforcement officers or civilians, and more. All these categories were marked green or yellow in DOJ's proposal, meaning that they will be immediately released or released upon a determination that other private information is not contained in the free-response fields.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests the Court enter judgment allowing Defendant to process redactions in the manner described in its Submission.

Dated: January 29, 2025                Respectfully submitted,

                                       BRETT A. SHUMATE
                                       Acting Assistant Attorney General

                                       MARCIA BERMAN
                                       Assistant Branch Director

                                       */s/ Eitan R. Sirkovich*
                                       EITAN R. SIRKOVICH
                                       D.C. Bar. No. 90030102
                                       Trial Attorney, U.S. Department of Justice
                                       Civil Division, Federal Programs Branch
                                       1100 L Street, N.W.
                                       Washington, D.C. 20005
                                       Tel.: (202) 353-5525
                                       Eitan.R.Sirkovich@usdoj.gov

                                       YURI S. FUCHS (CA Bar No. 300379)
                                       U.S. Department of Justice
                                       Civil Division, Federal Programs Branch

1100 L Street, NW
Washington, DC 20005
Phone: 202-598-3869
Fax: 202-616-8460
Email: Yuri.S.Fuchs@usdoj.gov

*Counsel for Defendants*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendant, certifies that this brief contains 3,895 words, which complies with the word limit of L.R. 11-6.1.

/s/ Eitan R. Sirkovich
_____
EITAN R. SIRKOVICH

January 29, 2025