THOMAS R. BURKE (State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599
Email: thomasburke@dwt.com

SARAH E. BURNS (State Bar No. 324466)
DAVIS WRIGHT TREMAINE LLP
865 South Figueroa Street, Suite 2400
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899
Email: sarahburns@dwt.com

LEENA M. CHARLTON (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 21st Floor
New York, New York 10020
Telephone: (212) 489-8230
Facsimile: (212) 489-8340
Email: leenacharlton@dwt.com

Attorneys for Plaintiffs
THE APPEAL, INC., and ETHAN COREY

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC., and ETHAN COREY,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS,<br><br>Defendant. | Case No. 5:22-cv-02111-WLH-SK<br><br>**PLAINTIFFS' SUR-REPLY IN FURTHER SUPPORT OF THEIR OBJECTIONS TO DEFENDANT'S SUBMISSION OF CATEGORIES OF INFORMATION FOR WITHHOLDING PURSUANT TO EXEMPTION 6**<br><br>Hon. Wesley L. Hsu<br>United States District Judge |

---

Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

Plaintiffs respectfully submit this sur-reply in further support of their Objections to the DOJ's Submission of Categories of Information for Withholding Pursuant to Exemption 6.

### INTRODUCTION[1]

Because this Court has already found that the public interest in the Death in Custody Reporting Act dataset is "undoubtedly high," ECF 54 at 13, the DOJ must identify a substantial privacy interest, for which disclosure "*would constitute* a *clearly unwarranted* invasion of privacy,*"* to justify withholding records. 5 U.S.C. § 552(b)(6) (emphasis added). This must be done *before* the court balances interests and *before* the burden shifts to Plaintiffs to show marginal additional usefulness "for each piece of requested private information," *i.e.*, for each decedent (or discernable categories of decedents). ECF 73 at 3; *Rollins v. Dep't of State*, 70 F. Supp. 3d 546, 553 (D.D.C. 2014) (courts determine if disclosure is clearly unwarranted invasion of privacy then balance interests); *Lahr v. N.T.S.B.*, 569 F.3d 964, 978 (9th Cir. 2009) (balancing interests after identifying a privacy interest). Yet the DOJ—on its fourth attempt—still has not made this fundamental showing.

The DOJ also fails to meet its "independent and meaningful burden" of demonstrating foreseeable harm, as required by the FOIA statute:

---

[1] Though Plaintiffs requested DCRA records from federal, state, and local agencies, the DOJ does not address these federal submissions in its reply. On that basis, the Court should apply Plaintiffs' proposed redactions to the federal records, as it aligns with past conduct by federal agencies that have disclosed names and circumstances of deaths in custody without redactions, *see* ECF 44-4, Charlton Declaration ¶ 18, Ex. R, and Defendant has lodged no opposition.

1
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

Congress added the distinct foreseeable harm requirement to foreclose the withholding of material unless the agency can "articulate both the nature of the harm [from release] and the link between the specified harm and specific information contained in the material withheld." H.R. REP. NO. 391, at 9. Agencies cannot rely on "mere 'speculative or abstract fears,' or fear of embarrassment" to withhold information. S. REP. NO. 4, at 8. Nor may the government meet its burden with "generalized assertions[.]" *Machado Amadis*, 971 F.3d at 371.

*R.C.F.P. v. F.B.I.*, 3 F.4th 350, 369 (D.C. Cir. 2021). The harms the DOJ has articulated—possible anguish and embarrassment, as well as "ascertain[ing] identifiable information of decedents"—do not meet this burden, *see* ECF 73 at 6, 8-9 (conflating *de minimis* privacy interests with foreseeable harm), independently requiring disclosure.

## ARGUMENT

### I. FAMILY MEMBERS' PRIVACY RIGHTS CANNOT JUSTIFY NONDISCLOSURE

The DOJ's improper reliance on the surviving family members' rights cannot justify its proposed redactions. Plaintiffs do not deny that family members may have a privacy right concerning their deceased close relatives, but it "does not mean that the family is in the same position as the individual who is the subject of the disclosure." *Nat'l Archives & Recs. Admin. v. Favish*, 541 U.S. 157, 167 (2004) (applying Exemption 7). Indeed, these rights are extremely narrow. Derived from "the right of family members to direct and control disposition of the body of the deceased and to limit attempts to exploit pictures of the deceased family member's remains," *id.*, the privacy interest is limited to "a right to personal privacy with respect

2
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

to *images and audio of their close relative's final moments.*" *McWatters v. A.T.F.*, 2024 WL 687966, at *3 (D.D.C. Feb. 20, 2024) (emphasis added) (regarding family members' voices in an audio recording under Exemption 7(C)); *Wolk L. Firm v. N.T.S.B.*, 392 F. Supp. 3d 514, 527 (E.D. Pa. 2019) (exempting "photographs 'depicting mutilated human remains, autopsy reports, and medical case reviews'" under Exemption 6).[2] This narrow privacy interest does not apply here because the records Plaintiffs seek do not contain this type of information. *See* ECF 44-5, Vaughn Declaration Ex. A.

Despite relying on these privacy interests, however, the DOJ fails to identify a single, real person who has raised concerns about disclosure. Indeed, the DOJ's paternalism assumes that family members' possible anguish outweighs their outrage that their loved one has died in custody and their desire to know what happened. Rather, the available evidence shows that families often welcome the disclosure of this information. Michele Deitch, Director of the LBJ School's Prison and Jail Innovation Lab, stated:

> Disclosure of this data can also help provide explanations and insight to the bereaved family of the person who died. Families of those who die in prison or jail are often left entirely in the dark as to what happened to their loved one, leaving them without any sense of closure, let alone

---

[2] *See also Favish,* 541 U.S. at 170 ("we hold that FOIA recognizes surviving family members' right to personal privacy with respect to their close relative's death-scene images"); *Badhwar v. Air Force,* 829 F.2d 182, 185–86 (D.C.Cir.1987) (family privacy interest in autopsy reports "of a kind that would shock the sensibilities of surviving kin"); *New York Times Co. v. N.A.S.A.*, 782 F. Supp. 628, 631 (D.D.C. 1991)("the 'intimate detail' that underlies the privacy interest in this tape is the sound of the astronauts' voices."); *Voice of San Diego v. N.C.I.S.*, 2024 WL 4471146, at *14 (S.D. Cal. Oct. 8, 2024)(collecting cases).

3
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

a humane and dignified response to such a devastating loss.

*See* ECF 44-5, Deitch Declaration ¶ 18. Similarly, in *Gannett v. DOJ*, Gina Barton, a *USA Today* reporter, stated:

> I have contacted dozens of people whose loved ones died in jails and prisons. When I contacted them, I had no reason to believe that they would be more likely than the average person who has lost a loved one to speak with me. None of them complained that I was invading their privacy. Each of them was eager to speak with me about their loved ones' deaths. They all wanted the public to know the truth about what happened. They welcomed my help in accessing and publishing information about their loved ones' deaths, including their loved ones' names and age, cause of death, and what crimes they had been convicted of. They all hoped my reporting would help hold accountable those responsible for the deaths, and in many cases, it did."

Case No. 22-cv-475 (BAH) (D.D.C.), ECF 36-4, Barton Declaration ¶¶ 4-6. It is, therefore, impossible to determine with any certainty whether an invasion *would* be unwarranted in this context. Especially without evidence from the DOJ, the Court should not presume family members would view disclosure of this information as an unwarranted invasion of their privacy.

Because the DOJ fails to show a clearly unwarranted invasion of privacy as to the decedents, disclosure is required, and the marginal additional usefulness analysis is moot.[3]

---

[3] The DOJ repeatedly applies the "marginal additional usefulness framework" incorrectly. *See* ECF 73 at 2-3. According to cases it cites, the marginal additional usefulness is not used for substantive redactions. In *Lahr*, the court was reviewing only the names of third party witnesses and agents, because the plaintiff "already possesse[d] the substance of the eyewitnesses' reports and the FBI agents' thoughts as they are expressed in the released memoranda and emails." 569 F.3d at 978 ("we viewed skeptically the assertion that the public interest is materially advanced by disclosing names of individuals redacted from documents already in the public record") (citing *Forest Service*

4
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

## II. CLARIFYING THE PUBLIC INTERESTS

Because it can only establish a diminished privacy interest, the DOJ trivializes the nature of the public interest at issue, treating it as a morbid curiosity and ignoring the statute and its legislative history. *Compare* ECF 73 at 2 (describing the public interest as "having the information for its own sake") *to* ECF 44-2 at 14-15, 18-21, 25-26. But the public interest is obvious and "undoubtedly high." Every death in custody due to negligence or misconduct is a gross violation of constitutional and civil rights, ethical and moral obligations, and statutory mandates. The public has a right to know the circumstances of these deaths. This should be undisputed. Allowing any of these extrajudicial deaths to go unaddressed creates fear and distrust of the government, harkening back to the South and Central American *desaparecidos* and the American history of lynching. The DOJ has been tasked with maintaining the DCRA database to promote transparency and ultimately prevent future deaths in custody; and it has utterly failed to accomplish this task.

Disclosure of this data keeps the public "informed about 'what their

---

*Employees for Environmental Ethics v. U.S. Forest Service*, 524 F.3d 1021 (9th Cir.2008)). In *Painting Indus. of Hawaii Mkt. Recovery Fund v. Air Force*, the court notes, "the requesters already have a substantial amount of the information they seek" because "the government has agreed to provide the certified payroll records." 26 F.3d 1479, 1486 (9th Cir. 1994) (determining whether "names, addresses, and social security numbers" of government employees should be disclosed under Exemption 6). Without the PII, "the requesters can [still] compare job classifications to pay rates to determine if employees are being paid the prevailing wage." Here, the substance of the database is *the identities and circumstances of the decedent's death*, without that information the database is meaningless.

5
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

government is up to'" regarding these efforts. *D.O.J. v. R.C.F.P.,* 489 U.S. 749, 773. The DOJ asserts its role is only to "to review the data in the aggregate to inform broad-based policy decisions," thus, artificially limiting how disclosure would benefit the public interest. ECF 73 at 5. But DCRA's goals are more expansive than that. It purposefully required more detailed information and consistent collection of "(1) the name, gender, race, ethnicity, and age of the deceased; (2) the date, time, and location of death; (3) the law enforcement agency that detained, arrested, or was in the process of arresting the deceased; and (4) a brief description of the circumstances surrounding the death."[4] 34 U.S.C. § 60105 (a-b); ECF 44-2 at 17. The DOJ should be conducting extensive research and proposing responsive policies. 34 U.S.C. § 60105 (f). It is not.

The public should be allowed to perform the functions that the DOJ has chosen to abandon using the full scope of available information. With the data, the public can cross-check DCRA with other databases to confirm its completeness—not only in the number but also in the circumstances of these deaths—and perform statistical analysis to determine underlying demographic patterns, causes of death, culpable institutions, and eventually ways to prevent future deaths. In addition to financial penalties under DCRA, the DOJ has mandates, such as civil rights enforcement, that

---

[4] The DOJ boldly and incorrectly asserts the opposite: "The entire purpose of DCRA is to collect data on the causes of death in state and local facilities, which Defendant proposes to release, not primarily the names of decedents." ECF 73 at 4. Of course, DCRA specifically requires the identities of the decedents. And, in any event, Defendant plans to redact much of the information related to their causes of death.

could be leveraged to address deaths in custody. Full disclosure also provides insight into the use—or disuse—of these other levers, such as prosecuting individuals, like Derek Chauvin in Minneapolis, or lawsuits against derelict jurisdictions like Ferguson, Missouri.

### III.  DOJ'S PROPOSED REDACTIONS SHOULD BE REJECTED

In response to this "undoubtedly high" public interest, Defendant has proposed a muddied and unduly subjective regime where it can unilaterally determine what is irrelevant or too sensitive for public disclosure. *See, e.g.,* ECF 62 at 3 (discussing "relevant" information), *id.* at 5 (proposing redaction of "not directly relevant" information); ECF 73 at 9. The proposal seeks to redact information that was explicitly required by the statute, such as the name of *every* decedent, as well as portions of mental health and criminal history of these now-unnamed individuals. It also intends to do a line-by-line review to redact "sensitive" data in several additional columns—without providing a clear metric. At the same time, the DOJ insists it cannot address Plaintiffs' proposed redactions because they require too close of a review. *Id.* at 6-7.

In arguing for these redactions, the DOJ starts from its desired result—keeping the information from disclosure—and argues disclosures are harmful because they "may lead to the disclosure of the name, the facts of their custody, and the details of their death," *id.* at 5-6, even though identification is not a harm in its own right. This reasoning mirrors the "mosaic theory," which, the DOJ does not contest, is not

7
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

properly applied here. *See* ECF 64 at 8-9.

The entire proposal is inconsistent with DCRA and Exemption 6 and provides far too much leeway to an agency that has resisted producing these documents for over 5 years. The Court should reject it.

### A. Decedents' PII

To justify withholding Decedents' PII, the DOJ continues to offer only vague privacy interests. "The threat to privacy, though, must be real rather than speculative," *Rollins*, 70 F. Supp. 3d at 554, and the DOJ still fails to establish that this privacy interest is, indeed, real. Instead, it relies generally on the greatly diminished privacy rights of the decedents[5] and the nearly *de minimis* privacy interests of surviving family members, without identifying even one family member that contests the release of this information. ECF 73 at 3. This is not sufficient to justify nondisclosure. Where Exemption 6 has been applied, the privacy interest analysis is specific to a person, not a generalized group of potential complainants. *See, e.g., Amiri v. Nat'l Sci. Found.*, 664 F. Supp. 3d 1, 21 (D.D.C. 2021) (applying Exemption 6 to the name of student likely to be harassed by plaintiff); *Rollins,* 70 F. Supp. 3d at 554 (considering a redacted individual with no connection to the request), *Schoenman v. F.B.I.,* 573 F. Supp. 2d 119 (D.D.C. 2008) (specific FBI agents); *cf. Favish,* 541 U.S. 157 (Foster's family detailed past harassing conduct).

---

[5] To be clear, while decedents may retain some privacy interests, it is not a clearly unwarranted violation to release their names in a database that is supposed to work to mitigate these untimely deaths.

Defendant found one case where the name of a deceased individual was redacted under Exemption 6 that is easily distinguished. *Rollins*, 70 F. Supp. 3d at 553-54. There, plaintiff sought information about her son's death abroad. *Id.* The cover memo included the name of a third party who also died abroad in an unrelated incident. The court allowed redaction because the person was not at all relevant to the circumstances of the son's death. *Id.* The opposite is true here. Every name in the DCRA dataset is either a decedent or someone involved with or knowledgeable about their death, thus meriting disclosure. In *Voice of San Diego v. Naval Crim. Investigative Serv.,* the court was not considering whether to disclose the veterans' names, because they had already been disclosed by NCIS, even under the more protective Exemption 7(C). 2024 WL 4471146, at *20 (S.D. Cal. Oct. 8, 2024). *Mobley v. C.I.A.* is inapplicable as it applies Exemption 7(C), not Exemption 6. 924 F. Supp. 2d 24, 70 (D.D.C. 2013) (noting "a certain level of hypocrisy in the FBI's position, given that the FBI regularly releases information about deceased individuals").

Plaintiffs have shown why disclosure of the decedents' PII benefits the public interest, though DOJ argues "[i]t simply does not." *See* ECF 73 at 4. As stated above, the decedents' identities—in addition to being a statutorily mandated submission—allow the public to assess, among other things, the completeness of the database and any actions taken on behalf of decedents by the federal government.

Importantly, Plaintiffs' counter-proposal aligns with their prior arguments. *See*

9
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

ECF 64 at 4. Plaintiffs provided two examples of PII that could be considered for redaction: 1) the *combination* of decedents' "full names and birthdates," and 2) their social security numbers. ECF 44-1 at 47. Exemption 6 redactions must be considered in context, and a full name on its own is typically not PII. Plaintiffs also argued, and this Court agreed, k-anonymity was improper because it redacted the names of the decedents, among other things. Oct. 4, 2024 Oral Argument Tr. at 5:1-7, ECF 59.

### B.  Third Party PII

The DOJ's response to Plaintiffs' proposal for third party PII is, ultimately, that it is too hard. This response only highlights the inconsistency in its proposal. As a legal matter, the argument plainly fails for the reasons above. The names of senior officials and culpable employees help assess the causes of these extrajudicial deaths in custody. They were included in the DCRA submissions specifically because they are related to a death. The DOJ must not be permitted to now second guess their relevance.

The DOJ also argues that there is a discernable difference between the disclosure of federal government officials and state and local officials. This half-baked argument also should be rejected. The DOJ has, once again, failed to provide a cognizable privacy interest for a state or local official, let alone one that is distinguishable from a federal official, and has provided no other explanation for this distinction. To the contrary, in federal, state, or local law enforcement, it is often considered a *public* right to know which officers it is interacting with. *See, e.g.,*

10
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

California Penal Code Section 830.10, Administrative Code of the City of New York § 14-174, D.C. Code § 5–331.09; *U.S. v. Police Dep't of Baltimore*, No. 1:17-cv-00099-JKB (D. Md. Jan. 12, 2017), ECF 2-2 at 115 (consent decree). Without a proffered privacy interest, the analysis stops. *See Rollins*, 70 F. Supp. 3d at 553.

As a practical matter, the DOJ has already indicated it plans to review the records line-by-line in order to redact other "sensitive" information using murky "value judgments." ECF 73 at 6-7; ECF 62 at 2, 4 ("Cells in those categories will require line-by-line review and redaction"). That same review can include identifying third parties, as Plaintiffs propose. *See* ECF 64 at 8-9. Determining seniority requires a much less subjective "value judgment" than "relevance" and "sensitivity." The reviewer can look for official titles and positions and use context clues to determine whether a third party was a bystander or if they committed some negligent act or omission, such as withholding food. Plaintiffs are not asking for independent research into third parties for which this information is not apparent.

### C. Medical Histories

DOJ argues that an inmate's mental health history is not beneficial to the public interest and should be withheld. This could not be more wrong. First, DOJ argues for redaction protocols applied to much more sensitive documents. ECF 73 at 8-9; *see Voice of San Diego,* 2024 WL 4471146, at *20 (disclosing veterans' names, seeking determinations regarding autopsy and toxicology reports). Plaintiffs are not requesting actual medical records such as psychiatric notes, autopsy reports and

11

images, or toxicology reports. *Id.*; *see also supra*, n.2. Indeed, the DCRA records likely do not contain "all private medical information" or facts such as whether "an individual spent time in inpatient care years before their death." ECF 73 at 7. Instead, the records contain, if anything, observations of an inmate's behavior leading up to, and at the time of, their death.

Even if disturbing, the strong public interest certainly outweighs the private interest. Jails and prisons are "total institutions" strictly controlled by the administrative staff. In such an environment, every detail is important—even the details of a pre-planned suicide. *See id.* at 10. An inmate obtaining a razor and being left alone with it in a presumably-shared shower long enough to slit his wrists and bleed out raises concerns about the facility's protocols, at a minimum. Similarly, disclosing only that an inmate refused food and drink and then died from dehydration, completely changes the context of his death. *Id.* If the DOJ's redactions were applied, the death appears to be an unfortunate consequence of an inmate's discreet behavior. The complete facts reveal that he was neglected despite clear signs intervention was needed. Further, that such explicit details are available to the DOJ and it has done almost nothing with that information certainly speaks to the scope of the DOJ's dereliction of duty, raising more questions than answers.

### D.     Criminal Histories

Finally, the DOJ argues that decedents' criminal histories do not provide any marginal additional usefulness, ECF 72 at 11-13, again without identifying a

12
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

cognizable privacy interest. Even assuming it had, the reasoning in *ACLU* requires an inversion of the balance of interests in this case. *ACLU v. U.S. Dep't of Just.,* 750 F.3d 927, 932 (D.C. Cir. 2014). There, the court relied on the arrestee's presumption of innocence to justify withholding criminal records. The invasion of privacy was not warranted without a finding of guilt. Here, the presumption of innocence necessitates disclosure because the arrestee—without charges or a conviction—*died* while in government custody. Whereas the arrestee had privacy rights related to the encounter while alive, the public has a vested interest in those details upon the arrestee's death.[6]

For both the medical and criminal histories, the DOJ states that information of public interest will not be redacted, promising only to redact "additional unnecessary, sensitive details." ECF 73 at 9, 12. The DOJ further assures the court that this "additional unnecessary" information is not "relevant," and even if it is, it will be disclosed in other categories. *See id.* at 7, 12. Yet, the DCRA statute determined what was relevant, and the forms were designed to capture this information in different iterations. The DOJ has not provided objective guidelines for redacting these categories and is, instead, essentially asking to overrule the determination of relevance written into the statute. The DOJ could easily apply the same faulty reasoning across every category to spare the unarticulated privacy interests of an amorphous survivor. For example, the DOJ might redact the mental health institutions

---

[6] DOJ argues that *U.S. v. Schlette* 842 F.2d 1574, 1581 (9th Cir. 1988) is outdated law, ECF 73 at 13-14, but it has not been overturned. A First Circuit court declined to apply *Schlette* because it was out-of-circuit, instead performing its own analysis.

13
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111

from the location at death category or disclose limited information in the green "initial contact reason" category, while redacting relevant descriptive information from the "Primary reason for initial contact between decedent and law enforcement – other specify" category that is marked for line-by-line redaction. ECF 62-10 at 2.

The DOJ argues that withholding this information will "spare th[e] inmates' survivors the anguish of disturbing details." ECF 73 at 13; *id.* at 8 (medical information "could cause 'additional anguish' to the surviving family."). But, this is not a suitable foreseeable harm. *See R.C.F.P.*, 3 F.4th at 369. Without one, the records must be disclosed.

In sum, the DOJ suggests an impossible proposal that is rife with opportunity for improper redactions with the imprimatur of court approval. The Court should accept Plaintiffs' counter-proposal of consistent, minimal redactions that account for the privacy interests of specific categories of individuals.

## CONCLUSION

The DOJ's proposal applies Exemption 6 beyond its legal boundaries. The Court should deny Defendant's proposed redactions.

DATED: February 5, 2025                    DAVIS WRIGHT TREMAINE LLP

                                          By: */s/ Thomas R. Burke*
                                               Thomas R. Burke
                                               Attorneys for Plaintiffs

14
Sur-Reply in Further Support of Plaintiffs' Objections to Defendant's Submission
of Categories of Information for Withholding Pursuant to Exemption 6
Case No. 5:22-cv-02111