UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

THE APPEAL, INC.; ETHAN
COREY, an individual,

          Plaintiffs,

v.

UNITED STATES DEPARTMENT
OF JUSTICE'S OFFICE OF JUSTICE
PROGRAMS,

          Defendant.

Case No.  5:22-cv-02111-WLH-SK

**FINAL ORDER RE MOTION FOR SUMMARY JUDGMENT [44]**

Before the Court is the final ruling on the Motion for Summary Judgment (the "Motion").  (Mot. for Sum. J. ("Mot."), Docket No. 44; *see also* Order re Mot. for Sum. J. ("Order"), Docket No. 54.  The Court issued a tentative ruling and heard oral argument on May 22, 2025.  For the reasons explained herein, the Court **GRANTS** the Motion in part and **DENIES** in part.

## I.    BACKGROUND

This case concerns three Freedom of Information Act ("FOIA") requests for death-in-custody data, submitted by Plaintiff The Appeal, Inc. ("Plaintiff Appeal") and its employee Ethan Corey ("Plaintiff Corey") (collectively, "Plaintiffs") to the

United States Department of Justice's (the "DOJ") Office of Justice Programs
("Defendant" or "Defendant OJP").  Before the Court is the final issue left for
determination in the Motion for Summary Judgment.  (*See* Order).

Defendant submitted additional proposed categories for withholding or
redaction pursuant to FOIA's Exemption 6.  (Defendant's Proposed Withholdings
("DPW"), Docket No. 62), to which Plaintiffs lodged objections.  (Plaintiff's
Objections ("PO"), Docket No. 64).  The Court also allowed Defendant to file a reply
(Defendant's Reply ("DR"), Docket No. 73) and Plaintiffs to file a sur-reply.[1]
(Plaintiff's Sur-Reply ("PSR"), Docket No. 74).  The pertinent, underlying facts are
set forth in the Court's Order granting in part and denying in part the Motion for
Summary Judgment.  (*See generally* Order).

In support of its proposed withholdings or redactions, Defendant submitted
tables demonstrating which categories within the DCRA data would be released in
full, entirely withheld or subject to line-by-line redactions.  (*see* DPW, Exs. 1-11,
Docket Nos. 62-1-11).  Defendant coded categories in green to be released in full,
categories in red to be withheld entirely and categories in yellow to be subject to line-
by-line redactions.  (*Id.*).  Of the roughly 660 categories of data – which Defendant
notes includes "substantial overlap between some categories in different collections" –
Defendant proposes releasing roughly 470 in their entirety.  (DPW at 1).  To date,
Plaintiffs have not received any meaningful DCRA data, as any records turned over by
Defendant were redacted in their entirety.  (Joint Appendix of Facts ("JAF"), Docket
No. 44-2 ¶¶ 4, 7, 12, 15; Joint Appendix of Evidence ("JAE") Vol. II, Docket No. 44-
2, Decl. of Leena Charlton ("Charlton Decl.") ¶ 16 & Exhibit P).  For the reasons
explained herein, the Court **GRANTS** the Motion in part and **DENIES** in part.

---

[1] On January 24, 2025, Defendant filed an *ex parte* application (the "Application") to
lodge a reply brief to Plaintiffs' objections.  (Docket No. 69).  The Court granted the
Application, over Plaintiffs' objections.  (Docket Nos. 72, 70).

1  **II.    DISCUSSION**

2       **A.    <u>Legal Standard</u>**

3       Under FOIA, federal agencies must disclose requested records within their

4  control, unless disclosure is either against the law or the documents fall within

5  enumerated exemptions.  5 U.S.C. § 552; *Dep't of Interior v. Klamath Water Users*

6  *Protective Ass'n*, 532 U.S. 1, 7 (2001).  These exemptions do not "obscure the basic

7  policy that disclosure, not secrecy, is the dominant objective of [FOIA]."  *Dep't of Air*

8  *Force v. Rose*, 425 U.S. 352, 361 (1976).  Accordingly, the exemptions are exclusive

9  and to be narrowly construed.  *Id.*; *see also*, *Env't Prot. Agency v. Mink*, 410 U.S. 73,

10  79 (1973); *Fed. Bureau of Intel. v. Abramson,* 456 U.S. 615, 630 (1982).

11       Most FOIA cases are resolved on summary judgment.  *Animal Legal Def. Fund.*

12  *v. U.S. Food & Drug Admin.,* 836 F.3d 987, 989 (9th Cir. 2016).  A court engages in

13  *de novo* review of an agency's response to a FOIA request.  *Id.* § 552(a)(4)(B).

14       The agency "bears the burden of demonstrating that the exemption properly

15  applies to the documents."  *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th

16  Cir. 2009); *Id.* § 552(a)(4)(B).  Under FOIA, "[w]ithholding is permissible 'only if the

17  agency reasonably foresees that disclosure would harm an interest protected by an

18  exemption' and only after 'consider[ing] whether partial disclosure of information is

19  possible' and taking 'reasonable steps necessary to segregate and release nonexempt

20  information.'"  *Transgender Law Ctr. v. Immigr. & Customs Enf't* ("*TLC*"), 46 F.4th

21  771, 782 (9th Cir. 2022) (quoting 5 U.S.C. § 552(a)(8)(A)).  An agency must disclose

22  "any reasonably segregable," non-exempt portions of the requested records.  5 U.S.C.

23  § 552(b).  The agency bears the burden of demonstrating such reasonably segregable

24  portions have been disclosed.  *Id.*

25       To invoke an exemption, an agency must generally "'articulate both the nature

26  of the harm [from release] and the link between the specified harm and specific

27  information contained in the material withheld."  *Reps. Comm. for Freedom of the*

28  *Press v. Fed. Bureau of Intel.*, 3 F.4th 350, 369 (D.C. Cir. 2021) (quoting H.R. REP.

No. 391, 114th Cong., 2d Sess. 9 (2016)).  To that end, "[a]gencies cannot rely on 'mere speculative or abstract fears, or fear of embarrassment' to withhold information." *Id.* (quoting S. REP. No. 4, 114th Cong., 1st Sess. 8 (2015)).  Rather, the agency must provide "tailored reasons" for an exemption's use, avoiding boilerplate and conclusory statements.  *Shannahan v. Internal Revenue Serv.*, 672 F.3d 1142, 1148 (9th Cir. 2012).  An agency's affidavits or declarations must explain "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Berman v. Cent. Intel. Agency*, 501 F.3d 1136, 1140 (9th Cir. 2007).  An agency may justify its withholdings or redactions on a categorical basis "'so long as its definitions of relevant categories are sufficiently distinct to allow a court to determine whether specific claimed exemptions are properly applied.'" *Prison Legal News v. Samuels* ("*Samuels*"), 787 F.3d 1142, 1149-50 (D.C. Cir. 2015) (quoting *Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just.,* 746 F.3d 1082, 1088 (D.C. Cir. 2014)).  "The range of circumstance included in the category must 'characteristically support[] an inference that the statutory requirements for exemption are satisfied.'"  *Id.* at 1150 (quoting *Citizens for Resp. & Ethics in Washington*, 746 F.3d at 1088-89).

Exemption 6 specifically protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6).  The phrase "similar files" has a "broad, rather than a narrow meaning," and also includes "[g]overnment records containing information that applies to particular individuals." *Forest Serv. Emps. for Env. Ethics v. U.S. Forest Serv.* ("*FSEFEE*"), 524 F.3d 1021, 1024 (9th Cir. 2008).  Exemption 6 covers "not just files, but also bits of personal information, such as names and addresses, the release of which would 'create[] a palpable threat to privacy.'" *Jud. Watch, Inc. v. Food & Drug Admin.,* 449 F.3d 141, 152 (D.C. Cir. 2006) (alteration in original)

1   (quoting *Carter v. U.S. Dep't of Com.*, 830 F.2d 388, 391 (D.C. Cir. 1987)).  At its

2   heart, Exemption 6 "protect[s] individuals from the injury and embarrassment that can

3   result from the unnecessary disclosure of personal information." *Dep't of State v.*

4   *Wash. Post. Co.,* 456 U.S. 595, 599 (1982).  Exemption 6, however, "does not

5   categorically exempt individuals' identities." *Jud. Watch*, 449 F.3d at 153.

6         In deciding whether records have been properly withheld pursuant to

7   Exemption 6, the court "must balance the privacy interest protected by the exemptions

8   against the public interest in government openness that would be served by

9   disclosure." 5 U.S.C. § 552(b)(6).  "There is a 'two-step test for balancing individual

10  privacy right against the public's right of access under Exemption 6, which begins

11  with a threshold evaluation of whether the personal privacy interest at stake is

12  nontrivial . . . or, put differently, more than *de minimis*.'" *Am. C.L. Union. Found. of*

13  *So. Cal. v. U.S. Immigr. & Customs Enf't* ("*ACLU SoCal*"), 739 F.Supp.3d 805, 822

14  (C.D. Cal. 2024) (internal quotations and citation omitted) (quoting *TLC*, 46 F.4th at

15  784); *see also Rojas v. Fed. Aviation Agency*, 941 F.3d 392, 405 (9th Cir. 2019)

16  (emphasizing that to invoke Exemption 6, the agency must demonstrate a privacy

17  interest that is "nontrivial" and "more than *de minimis*").  "'If, at step one, the agency

18  fails to establish that disclosing the contested information would lead to the invasion

19  of a non-trivial personal privacy interest protected by Exemption 6, [] FOIA demands

20  disclosure, without regard to any showing of public interest.'" *ACLU SoCal*, 739

21  F.Supp.3d at 822 (quoting *Yonemoto v. Dept of Veteran Affs.*, 686 F.3d 681, 694

22  (2012)).  On the other hand, if the agency makes "'the requisite threshold showing

23  regarding a privacy interest,' the court must examine 'the public interest in

24  disclosure.'" *Id.* (quoting *Yonemoto*, 686 F.3d at 694).

25         "The scope of a privacy interest under Exemption 6 will always be dependent

26  on the context in which it has been asserted." *Armstrong v. Exec. Off. of the*

27  *President*, 97 F.3d 575, 581 (D.C. Cir. 1996).  "The personal privacy interest

28  contemplated by Exemption 6 'encompasses the individual's control of information

concerning his or her person[.]'" *ACLU SoCal*, 739 F.Supp.3d at 824 (quoting

*Yonemoto*, 686 F.3d at 693). "'[T]he death of the subject of personal information does

diminish to some extent the privacy interest in that information, though it by no means

extinguishes that interest; one's own and one's relations' interest in privacy ordinarily

extends beyond one's death.'" *Id.* (quoting *Schrecker v. U.S. Dep't of Just.*, 254 F.3d

162, 166 (D.C. Cir. 2001). Though the fact of death does not automatically mandate

disclosure, it is "a relevant factor to be taken into account in the balancing decision

whether to release information." *Id.* (quoting *Schrecker*, 254 F.3d at 166).

"The focus of the public interest analysis is the citizens' right to know 'what

their government is up to.'" *Horrowitz v. Peace Corps*, 428 F.3d 271, 278 (D.C. Cir.

2005) (quoting *U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*,

489 U.S. 749, 773 (1989)). Courts consider two factors in evaluating the public

interest in disclosure; first, courts consider whether the public interest sought to be

advanced "'is a significant one.'" *Cameranesi v. U.S. Dep't of Def.,* 856 F.3d 626,

639 (9th Cir. 2017) (quoting *Yonemoto*, 686 F.3d at 694). Second, courts examine

"'whether the requested information is likely to advance that interest.'" *Id.* (quoting

*Yonemoto*, 686 F.3d at 694). To overcome the privacy interest at stake, the

information sought "must 'appreciably further' the public's right to monitor the

agency's action." *FSEFEE*, 524 F.3d at 1027 (quoting *U.S. Dep't of Def. v. Fed. Lab.

Rel. Auth.*, 510 U.S. 487, 497 (1994)). "'Information that reveals little or nothing

about an agency's own conduct'" cannot be said to further FOIA's statutory purpose.

*Pinson v. Dep't of Just.* ("*Pinson II*"), 236 F.Supp.3d 338, 362 (D.C.C. 2017) (quoting

*Beck v. Dep't of Just.*, 997 F.2d 1489, 1493 (D.C. Cir. 1993)).

**B.    Analysis**

The Court in its prior Order found that, although Exemption 6 is applicable to

the requested data – and Defendant demonstrated a non-trivial privacy interest in the

decedents' identities – the public interest in disclosure of the DCRA data is high.

(Order at 12-17). Defendant's proposed method of "k-anonymity" redaction failed to

6

provide the reasonably segregable, non-exempt portions of the data – in essence, over-redacting the data.  (*Id.* at 15).  The Court agreed with the parties that basic redaction of full name, full birth date, and social security number would be appropriate to protect the identities of the decedents, whose sensitive information is contained in the DCRA data set.[2]  (*Id.* at 17).  The Court ruled that "[t]o the extent that Defendant can point to additional categories to be redacted, supported by a specific and articulable privacy concern, the Court is willing to entertain expanding the categories beyond personally identifiable information." (*Id.*).  The Court ordered Defendant to identify "specific privacy issues with respect to each category[.]" (*Id.* at 18).

Defendant divided the categories of redaction into those it proposed to withhold categorically and those it proposed to withhold partially by engaging in "line-by-line review and redaction."  (DPW at 1-2).  For ease of analysis, however, the Court divides the proposed redactions into two broad categories – the categories of data that implicate privacy interests of the decedents and their families and those implicating privacy interests of third parties that appear within the data set.  With respect to redactions concerning the privacy interests of decedents and their families, the Court addresses the proposed categories for withholding or redaction as follows: (1) the decedents' mental health care; (2) medical details concerning the decedent; (3) the decedents' alleged criminal conduct or history; (4) unexplained redactions within Defendant's exhibits; and (5) the decedents' personally identifiable information ("PII").  Finally, the Court turns to the proposed redactions implicating privacy concerns of third parties found within the data set.  For the reasons explained below, the Court **GRANTS** the Motion in part and **DENIES** in part.

---

[2] Although the Court already ruled on the propriety of redacting this data in its previously issued Order, the Court will revisit these arguments, as they are re-asserted by the parties (the "Parties").  The Court's conclusions here are not inconsistent with its Order; they are merely fine-tuned with the benefit of the Parties' additional briefing and oral argument.

*1. Withholdings and Redactions Related to the Decedents' Information*

The Court begins with Defendant's proposed withholdings and redactions relating to the decedents within the data set. First, the Court assesses the nature of the privacy interest of the decedents and their surviving family members, which the Court found to be non-trivial in its prior order. (Order at 13). Second, the Court weighs that privacy interest against the public interest served by disclosure with respect to each category of information proposed to be withheld or redacted. The Court finds that, with the exception of some of the decedents' PII, the public interest in disclosure of the information outweighs the privacy interest, such that FOIA mandates disclosure.

a. Defendant Oversimplifies Privacy Interests within the Data Set

At oral argument, Plaintiffs argued – citing to *Gannett Satellite Info. Network, LLC v. U.S. Dep't of Justice* ("*Gannett*"), No. 22-475 (BAH), 2025 WL 416248 (D.D.C. Feb. 6, 2025), which was issued after briefing had already closed – that Defendant oversimplified the privacy interest at stake. Based on the privacy interest articulated by Defendant, which was nearly identical to that in *Gannett*, Plaintiffs contended that "the deceased inmates in the data sought by plaintiff fall into two separate categories." *Id.* at *14. The Court agrees.

In *Gannett*, the district court considered the propriety of releasing to the plaintiff news source specific DCRA data concerning "16,625 inmates." *Id.* The defendant had articulated the privacy interest to be rooted "in the right of the individual named in the data[]set, as well as their close family members, to 'control . . . information concerning [their] person[s].'" *Id.* at *13 (quoting *Reps. Comm. for Freedom of the Press*, 489 U.S. at 763). Because the records at issue were asserted to contain "'highly sensitive and potentially embarrassing information about the subjects of the records[,]'" the defendant had argued that protection was merited "'even post-mortem.'" *Id.* (quoting Def.'s Memo at 20)). The court emphasized, however, that "[s]uch an interest cannot be categorically asserted" where the privacy interest at stake "'var[ies] depending on the context in which it is asserted.'" *Id.*

1  (quoting *Hum. Rts. Def. Ctr. v. U.S. Park Police*, 126 F.4th 708, 715 (D.C. Cir.

2  2025)).  The court highlighted that there was no "evidence to suggest the data would

3  reveal such [sensitive or embarrassing] information about *all* 16,625 inmates." *Id.* at

4  *14. (emphasis added).  The court concluded, therefore, that "at [the] initial stage of

5  the balancing inquiry, the deceased inmates in the data sought by [the] plaintiff f[e]ll

6  into two separate categories." *Id.*  One group included "inmates for whom disclosing

7  their identities would not disclose any of the intimate and sensitive information

8  discussed above, such as mental health or substance abuse issues or a death resulting

9  from AIDS, intoxication, homicide, or suicide." *Id.*  As to those inmates, the court

10  found that the defendant "failed to demonstrate a substantial privacy interest

11  exist[ed]," such that "the Exemption 6 claim fail[ed], without needing to proceed to

12  step two of the balancing inquiry." *Id.*  The second group of inmates included

13  "inmates as to whom disclosing their identities would reveal some or all of the

14  sensitive information discussed above." *Id.*  As to those inmates, the court found that

15  the defendant sufficiently demonstrated "the existence of a more than *de minimis*

16  privacy interest sufficient to invoke Exemption 6," though the court noted that "the

17  strength of this interest is somewhat diminished because all of the individuals are

18  deceased." *Id.*

19      The Court finds this reasoning to be persuasive and directly applicable to the

20  present matter.  The privacy interest at stake cannot be said to be identical as to all

21  decedents within the data sets sought by Plaintiffs.  Rather, like in *Gannett*, it would

22  be an oversimplification to contend that disclosing the data categorically implicates

23  disclosure of sensitive information as to *all* decedents.  Accordingly, the Court agrees

24  with Plaintiffs that the decedents within the data fall into two separate categories.  As

25  to the first category – those for whom disclosing their identities would not reveal

26  highly sensitive or embarrassing information – Defendant has failed to articulate any

27

28

privacy interest, let alone a substantial privacy interest.[3]  As to those decedents, then,

the "Exemption 6 claim fails, without needing to proceed to step two of the balancing

inquiry." *Id.*  Data relating to such decedents must be released in full, subject to no

redactions.[4]  *See ACLU SoCal*, 739 F.Supp.3d at 822 (quoting *Yonemoto*, 686 F.3d at

694) ("'If, at step one, the agency fails to establish that disclosing the contested

information would lead to the invasion of a non-trivial personal privacy interest

protected by Exemption 6, [] FOIA demands disclosure, without regard to any

showing of public interest'").  On the other hand, as to the second group of decedents

– as discussed in depth below – the Court concludes that Defendant sufficiently

---

[3] At oral argument, Plaintiffs characterized the distinction between the two groups of inmates as being those that died of natural causes and those that died from overdose, illness or law enforcement misconduct.  The Court, however, finds the distinction articulated by the court in *Gannett* to be more apt.  This is because there might be some inmates who died of natural causes, but about whom the DCRA data sets contain highly sensitive information related to medical or mental health records. Accordingly, where the privacy interest articulated by Defendant is the embarrassment or anguish stemming from disclosure of highly sensitive information, merely differentiating these two groups by cause of death fails to sufficiently distinguish the decedents' privacy interests.  The Court further notes that every individual identified in the data set must have been arrested for or charged with criminal conduct at some point, by virtue of their having died in custody.  Defendant did not distinguish between those arrest or criminal histories that might result in embarrassment or anguish and those that would not, and, furthermore, the decedents' privacy interest in such information is already "'attenuated' by the 'public record' of their arrests and convictions[.]"  *Am. First Legal Found. v. U.S. Dep't of Homeland Security*, 759 F.Supp.3d 49, 63 (D.D.C. 2024) (quoting *Union Leader Corp. v. U.S. Dep't of Homeland Sec.*, 749 F.3d 45, 56 (1st Cir. 2014)).  It is likely for this reason that the court in *Gannett* emphasized that the sensitive information at issue included records containing "mental health or substance abuse issues or a death resulting from AIDS, intoxication, homicide, or suicide." *Gannett,* 2025 WL 416258, at *14.  Accordingly, the Court finds that the appropriate distinguishing feature between the groups of decedents is those about whom the data set contains sensitive medical or mental health records, including those pertaining to substance abuse, homicide, suicide or illnesses such as AIDS, and those that do not.  The Court recognizes, therefore, that this first group of inmates potentially represents a relatively small percentage of the individuals appearing in the data set.  Nonetheless, there is a meaningful distinction between these two groups of decedents within the data sets.

[4] The Parties agreed that no social security numbers should be released with respect to any individual.  The Court agrees that social security numbers must be redacted as to all decedents.

1    demonstrated "the existence of a more than *de minimis* privacy interest sufficient to

2    invoke Exemption 6," even if "the strength of this interest is somewhat diminished

3    because all of the individuals are deceased." *Id.*

4                    b.  Defendant Identifies Decedents' and Surviving Family's Non-Trivial

5                        Privacy Interest in Sensitive, Identifying Information

6            Defendant previously broadly identified the privacy interest implicated by the

7    disclosure of this data set as being that of "the deceased and their relatives in keeping

8    such highly intimate and sensitive details out of the public eye . . ." (Joint Brief on

9    Mot. for Sum. J., Docket No. 44-1 at 24).  Defendant has since reiterated that

10   "individuals who have died in custody as well as their family members have a

11   particular privacy interest . . . [as] release of the identifying information of decedents

12   could bring their survivors anguish . . ." (DR, Docket No. 73 at 5).  Defendant

13   contends Exemption 6 requires that decedents' mental health care, alleged criminal

14   conduct and PII must be withheld completely, while "certain detailed medical

15   information" should undergo line-by-line redactions.  (DPW at 2-4).

16           Defendant cites to *Voice of San Diego v. Naval Crim. Investigative Serv.*

17   ("*Voice of San Diego*") to support the contention that decedents' and their family

18   members' privacy interests in the decedents' sensitive, identifying information are

19   more than *de minimis*.[5]  *See* No. 22-cv-834-TWR (MSB), 2024 WL 4471146 (S.D.

20   _____

21   [5] Defendant also cites to *Rollins v. U.S. Dep't of State* to suggest that the privacy
     interest in preventing disclosure of the identities of the decedents includes preventing

22   "unwanted attention for or harassment of the individual's surviving family members."
     70 F.Supp.3d 546, 554 (D.D.C. 2014).  The Court disagrees that *Rollins* bears on the

23   instant matter.  In *Rollins*, the plaintiff mother had made a FOIA request to the State
     Department for records pertaining to her son's death while he was abroad in Thailand.

24   *Id.* at 547.  The court contemplated whether the State Department had properly
     withheld the identity of a deceased third party whose untimely death appeared in the

25   record request.  *Id.* at 553-54.  The State Department had attested that the two deaths
     were unrelated, which the plaintiff did not rebut.  *Id.* at 553.  The court concluded that

26   the record was not technically responsive to the request, as that third party's death was
     not related to the plaintiff's son's.  *Id.*  Thus, while the Court did opine on the privacy

27   interest, it was an advisory opinion.  Further, the contention that the release of
     information could result in unwanted attention for the individual's surviving family

28

Cal. Oct. 8, 2024). While the Court has already found that the decedents' family members have more than a *de minimis* privacy interest with respect to the decedents' identities (Order at 13), the Court reiterates and refines its reasoning with greater detail and as it applies to the information Defendant proposes redacting.

In *Voice of San Deigo,* the plaintiff news organization submitted FOIA requests to the Naval Criminal Investigative Service ("NCIS") for records pertaining to the deaths of twenty individuals who had allegedly died by suicide while serving in the Navy and Marine Corps in the San Diego area. *Id.* at *1. In withholding certain records – particularly those relating to mental health information, medical information, toxicology results, arrest and law enforcement related information and substance use information – NCIS asserted the privacy interest of the deceased servicemembers, as well as their family members' and survivors' interests. *Id.* at *11-28.

With respect to the decedents, the court concluded that "the deceased servicemembers retain a privacy interest in their medical history records and mental health treatment records that, while diminished, is greater than *de minimis*." *Id.* at *11. The court added that this privacy interest also extended beyond the formal medical records to "summaries of treatment records and interviews with medical personnel describing the treatment" that the individual in question received, as well as toxicology results from near the time of death. *Id.* The court also found that disclosure of records relating to law enforcement interaction or arrest similarly "would implicate measurable privacy interests the decedents retain." *Id.* at *27. This is because the records mentioned herein all contained information "of the type 'that a person ordinarily would not wish to make known about himself or herself[,]'" regardless of the fact that those individuals were deceased. *Id.* at *13, *26 (quoting

was supported by a declaration in *Rollins*. Here, Defendant has submitted no declaration demonstrating that the surviving family could be subject to unwanted attention or harassment.

*Vietnam Veterans of Am. v. Dep't of Def.*, 453 F.Supp.3d 508, 417 (D. Conn. 2020)). In other words, the disclosure posed a "clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Implicit in this analysis, however, was the fact that the decedents' identities were linked to the sensitive information.

With respect to the decedents' surviving family members' privacy interest, the court emphasized that, even though family members do not stand in the place of the deceased, they, too, have a "cognizable privacy interest[] in the medical records and autopsy reports of their close relatives." *Id.* (collecting cases). This privacy interest, too, extended to mental health records and toxicology reports, as well as the related summaries of interviews and treatment records. *Id.* at *15-16 (collecting cases). Further, the court concluded that the disclosure of records relating to law enforcement interaction or arrest implicated "significant privacy interests" for surviving family members and next of kin, considering the "stigmatizing and potentially embarrassing topics[.]" *Id.* at *28. The court noted that its conclusion was "consistent with Congress' broad policy 'intended to permit family members to assert their own privacy rights against public intrusions long deemed impermissible under the common law and in our cultural traditions.'" *Id.* at *16 (quoting *Nat'l Archives & Recs. Admin. v. Favish* ("*Favish*"), 541 U.S. 157, 167 (2004)).[6] Again, implicit in the court's analysis is that the surviving family members' privacy interest is tied to the decedents' being identifiable alongside the sensitive data.

Here, the Court finds the instant matter analogous to a degree. The court in *Voice of San Diego* assessed the privacy interests of decedents and their surviving family members with respect to records very similar to the ones sought here –

---

[6] The Court notes, however, that in the context of *Voice of San Diego*, the court's analysis encompassed the application of *both* Exemption 6 and 7(c), with Exemption 7(c) being more protective of privacy interests than Exemption 6. *Id.* at *8. The court in *Favish*, which the court in *Voice of San Diego* quoted, applied only Exemption 7(c). *Favish*, 541 U.S. at 165-167. Only Exemption 6 is applicable in the instant matter, so the applicability of *Voice of San Diego* to the instant case is, accordingly, diminished.

medical- and mental health-related information, arrest and law enforcement

interactions and reports containing detailed medical information relating to death,

sometimes including substance use.  As the court in *Voice of San Diego* concluded

that both the decedents and their family members retain a non-trivial privacy interest

in the release of such sensitive information – which is "information of the type 'that a

person ordinarily would not wish to make known about himself or herself'" – the

Court here concludes the same.  *Voice of San Diego*, 2024 WL 4471146, at *26

(quoting *Vietnam Veterans*, 453 F.Supp.3d at 517).

That conclusion, however, is tempered.  The instant matter is also significantly

distinguishable from *Voice of San Diego*.  Here, the Court has already ruled that the

decedents' PII is not to be disclosed, such that the sensitive information within the

data set will explicitly *not* correlate to an individual.  Further, while the data set in

*Voice of San Diego* encompassed roughly twenty individuals, the DCRA data is

voluminous, affording greater anonymity more generally to the individual decedents

within the set.  Accordingly, the Court finds that, in this context, the decedents' and

surviving family members' privacy interest is, in the most generous reading, minimal,

just more than *de minimis*.

As Defendant has identified a non-trivial privacy interest implicated by the

release of the sought after information, the Court now turns to balancing that interest

against the public interest in disclosure with respect to each category.  *See ACLU

SoCal*, 739 F.Supp.3d at 822 (emphasizing that the court must weigh the non-trivial

privacy interest identified by the agency against the public interest served by

disclosure); 5 U.S.C. § 552(b)(6).  The Court notes, however, that Defendant's

simplification of the implicated privacy interests makes it challenging to balance the

public and private interests.  *See Pinson II*, 236 F.Supp.3d at 364-65 (denying the

defendant's motion for summary judgment where the "oversimplification prevent[ed]

[the] Court from understanding the privacy interests that weigh against disclosure, and

the Court thus [could not] correctly balance the public and private interests").

1
2

     c. <u>Public Interest with Respect to the Decedents' Mental Health Care Outweighs Privacy Interest</u>

3       Defendant proposes withholding in their entirety "[t]hree categories in the
4  data[]sets [which] ask whether the decedent ever stayed overnight in a mental health
5  facility after admission to the correctional facility[,]" arguing that "[t]o the extent that
6  information about in-patient mental health care may be relevant to the circumstances
7  of death, that information will almost certainly be captured by other categories . . ."[7]
8  (DPW at 3).  Defendant contends that "[t]he public interest in knowing about in-
9  patient mental health care that may have had no relation to the inmate's death is
10 minimal at best, [sic] and is certainly outweighed by the highly sensitive nature of that
11 information."  (*Id*).  Plaintiffs argue that "[t]hese details are incredibly important and
12 provide the most insight into the circumstances of an individual death[,]" including
13 showing an individuals' "apparent distress prior to death as well as neglect by the law
14 enforcement agency."  (PO at 11).  For the reasons explained below, the Court
15 concludes that the significant public interest in disclosure outweighs the minimal
16 privacy interest.

17      First, the Court assesses the nature of the public interest by considering two
18 factors – whether the public interest sought to be advanced "'is a significant one'" and
19 whether the information requested "'is likely to advance that interest.'"  *Cameranesi,*
20 856 F.3d at 639 (quoting *Yonemoto*, 686 F.3d at 694).  As the Court has already
21 addressed in its prior order, the public interest in accessing the DCRA data is a
22 significant one, as it offers insight into how the DOJ performs its statutory duties
23 under the DCRA.  (*see* Order at 13-14).  Unlike many FOIA cases, Plaintiffs here seek

24
25

---

26
27
28

[7] Plaintiffs object, highlighting that at least some of the categories, such as location of death, that Defendant indicated might capture the information it proposes to redact, are proposed to be at least partially redacted based on the exhibits submitted by Defendant.  (PO at 12).  The Court addresses this argument when it turns to Defendant's proposed line-by-line redactions.

access to data that is mandatorily reported to the Attorney General,[8] the collection of which is explicitly intended to improve accountability and transparency around deaths in custody.  (JAF ¶ 107).  The public interest here far exceeds merely "'having the information for its own sake[,]" as the data implicitly offers insight into what the federal government is up to.  *Yonemoto*, 686 F.3d at 694.

The Court recognizes that the data at issue covers deaths in state and local custody, rather than federal custody.  *See* 34 U.S.C. § 12104(a)(2).  Given that FOIA is intended to shed light on the federal government, one might conclude that offering insight into deaths occurring in state and local facilities is not within the public interest contemplated by FOIA.  *See Rimmer v. Holder*, 700 F.3d 246, 258 (6th Cir. 2012) (emphasizing that FOIA is concerned with "shedding light on misconduct of the federal government, not state governments").  The Court, however, disagrees.  Given, that "the federal government's role under DCRA is to review the data in the aggregate to inform broad-based policy decisions," the release of the data does, in fact, offer insight into what the federal government is up to.  (DR at 5); *see, e.g., Wessler v. U.S. Dep't of Just.*, 381 F.Supp.3d 253, 261 (S.D.N.Y. 2019) (rejecting the government's argument that public interest would not be served by disclosure of data relating to medical care received in state, local and private facilities because considering the federal Marshal Service had a "core responsibility" to monitor care in those facilities, the data implicitly offered insight into the federal government's activity).  As it is a core responsibility of the DOJ to review and make policy decisions based on the DCRA data, the public has a significant interest in accessing the data to understand what the DOJ has done or failed to do in response to it.

With respect to the second factor, access to the mental health-related data of those who died in custody is likely to advance the public's significant interest, as the

---

[8] It is mandatorily reported by any State receiving Byrne JAG grants, which is all fifty states and six territories.  (Joint Appendix of Facts ("JAF"), Docket No. 44-2 ¶¶ 84-85); *see also* 34 U.S.C. § 60105(c)(2).

data provides insight into the circumstances surrounding those deaths in custody.  *See, e.g., Wessler*, 381 F.Supp.3d at 260 (emphasizing that the public has a right to know the circumstances under which people die while detained in pretrial custody); *See also Lahr*, 569 F.3d at 978 (emphasizing that the disclosure must provide "marginal additional usefulness").  Understanding the full context of the decedents' deaths can illuminate patterns, which better allows the public to understand the extent to which the DOJ is addressing those patterns.  Access to this data, therefore, provides marginal additional usefulness.

Second, the Court must weigh the public interest against the privacy interest.  Here, the Court finds the privacy interest in non-disclosure to be minimal, as noted.  While the mental health-related data is the type of information "'that a person ordinarily would not wish to make known about himself or herself[,]'" the deceased retain only a "moderate privacy interest" in the release of their own mental health treatment history.  *Voice of San Diego*, 2024 WL 4471146, at *25-26 (quoting *Vietnam Veterans*, 453 F.Supp.3d at 517).  When the information is not linked to an identifiable individual, however, any moderate privacy interest is significantly reduced.  Considering the public interest in disclosure is significant, the Court finds that the public interest outweighs the privacy interests.

Though the court in *Voices of San Diego* came to the opposite conclusion, the instant matter is readily distinguishable.  In *Voices of San Diego*, after assessing the decedents' and surviving family members' privacy interest in the decedents' mental health records, the court weighed those privacy interests against the public interest in their disclosure.  *Voices of San Diego*, 2024 WL 4471146, at *19-25.  The plaintiff had vaguely asserted that the disclosure of mental health records would benefit the public interest by "enabling the public's 'understanding' of the decedent's particular circumstances[.]"  *Id.* at *24.  Significantly, though, the mental health information the plaintiff sought was that which was collected only upon investigation of the servicemember's suicide.  *Id.* at *21.  To that end, the mental health information could

17

not possibly "shed light on the Navy's performance of its statutory duties" or "let the public know what their government is up to" because it was not information in the government's possession *before* the suicide occurred. *Id*. at *21-22.  The Court concluded, therefore, that "[u]nderstanding the 'medical and mental health circumstances' of the servicemembers who committed suicide [did] nothing to further the public's understanding of the operations or activities of the Navy in connection with how it investigates suicides or strives to prevent suicides." *Id.*

The matter before the Court is distinguishable for two main reasons.  First, the public interest analysis is distinct, as the type of data Plaintiffs seek here is different from that sought by the plaintiff in *Voice of San Diego*.  Defendant specified that the three categories of mental health-related data it seeks to withhold "ask whether the decedent ever stayed overnight in a mental health facility *after* admission to the correctional facility."  (DPW at 3) (emphasis added).  As this data captures the decedents' mental health incidents following admission to the correctional facility where death ultimately occurred, it inherently was information known to the correctional facility in question.  To that end, the data may reveal patterns of chronically insufficient responses to incarcerated individuals experiencing mental health episodes or patterns of specific institutions failing those with mental health struggles.  Given the DOJ's mandate to develop policy responses to the DCRA data, the public has an interest in understanding what the data reveals to assess whether DOJ has taken appropriate action in response.  In other words, seeing the data in full allows the public to better evaluate whether the DOJ is carrying out its statutory duty.  Thus, the matter is distinguishable from *Voice of San Diego*, where the court there concluded that the public interest was "minimal or nonexistent[.]" *Id.* at *25.

Second, the privacy interest analysis differs in the instant matter as compared to *Voice of San Diego*.  In *Voice of San Diego*, the mental health information to be released was tied to the twenty "specific, known servicemembers who committed suicide." *Id.* at *25.  Here, by contrast, the mental health-related data would not be

tied to specific, identified individuals, as already ruled on by the Court in its prior

Order.  (Order at 17).  This is a significant difference and one not addressed by

Defendant.  Further, the Court notes that while the defendant in *Voice of San Diego*

submitted multiple declarations to support its asserted privacy interest, Defendant, by

contrast, has done little to articulate "the justifications for nondisclosure with

reasonably specific detail[.]"  *Berman*, 501 F.3d at 1140.  Accordingly, as compared

to *Voice of San Diego*, the privacy interest is notably lower in addition to the public

interest being higher.

The Court, therefore, concludes that the public interest in the disclosure of this

data outweighs the privacy interests.  As such, FOIA mandates disclosure.

d. <u>Public Interest with Respect to Decedents' Sensitive Medical Details</u>
<u>Outweighs Privacy Interest</u>

Defendant proposes engaging in line-by-line redaction of free-form responses

within the data that contain "sensitive medical details that are likely to cause the

decedents' survivors anguish and that go well beyond what is necessary for

'meaningful analysis' of 'how inmates die, where, and why.'"  (DPW at 4).

Defendant proposes redacting "information in those responses that is not directly

relevant to the cause of death, while releasing information that is specific to the cause

of death." (*Id.*).  Plaintiffs object, arguing that line-by-line review is "impractical and

internally incoherent[,]" essentially leaving it up to Defendant to "decide what is and

is not important" and what is or is not "directly relevant to the cause of death."[9]  (*Id.* at

11-12).  Furthermore, Plaintiffs contend that the medical details Defendant seeks to

withhold are "inextricably related to the public interest in the DCRA records[,]" and

---

[9] Plaintiffs emphasize that, implicitly, "*all* of the information provided in the database
is relevant to a decedent's death," or else it would not have been collected to begin
with.  (*Id.*).  The Court agrees with the proposition that all of the data collected
pursuant to the DCRA must be at least tangentially relevant to the death in custody.
The public interest analysis, however, focuses on the degree to which the information
would shed light on the government's functioning.  The Court, therefore, does not find
this argument dispositive.

1   that Defendant has only pointed to "potential embarrassment by unidentified family

2   members . . . which cannot justify nondisclosure."[10]  (*Id.* at 11).  For the reasons

3   explained below, the Court agrees with Plaintiffs and concludes that the significant

4   public interest in disclosure outweighs the minimal privacy interest.

5        For one, though Defendant contends the information it seeks to redact is not

6   relevant to the cause of death, the examples provided demonstrate the impracticality

7   of this approach.  Many of the examples of proposed redactions target graphic medical

8   details that *are* implicitly relevant to death.  (DPW at 5-6).  For example, some of the

9   proposed redactions include specifics around the events leading up to the individual's

10  custody, the state that the decedent was found in upon death and the specific

11  circumstances of their death.  (*Id.*).  While the Court recognizes that these details may

12  be graphic, even gruesome – and may be the type of information that would cause

13  survivors anguish – it disagrees that they are not relevant to the circumstances of

14  death.  This supports Plaintiffs' argument that it is impractical that Defendant be

15  tasked with deciding what is relevant to the cause of death and what is not.  This is,

16  inherently, a value-laden judgment, which the Court doubts can be evenly applied.  As

17  there is no objective way to determine what is "*additional* unnecessary, sensitive

18  details[,]" the Court rejects this approach.  (DR at 9) (emphasis in original).

19       Next, the Court turns to the nature of the public interest by considering two

20  factors – whether the public interest sought to be advanced "'is a significant one'" and

21  whether the information requested "'is likely to advance that interest.'"  *Cameranesi*,

22  856 F.3d at 639 (quoting *Yonemoto*, 686 F.3d at 694).  As the Court has already

23  analyzed above, the public interest is significant.  Access to the medical details of

24  those who died in custody is similarly likely to advance that interest, as the data

25  _____

26  [10] Defendant emphasizes that privacy interest also encompasses the more general
    interest retained by family members of decedents with respect to medical records and
27  autopsy reports, citing to *Voice of San Diego*.  (DR at 8).  The Court finds the matter
    distinguishable, however, as addressed below, where the decedents' identities are
28  withheld.

provides additional insight into the circumstances surrounding deaths in custody that
bear upon DOJ's statutory duty. *See Lahr*, 569 F.3d at 978 (emphasizing that the
disclosure must provide "marginal additional usefulness"). Understanding the full
context of the decedents' deaths can illuminate patterns, which better allows the
public to understand the extent to which the DOJ is addressing those patterns. Access
to this data, therefore, provides marginal additional usefulness.

The Court, again, finds the public interest outweighs the private interest for
similar reasons as those already expressed. The Court finds the privacy interest in
non-disclosure to be minimal. While the medical details are the type of information
"'that a person ordinarily would not wish to make known about himself or herself[,]'"
the deceased retain only a "moderate privacy interest" in the release of their own
medical treatment history. *Voice of San Diego*, 2024 WL 4471146, at *25-26
(quoting *Vietnam Veterans*, 453 F.Supp.3d at 517). Moreover, when the information
is not linked to an identifiable individual, any moderate privacy interest is
significantly reduced. Considering the public interest in disclosure is significant, the
Court finds that the public interest outweighs the privacy interests.

While the court in *Voices of San Diego* came to the opposite conclusion, the
Court finds the instant matter readily distinguishable for the same reasons as already
explained. In *Voices of San Diego*, the court emphasized that the medical histories
that the plaintiff sought failed to shed light on government activity, as they were
collected *after* the servicemembers' suicide occurred. *Voice of San Diego*, 2024 WL
4471146, at *22. In addition, any formal medical records sought in the request were
those not known to the Navy due to doctor-patient confidentiality. *Id.* In other words,
the plaintiff had failed to demonstrate a public interest in any of the medical data
because the data failed to offer insight into the government's conduct. By contrast,
the public has a significant interest in the medical details of the decedents, as they
capture circumstances of death while in custody which, in the aggregate, bear upon
whether the DOJ is formulating appropriate policy responses. *See also Wessler*, 381

F.Supp.3d at 260 ("Turning to the public interest served in the release of these medical records, the Court finds that it is significant. The public has a right to know the circumstances under which people die while detained in the pretrial custody of the USMS"). Furthermore, the privacy interest in *Voice of San Diego* was more significant, where the medical files were linked to specific, identifiable servicemembers. *Id.* at *25. Here, where the files would not be linked to an identifiable individual, the privacy interest is significantly lower.

The Court, therefore, concludes that the significant public interest in this data outweighs the minimal privacy interests. As such, FOIA mandates disclosure.

e. <u>Public Interest with Respect to Decedents' Alleged Criminal Conduct or History Outweighs Privacy Interest</u>

Defendant proposes withholding in their entirety "categories concern[ing] alleged criminal conduct by the decedent in the course of an arrest-related death, that, by its nature, never resulted in conviction." (DPW at 3). Defendant argues that "to the extent that there may be a public interest in the circumstances of the arrest or the decedents' conduct during the arrest, other categories that may be released cover much if not all of that information." (*Id.* at 4). Defendant contends that "[t]here is no marginal public benefit to be gained from additionally airing unproven, uncharged (and unchargeable) criminal allegations against decedents who necessarily cannot contest those allegations." (*Id.*). Plaintiffs disagree, arguing the circumstances surrounding law enforcement interaction may be particularly of public interest when the alleged criminal offenses at issue were "non-violent or highly speculative." (PO at 13). The Court agrees with Plaintiffs and finds the public interest in disclosure outweighs the minimal privacy interest.

First, the Court rejects Defendant's contention that alleged criminal conduct should be withheld because "other categories that may be released cover much if not all of that information." (DPW at 4). The standard for withholding information under FOIA's Exemption 6 is that disclosure presents a clearly unwarranted invasion of

privacy that creates foreseeable harm.  5 U.S.C. § 552(b)(6).  The standard is not whether the information in question might be revealed through other channels.

Second, the Court is sympathetic to the argument that airing uncharged criminal allegations is an invasion of privacy, but the Court disagrees with Defendant for two reasons.  For one, though decedents may retain "measurable privacy interests . . . in their criminal histories and prior encounters with law enforcement[,]" this privacy interest presumes that the individual will be identifiable.  *Voice of San Diego*, 2024 WL 4471146, at *27.  As already discussed, any privacy interest is mitigated by anonymization of the data.[11]  While the Court recognizes that the decedents' surviving family members have a non-trivial privacy interest in the decedents' arrest record data more generally, any cognizable privacy interest is mitigated when decedents' identities are not disclosed alongside it.  Additionally, the Court disagrees that the information offers no additional marginal benefit, as further addressed below.

Turning to the nature of the public interest, the Court has already concluded that it is significant.  Access to records concerning law enforcement counters of those who died in custody is similarly likely to advance that interest, as the data provides additional insight into the circumstances surrounding deaths in custody that bear upon the DOJ's performance of its statutory duty.  *See Lahr*, 569 F.3d at 978 (emphasizing that the disclosure must provide "marginal additional usefulness").  Understanding the full circumstances of the decedents' deaths – including law enforcement encounters preceding the untimely death – can illuminate patterns, which better allows the public to understand the extent to which the DOJ is addressing those patterns.  Access to this data, therefore, provides marginal additional usefulness.[12]

---

[11] With respect to the limited group of decedents whose PII would be disclosed, the Court notes that, where there would not be highly sensitive medical or mental health-related data released alongside it, the situation is distinguishable from *Voices of San Diego*.  Furthermore, this approach is consistent with *Gannett. See Gannett*, 2025 WL 416258, at *14.

[12] Defendant argues that the decedents' criminal history is "temporally and spatially removed from their deaths in state custody such that this information cannot possibly

1    While the court in *Voices of San Diego* came to the opposite conclusion, the

2    Court finds the instant matter readily distinguishable for similar reasons as already

3    explained.  Here, where the files would not be linked to an identifiable individual, the

4    privacy interest is appreciably lower.  Furthermore, the public interest is significant.

5    The Court, therefore, concludes that the significant public interest in this data

6    outweighs the minimal privacy interests.  As such, FOIA mandates disclosure.

7            f.  Public Interest in Additional Categories, Such as Race, Outweigh

8                Privacy Interest

9    Plaintiffs highlight that Defendant's proposal seemingly fails to address certain

10   categories that appear to be subject to line-by-line redaction in the exhibits it

11   submitted.  (PO at 12-13 n. 8).  The categories Plaintiffs point out include use of

12   force, law enforcement weapon use, manner of death, non-arrestee criminal offenses,

13   incident location, decedent race and decedent action, all of which appear in yellow.

14   (*see* DPW, Exs. 1-11, Docket No. 62-1-11).  Defendant contends that many of these

15   categories appear in yellow because they are of the type that were proposed to

16   undergo line-by-line redaction – whether for sensitive medical details, mental health

17   records or third party PII.[13]  (DR at 7-8).

18   The Court agrees with Plaintiffs that, to the extent that Defendant has failed to

19   articulate any privacy interest with respect to some of these categories, FOIA

20   ─────────────────

21   contain anything relating to the circumstances of their deaths or DOJ's response."
     (DR at 11).  The Court disagrees that this is categorically true for all of the data

22   Defendant seeks to redact.  "The range of circumstance included in the category must
     'characteristically support[] an inference that the statutory requirements for exemption

23   are satisfied.'"  *Samuels*, 787 F.3d at 1150.  The Court, accordingly, rejects this
     argument.

24   [13] Plaintiffs highlight that Defendant seems to be invoking the privacy principles and
     case law relevant to Exemption 7, which the Court has already found to be

25   inapplicable to the instant matter.  (PO at 10); (*see also* Order, Docket No. 54 at 11).
     The Court agrees that because Exemption 7(c) is more favorable to privacy interests,

26   that case law largely does not bear upon the instant matter, including the use of the
     "mosaic theory."  *See, e.g., Edmonds v. D.O.J.*, 405 F.Supp.2d 23, 32-33 (D.D.C.

27   2005) ("pieces of seemingly innocuous information can be analyzed and fitted into
     place to reveal with startling clarity how the unseen whole must operate").

28

1  mandates their disclosure.  *See ACLU SoCal*, 739 F.Supp.3d at 822 (quoting

2  *Yonemoto*, 686 F.3d at 694) ("'If, at step one, the agency fails to establish that

3  disclosing the contested information would lead to the invasion of a non-trivial

4  personal privacy interest protected by Exemption 6, [] FOIA demands disclosure,

5  without regard to any showing of public interest'").  Defendant has articulated no

6  privacy interest in preventing disclosure of the decedents' race; accordingly, this is

7  information that must be disclosed.  Similarly, Defendant provides no privacy interest

8  in preventing disclosure of "use of force" or "law enforcement's use of weapon,"[14]

9  which, similarly, must be disclosed.

10     It appears the remaining categories to which Plaintiffs refer are, indeed, of the

11  type that might include sensitive medical details, mental health records or PII, which

12  Defendant had proposed subjecting to line-by-line redaction.  Though the Court has

13  already found the redaction of sensitive medical details and mental health records

14  unwarranted, the redaction of the decedents' and third parties' PII is addressed more

15  thoroughly below.  Accordingly, except to the extent that these categories may require

16  scanning for decedent or third party PII, they should not be subject to line-by-line

17  redaction.

18          g.  Privacy Interest with Respect to the Decedents' Personally

19              Identifiable Information Outweighs Public Interest

20     The Court finally turns to Defendant's proposal to withhold the decedents' PII.

21  Though the Court already ruled on the propriety of withholding the decedents' PII, the

22  Court reiterates its reasoning more thoroughly below.

23     Defendant proposes withholding in their entirety "categories that contain the

24  decedents' full name and month and day of birth[15] (or month, day, and year where

25  _____

26  [14] It is understandable that free-form entries for use of force or law enforcement use of
   weapon would be more likely to contain third party PII that might be subject to

27  redaction; however, with respect to race, even if it is a free-form entry, the Court fails
   to see what potentially sensitive information might require redaction.

28  [15] Defendant has conceded, however, that where "year of birth is reported as a

reported as a single variable), as well as the decedents' assigned identification

number."[16]  (DPW at 3).   Plaintiffs object to the categorical redaction of the

decedents' names, describing this information as "essential to the DCRA data[]set."[17]

(Plaintiff's Objections ("PO"), Docket No. 64 at 2).  Plaintiffs also object to the

categorical redaction of the decedents' assigned identification number, arguing that

Exemption 6 "does not allow for withholding the identities of the deceased."  (*Id.* at

4).  Here, the Court agrees with Defendant.

   First, turning to the public interest analysis, the Court has already noted that the

public interest sought to be advanced in the disclosure of the DCRA data more

generally is a significant one, as it offers insight into the DOJ's performance of its

statutory duty.  On the second factor of the public interest analysis, however, Plaintiffs

fail.  The Court does not agree that knowing the individuals' identities "is likely to

advance" the public interest.  *Cameranesi*, 856 F.3d at 639 (quoting *Yonemoto*, 686

F.3d at 694).  To the extent that the data set offers insight into the circumstances

surrounding these individuals' deaths, as well as the demographic data that

sufficiently demonstrates "who" is dying in custody, the fact of the decedents' names

and identities does not advance that interest.  *See Lahr*, 569 F.3d at 978 (emphasizing

that the disclosure must provide "marginal additional usefulness").  Simply put,

knowing specifically who died in custody does not offer insight into the DOJ's efforts

to address deaths in custody.

   Plaintiffs present an additional argument regarding the public interest,

contending that "[t]he public should be allowed to perform the functions that the DOJ

---

separate category," it proposes "to release that information to allow for calculation of
the decedent's age at death."  (DPW at 3).  The Court agrees that this is appropriate.
Plaintiffs indicate that a compromise was reached between the Parties on this issue.
(PO at 6).

[16] This refers to the registration number assigned to incarcerated individuals, which
can be used to look up an individual's identity.

[17] Plaintiffs concede that "harms such as identity theft are possible even
postmortem[,]" and therefore do not object to the redaction of social security numbers
and full birthdates.  (PO at 5).

1  has chosen to abandon using the full scope of available information." (PSR at 6). The

2  crux of Plaintiffs' argument is that providing certain identifying information about

3  individuals "assist[s] with further investigation into a particular death." (*Id.* at 3).

4  The Court disagrees that this is a relevant public interest in the context of FOIA.[18]

5        In *Voice of San Diego*, the court addressed a similar argument, wherein the

6  plaintiff argued that disclosing the decedents' mental health-related data would serve

7  the public interest by illuminating "'warning signs'" of suicide as well as shedding

8  light on "'what the military could do to decrease the incidence of suicide.'" *Voice of*

9  *San Diego*, 2024 WL 4471146, at *23. Many courts refer to this argument in the

10  context of FOIA exemptions as a "derivative use of information." *Id.* (collecting

11  cases). The court ultimately concluded that this failed to demonstrate any marginal

12  additional usefulness in the context of FOIA – the purpose of which is to shed light on

13  government activity. *Id.* Plaintiff's desire to analyze the data in service of performing

14  additional investigations into the deaths is not a cognizable public interest under

15  FOIA.

16        As a result, the Court finds that Plaintiffs have failed to demonstrate how

17  disclosure of the decedents' identifying information serves the public interest. *See*

18  *Lahr*, 569 F.3d at 978 (emphasizing that the disclosure must provide "marginal

19  additional usefulness"). The relevant public interest in the context of FOIA is the

20  degree to which information sheds light on "'what [the] government is up to.'"

21

22  ---

[18] The Court in *Gannett* came to a slightly different conclusion, finding that "[a]ccess
23  to the raw data[,]" which implicitly included the decedents' PII, "would allow [the
   plaintiff] and other entities and individuals to perform their own analysis . . . which in
24  turn would allow the public to determine how well DOJ carried out this specific
   statutory duty." *Gannett*, 2025 WL 416258, at *16. There, however, the court was
25  seemingly not presented with arguments relating to categorical redactions,
   specifically, of decedents' PII. As noted, the demographic data that *would* be
26  disclosed in the present matter is sufficient to illuminate patterns of who is dying in
   custody. The Court, therefore, finds that *Gannett* does not bear upon the narrow issue
27  of redacting decedents' identities, where the court there does not specifically address
   such arguments.
28

*Horrowitz*, 428 F.3d at 278 (quoting *Reps. Comm. for Freedom of the Press*, 498 U.S. at 773).  In the event that a plaintiff fails "to demonstrate a public interest in disclosure of the requested information, the court 'need not linger over the balance; something, even a modest privacy interest, outweighs nothing every time.'"  *Voice of San Diego*, 2024 WL 4471146, at *24 (quoting *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989)).

Therefore, the Court finds that the privacy interest mandates redaction of the decedents' PII.  While it is true that Exemption 6 does not categorically exempt individuals' identities, the Court finds that, in this scenario, the withholding of the decedents' PII is appropriate given the nature of the DCRA data and the lack of demonstrated public interest in the decedents' identities.  The Court agrees with Defendant's contention that, given the highly sensitive nature of the information in the data set, the "release of the identifying information of decedents could bring their survivors[19] anguish . . ."  (DR, Docket No. 73 at 5).  These privacy interests are "significant."[20]  *See Voice of San Diego*, 2024 WL 4471146, at *28.  Thus, in weighing the significant privacy interest against the non-existent public interest in knowing the decedents' identities, FOIA mandates non-disclosure.

Furthermore, withholding the individuals' identities balances the overarching public and privacy interests at hand.  The Court has already concluded that the public

---

[19] Plaintiffs argue that Defendant has failed to point to specific family members concerned about disclosure of the decedents' identities.  (PSR at 3).  Plaintiffs contend that "without evidence from the DOJ, the Court should not presume family members would view disclosure of this information as an unwarranted invasion of their privacy."  (*Id.* at 4).  The Court disagrees.  Because Defendant has raised a cognizable, non-trivial privacy interest that decedents and their surviving family members retain in their loved ones' sensitive information, the onus is on Plaintiffs to present the marginal additional benefit added by disclosure of the identities.

[20] Plaintiffs highlight that no case law demonstrates that Exemption 6 requires redacting the identities of deceased individuals.  While the Court recognizes the absence of case law to this effect, the Court finds the present matter unique.  As it has been demonstrated that the public interest outweighs privacy interests in disclosing highly sensitive information, it is apt to protect the identities of these individuals.

interest in this data is significant, overriding the privacy interest in withholding the highly sensitive information within the DCRA data set.  To the extent, however, that withholding these individuals' identities offers a degree of protection – both in terms of the decedents' and their family members' privacy interest– the Court finds this practical measure appropriate.  As stated, the overall "focus of the public interest analysis is the citizens' right to know 'what their government is up to[,]'" and disclosing the identities of the decedents does not advance that interest.  *Horrowitz*, 428 F.3d at 278 (quoting *Reporters Comm. for Freedom of the Press*, 489 U.S. at 773).  Preventing the decedents' identities from being disclosed alongside the highly sensitive information appropriately balances the privacy interests retained by the decedents themselves and their family members.

### 2.  *Redactions Related to Third Party Information*

The Court now turns to redactions with respect to third party PII.  Defendant proposes redacting third parties' PII, "such as law enforcement officers or other inmates, who are presumptively still alive[.]"  (DPW at 4).  Without articulating a specific privacy interest, Defendant states that these third parties "enjoy heightened privacy interests, and there is no public interest in knowing the particular names of third parties who are otherwise not described in the data[]sets."  (*Id.*).  Plaintiffs do not object to redacting names of inmates and medical professionals.[21]  (PO at 6).

The Court begins with what is undisputed between the Parties.  The Court agrees with the Parties that Defendant should redact PII of inmates[22] and medical

---

[21] The Parties had initially agreed that, additionally, the PII of non-supervisory law enforcement officers and administrators with no indicia of culpability should also be redacted.  (PO at 6).  At oral argument, however, it became apparent that attempting to distinguish between third parties with and without "indicia of culpability" was inherently a value-laden decision that would be challenging to implement evenly, and that level of seniority would also be challenging to decipher from the data set.  Given Defendant's contention that this approach was not practical, the Court declines to implement this approach.
[22] Plaintiffs propose replacing any names of inmates with the word "inmate" in order to provide greater clarity as to the fact of inmate involvement.  (PO at 7).  The Court

1   professionals.  Where there is no dispute, the Court need not expend additional

2   analysis.

3       Next, the Court turns to the privacy interest articulated by Defendant.  An

4   agency must "'articulate both the nature of the harm [from release] and the link

5   between the specified harm and specific information contained in the material

6   withheld." *Reporters Committee for Freedom of the Press v. F.B.I.*, 3 F.4th 350, 369

7   (D.C. Cir. 2021) (quoting H.R. REP. No. 391, 114th Cong., 2d Sess. 9 (2016)).

8   Further, the agency must articulate "tailored reasons" for an exemption's use,

9   avoiding boilerplate and conclusory statements.  *Shannahan v. Internal Revenue Serv.*,

10  672 F.3d 1142, 1148 (9th Cir. 2012).  The Court does not find that Defendant has

11  articulated either the nature of the harm from release or the link between that harm

12  and the information sought to be withheld.  The bald assertion of a "heightened"

13  privacy interest does not allow the Court to engage in meaningful analysis in weighing

14  the public and privacy interests.[23]   Accordingly, the Court finds that where

15  Defendant has oversimplified the privacy interest as to third parties, it is unable to

16  meaningfully balance the public and private interests; the Court, therefore, **DENIES**

17  the Motion with respect to the remainder of the third party PII within the data set,

18  which must be released to Plaintiffs.  *See, e.g., Pinson II*, 236 F.Supp.3d at 364-65

19  (denying the defendant's motion for summary judgment where the "oversimplification

20  prevent[ed] [the] Court from understanding the privacy interests that weigh against

21  disclosure, and the Court thus [could not] correctly balance the public and private

22  interests").

23

24

25

26  _____
    agrees with this approach.

27  [23] Plaintiffs contend that Defendant has "failed to identify a foreseeable harm[]"
    resulting from a "'clearly unwarranted invasion of privacy.'"  (*Id.*) (quoting *Pinson v.

28  Dep't of Justice* ("*Pinson I*"), 160 F.Supp.3d 285, 300 (D.D.C. 2016)).  The Court
    agrees to the extent that the privacy interest is not clearly articulated.

1    **III.    CONCLUSION**

2          For the foregoing reasons, the Motion for Summary Judgment is **GRANTED** as

3    follows:

4          1.  Defendant may properly withhold the PII of the decedents, pursuant to

5              Exemption 6, by withholding full name, full birthdate including the day,

6              month and year, social security number and assigned ID number – but only

7              with respect to those decedents for whom the data set contains highly

8              sensitive medical or mental health-related data, as specifically articulated

9              herein; and

10         2.  Defendant may properly withhold the PII of third parties, pursuant to

11             Exemption 6 by withholding PII of inmates and medical professionals.

12         The Motion for Summary Judgment is **DENIED** with respect to all other

13   proposed redactions.  As such, Defendant must produce the data set in its entirety,

14   except for those withholdings and redactions as mentioned above.  The Court

15   **ORDERS** the Parties to meet and confer within twenty-one (21) days of this Order to

16   discuss compliant document production.  The Parties are **ORDERED** to provide the

17   Court with an update within fourteen (14) days of this meet and confer.

18

19         **IT IS SO ORDERED.**

20

21   Dated:  July 28, 2025                    _____

22                                            HON. WESLEY L. HSU
                                             UNITED STATES DISTRICT JUDGE

23

24

25

26

27

28