BRETT A. SHUMATE
Assistant Attorney General
ELIZABETH J. SHAPIRO
Deputy Director
EITAN R. SIRKOVICH (D.C. Bar No. 90030102)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 353-5525
E-mail: eitan.r.sirkovich@usdoj.gov

Attorneys for Defendant
U.S. Department of Justice,
Office of Justice Programs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC. and ETHAN COREY, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS, <br><br> Defendant. | No. 5:22-cv-02111 <br><br> **MOTION FOR RELIEF FROM FINAL JUDGMENT** <br><br> Hon. Wesley L. Hsu <br> United States District Judge |

# INTRODUCTION

On July 28, 2025, this Court issued its Final Summary Judgment Order, ECF No. 92, requiring Defendant to "produce the data set [requested under the Freedom of Information Act ("FOIA")] in its entirety, except for [specific] withholdings and redactions" described earlier by the Court. *Id*. at 31. Pursuant to that order, the Parties have been working to produce the data on a biweekly basis and cooperatively resolving issues that arise. *See* Joint Status Report, ECF No. 93; Notice, ECF No. 94. Defendant now returns to the Court to seek relief from its production obligations under the order pursuant to Federal Rule of Civil Procedure 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for . . . any [] reason that justifies relief.").

There is good cause for granting such relief because Congress has amended the law governing the data at issue to affirm Defendant's position that such data is exempt from public disclosure. *See* National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, Sec. 8205(b), 139 Stat. 718 (Dec. 18, 2025) (hereinafter "NDAA") (available at https://www.congress.gov/bill/119th-congress/senate-bill/1071/text). While the harms stemming from the disclosures that have already been made are irreparable—it is not possible to claw the information back—this Court can still avoid the consequences that will result from disclosure of the roughly 25,000 rows of data that have yet to be released. *See* Final Summ. J. Order at 14 ("Defendant has identified a non-trivial privacy interest implicated by the release of the sought after information"). Accordingly, Defendant

respectfully requests that the Court vacate its Final Order and relieve Defendant of its FOIA production obligations. In accordance with Local Rule 7-3, the Parties conferred by video conference on February 13, 2026. The Parties successfully narrowed the scope of issues; however, Plaintiffs oppose the ultimate relief sought in this motion, as well as Defendant's pause in production during the pendency of this motion, *see* Notice, ECF No. 94.

## BACKGROUND

### I. This Litigation

This litigation concerns three different FOIA requests that Plaintiff submitted to the Defendant U.S. Department of Justice, Office of Justice Programs ("OJP"). Those requests sought data relating to deaths in custody that had been provided to OJP. OJP denied the requests pursuant to FOIA Exemptions 3 (statutory withholding), 6 (privacy), and 7 (law enforcement privilege) and Plaintiffs brought the instant legal action challenging those determinations. This Court ultimately rejected Defendant's Exemptions 3 and 7 arguments and allowed for limited redactions and withholding pursuant to Exemption 6.

The Court's Exemption 3 conclusion warrants revisiting in light of the recently enacted NDAA. Defendant previously argued that all the requested data had been furnished under Title I of the Crime Control Act ("CCA"), which prohibits disclosure except for limited purposes not pertinent here. *See* First Summ. J. Order, ECF No. 54 at 7–10. The Court accepted Defendant's argument only with respect to the data that been

furnished during years that the Deaths in Custody Reporting Act ("DCRA") was not in effect. *See id*. With respect to data that had been furnished during the years DCRA was active, however, the Court held that the CCA's prohibition on disclosure did not apply, and that DCRA did not contain a similar prohibition. *See id*. Applying a "textual analysis" and a "structural analysis" to discern congressional intent, the Court rejected Defendant's position that the data could be furnished under *both* statutes and that the CCA prohibition on disclosure would still apply. *Id*. at 8. Therefore, the Court held that data furnished during the years DCRA was in effect were not protected by Exemption 3. *Id*. at 10–11.

## II. The National Defense Authorization Act of Fiscal Year 2026

This year's NDAA amended the CCA, codified at 34 U.S.C. 10231(a), as follows (changes are in bold):

> No officer or employee of the Federal Government, and no recipient of assistance under the provisions of [34 U.S.C. ch. 101] shall use or reveal any research or statistical information ~~furnished under [34 U.S.C. ch. 101] by any person and identifiable to any specific private person~~ **furnished under any law to any component of the Office of Justice Programs, or furnished otherwise under [34 U.S.C. ch. 101], by any entity or person, including any information identifiable to any specific private person,** for any purpose other than the purpose for which it was obtained in accordance with [34 U.S.C. ch. 101]. Such information and copies thereof shall be immune from legal process, and shall not, without the consent of the ~~person furnishing such information~~ **entity or person furnishing such information or to whom such information pertains**, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings.

Pub. L. No. 119-60, Sec. 8205(b). Furthermore, the amendment is retroactive and "shall take effect for all purposes as if enacted on December 27, 1979" and will "apply to any matter pending, before the Department of Justice or otherwise, as of the date of enactment

3

of this Act." *Id*.

## LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) allows a Court to "relieve a party or its legal representatives from a final judgment, order, or proceeding for" specified reasons. One of these reasons is that applying the final judgment or order "prospectively is no longer equitable." Fed. R. Civ. P. 60(b)(5). This Rule "provides a means by which a party can ask a court to modify or vacate a judgement or order if 'a significant change either in factual conditions or in law renders continued enforcement detrimental to the public interest.'" *Horne v. Flores*, 557 U.S. 433, 447 (2009) (citation omitted). Ultimately, Rule 60(b)(5) establishes a "pliable standard" that "codifies the courts' traditional authority, inherent in the jurisdiction of the chancery, to modify or vacate the prospective effect of their decrees." *California v. EPA*, 978 F.3d 708, 713 (9th Cir. 2020) (citation omitted). "[A] shift in the legal landscape that removes the basis for an order warrants modification of an injunction." *Id.* at 715. If a party carries its burden of establishing that "changed circumstances warrant relief," a "court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes." *Horne*, 557 U.S. at 447 (cleaned up).

Rule 60(b)(6) also allows a court to provide relief from a final judgment, order, or proceeding for "any other reason that justifies relief." This "catchall" provision provides "grounds for relief not already covered by the preceding five paragraphs." *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212 (2025). A movant "seeking relief under Rule

60(b)(6) must show extraordinary circumstances justifying the reopening of a final judgment." *Henson v. Fidelity Nat'l Fin., Inc.*, 943 F.3d 434, 443–44 (9th Cir. 2019) (cleaned up).

## ARGUMENT

### I. Changed circumstances resulting from the enactment of the NDAA warrant relief from final judgment under Rule 60(b).

A new enactment by Congress, such as the NDAA, is the quintessential type of change in circumstances that warrants relief from final judgment. *See Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, 364 U.S. 642 (1961) (Congress's amendment to the Railway Labor Act to permit contracts that require union membership warranted relief from Court's order prohibiting such contracts); *State of Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1855) (Congress's establishment of a particular bridge as a postal route warranted relief from a Court's earlier order to demolish the bridge); *California Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025 (9th Cir. 2008) (Congress's enactment of the Deficit Reduction Act of 2005 amended the underlying law to prohibit the District Court's earlier statutory construction, such that relief from judgment was warranted). Cases are consistent that, "when the law changes to permit what was previously forbidden, it is an abuse of discretion to not modify an injunction based on the old law." *California v. EPA*, 978 F.3d at 714–15 (change in law resulting from new agency regulation); *see also Agostini v. Felton*, 521 U.S. 203 (1997) (change in law resulting from Supreme Court interpretation).

A plain reading of the NDAA warrants relief from this Court's Final Summary Judgment Order. FOIA Exemption 3 requires an agency to withhold information that is "specifically exempted from disclosure by statute," if that statute "(i) requires that the matter be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). Exemption 3 entails a two-step inquiry. "First, a court must determine whether there is a statute within the scope of Exemption 3." *Minier*, 88 F.3d at 801. Second, "it must determine whether the requested information falls within the scope of the statute." *Id*.

The amended statutory language prohibits disclosure of statistical information ''furnished under any law to any component of the Office of Justice Programs, or furnished otherwise under this title, by any entity or person, including any information identifiable to any specific private person[.]'' Pub. L. No. 119-60, Sec. 8205(b). The new language, "under any law," eliminates any need to discern whether the information was furnished under the CCA or DCRA. The amended statute now protects from disclosure all identifiable statistical information "furnished otherwise" to the Office of Justice Programs, eliminating any need to identify a relevant statute. *Contra* First Summ. J. Order at 7–8. Furthermore, the new language now explicitly names "any component of the Office of Justice Programs"—which includes the Bureau of Justice Assistance and the Bureau of Justice Statistics—as custodial entities to which the blanket prohibition on disclosure now applies. Finally, the amendment specifies that the new language "shall

6

take effect for all purposes as if enacted on December 27, 1979" and "apply to any matter pending, before the Department of Justice or otherwise, as of the date of enactment of this Act [December 18, 2025]." Pub. L. No. 119-60, Sec. 8205(b). Because the FOIA requests are for records that were furnished to components of OJP on and after December 27, 1979, the amendment explicitly applies retroactively to the data at issue in this case. A plain reading therefore confirms that the amended statute is "within the scope of Exemption 3" and the data requested "falls within the scope of the statute." *Minier*, 88 F.3d at 801.

Although the NDAA does not contain magic words expressly citing FOIA, this does not alter the conclusion that its prohibition is within the scope of Exemption 3. *See* OPEN FOIA Act of 2009, 5 U.S.C. § 552(b)(3)(B) (if a nondisclosure statute is "enacted after the date of enactment of the OPEN FOIA Act of 2009," it must "specifically cite[] to this paragraph" in order for Exemption 3 to apply). The NDAA is unambiguous that the amendment "shall for all purposes [be effective] as if enacted on December 27, 1979," long before any magic words requirement existed under the OPEN FOIA Act of 2009. *See Vartelas v. Holder*, 566 U.S. 257, 266 (2012) ("courts read laws as prospective in application *unless Congress has unambiguously instructed retroactivity*" (emphasis added)).

This distinguishes this case from *Center for Investigative Reporting v. United States Department of Justice*, in which the Ninth Circuit concluded that a nondisclosure statute did not constitute an Exemption 3 statute because its latest enactment postdated the OPEN FOIA Act and did not include a citation to it. 14 F.4th 916 (9th Cir. 2021); *but see*

7

*Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 43 (2d Cir. 2020) (concluding the same statute was an Exemption 3 statute, and that the "argument that we must mandate disclosure here to vindicate the OPEN FOIA Act proves too much. Congress may subsequently choose to depart from the requirements adopted in the OPEN FOIA Act, and that is its prerogative."); *Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. CV 23-3762 (RDM), 2026 WL 143346 at *15 (D.D.C. Jan. 20, 2026) (adopting the Second Circuit's approach). Notably, the statute at issue in *Center for Investigative Reporting* did not include any language unambiguously directing retroactivity.

      In any event, the OPEN FOIA Act's magic words requirement is no exception to the Supreme Court's instruction that when an earlier Congress purports to impose an express-reference requirement on a later Congress's enactments, courts must evaluate the intent of the later Congress and give full effect to "the will of Congress as manifested either expressly or by *necessary implication* in a subsequent enactment." *Dorsey v. United States*, 567 U.S. 260, 274 (2012) (citation omitted). The later Congress may choose to "exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute but as modified." *Id*. And Congress does not need to do so explicitly (as it did here); it may even do so "by implication[.]" *Id.* The "plain import" or "fair implication" of a later statute "governs, *regardless* of its compliance with any earlier-enacted requirement of an express reference or other magical password." *Id.* (citations omitted). The express will of the sitting Congress unambiguously prohibits the data at

issue in this case from disclosure.

## CONCLUSION

Because the amended statute requires the opposite outcome from the analysis underlying the Court's Final Summary Judgment Order, relief from that order is warranted. Defendants respectfully request that the Court vacate its Final Summary Judgment Order and relieve Defendant of all future production obligations for the reasons stated above.

Dated: February 26, 2026

BRETT A. SHUMATE
Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Director

*/s/ Eitan R. Sirkovich*
EITAN R. SIRKOVICH (D.C. Bar No. 900030102)
Trial Attorney, U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, D.C. 20005
Telephone: (202) 353-5525
E-mail: eitan.r.sirkovich@usdoj.gov

*Attorneys for Defendant*

9

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-3

The undersigned, counsel of record for Defendant certifies that the Parties thoroughly discussed the substance and potential resolution of the filed motion by videoconference on February 13, 2026. The Parties were successful in narrowing the scope of issues; however, the Parties were unable to reach an agreement with respect to the ultimate relief requested in this motion. Plaintiffs oppose vacating the Court's Final Summary Judgment Order and relieving Defendant of its production obligations. Plaintiffs also oppose Defendant's pause in production during the pendency of this motion, *see* Notice, ECF No. 94.

/s/ *Eitan R. Sirkovich*
February 26, 2026

EITAN R. SIRKOVICH
Trial Attorney
U.S. Department of Justice

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Defendant certifies that this brief contains 2,255 words, which complies with the word limit of L.R. 11-6.1.

/s/ *Eitan R. Sirkovich*
February 26, 2026

EITAN R. SIRKOVICH
Trial Attorney
U.S. Department of Justice