THOMAS R. BURKE (State Bar No. 141930)
DAVIS WRIGHT TREMAINE LLP
50 California Street, 23rd Floor
San Francisco, California 94111
Telephone:   (415) 276-6500
Facsimile:    (415) 276-6599
Email:thomasburke@dwt.com

CYDNEY S. FREEMAN (State Bar No. 315766)
DAVIS WRIGHT TREMAINE LLP
350 South Grand Avenue, 27th Floor
Los Angeles, California 90071
Telephone:   (213) 633-6800
Facsimile:    (213) 633-6899
Email:cydneyfreeman@dwt.com

LEENA M. CHARLTON (*pro hac vice*)
DAVIS WRIGHT TREMAINE LLP
1251 Avenue of the Americas, 42nd Floor
New York, New York 10020
Telephone:   (212) 489-8230
Facsimile:    (212) 489-8340
Email:leenacharlton@dwt.com

*Attorneys for Plaintiffs*
THE APPEAL, INC., and ETHAN COREY

IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA - EASTERN DIVISION

| | |
|---|---|
| THE APPEAL, INC., and ETHAN COREY, <br><br> Plaintiffs, <br> v. <br><br> UNITED STATES DEPARTMENT OF JUSTICE'S OFFICE OF JUSTICE PROGRAMS, <br><br> Defendant. | Case No. 5:22-cv-02111-WLH-AFM <br><br> **PLAINTIFFS' OPPOSITION TO RULE 60(B) MOTION** <br> Motion Hearing: April 10, 2026 <br> Time: 1:30 p.m. <br><br> Courtroom 9B, First Street Courthouse <br> 350 W. First Street <br> Los Angeles, CA 90012 <br><br> Hon. Wesley L. Hsu <br> United States District Judge |

i

# TABLE OF CONTENTS

**Page**

**INTRODUCTION** ................................................................................ 1

**PROCEDURAL BACKGROUND** ...................................................... 3

**LEGAL STANDARDS** ....................................................................... 3

**ARGUMENT** ....................................................................................... 5

**I.    THE NDAA DOES NOT PROHIBIT PRODUCTION OF DCRA RECORDS** ................................................................................... 5

      A.    FOIA and DCRA, the Controlling Statutes, Mandate Disclosure ...... 5

      B.    The NDAA and Section 8205(b) are Entirely Unrelated to DCRA ... 7

      C.    Section 8205 is Not an Exemption Statute ......................................... 9

            1.    OPEN FOIA's citation requirement applies. .......................... 10

            2.    Congress purposefully omitted the Exemption 3 citation. ...... 12

      D.    Even If Section 8205(b) is An Exemption Statute, DCRA Records Are Not Covered By It ................................................................... 15

      E.    The DOJ's Reading is Absurd ........................................................... 17

**II.    THESE FACTS DO NOT MERIT RELIEF UNDER RULE 60(B)** .... 20

      A.    The Summary Judgment Order is Not Prospective .......................... 21

      B.    Defendant Has Not Demonstrated That Complying with The Order Is "No Longer Equitable" Under Rule 60(b)(5) or That The NDAA's Enactment Constitutes "Extraordinary Circumstances" or "Manifest Injustice" Under Rule 60(b)(6) ....................................................... 24

**CONCLUSION** ................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C.L.U. of S. Cal. v. I.C.E.*,
347 F.R.D. 518 (C.D. Cal. 2024)........................................................4, 5, 22, 27

*Agostini v. Felton*,
521 U.S. 203 (1997) ............................................................................. 3, 4, 26

*Arizona State Bd. For Charter Schs. v. U.S. Dep't of Educ.*,
464 F.3d 1003 (9th Cir. 2006) ................................................................... 17

*BLOM Bank SAL v. Honickman*,
605 U.S. 204 (2025) ............................................................................... 20, 25

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020) ...................................................................................... 17

*California by & through Becerra v. U.S. Env't Prot. Agency*,
978 F.3d 708 (9th Cir. 2020) ...................................................................... 27

*California Dep't of Soc. Servs. v. Leavitt*,
523 F.3d 1025, 1032 (9th Cir. 2008) ........................................................... 26

*Chisom v. Roemer*,
501 U.S. 380 (1991) ..................................................................................... 19

*Clifton v. Att'y Gen. of State of Cal.*,
997 F.2d 660 (9th Cir. 1993) ................................................................... 2, 4

*Colon v. Berryhill*,
2019 WL 5305469 (W.D.N.Y. Oct. 21, 2019) ........................................... 23

*Conservation Force v. Salazar*,
915 F. Supp. 2d 1 (D.D.C. 2013) ........................................................... 22, 25

*Ctr. for Investigative Reporting v. U.S. Dep't of Just.*,
14 F.4th 916 (9th Cir. 2021) ............................................................... *passim*

*D.H.S. v. MacLean*,
574 U.S. 383 (2015) ...................................................................................... 15

*Dep't of Air Force v. Rose*,
425 U.S. 352 (1976) ........................................................................................ 5

*Dorsey v. U.S.*,
567 U.S. 260 (2012) ....................................................................................... 12

*Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*,
811 F. Supp. 2d 216 (D.D.C. 2011) ................................................................ 20

*Elser v. I.A.M. Nat. Pension Fund*,
579 F. Supp. 1375 (C.D. Cal. 1984) ....................................................... 23, 24, 26

*Everytown for Gun Safety Support Fund v.*
*Bureau of Alcohol, Tobacco, Firearms & Explosives*,
984 F.3d 30 (2d Cir. 2020) ......................................................................... *passim*

*Gannett Satellite Info. Network, LLC v. U.S. Dep't of Just.*,
2025 WL 416258 (D.D.C. Feb. 6, 2025) ...................................................... 3, 23

*Gonzalez v. Crosby*,
545 U.S. 524 (2005) ......................................................................................... 4

*Hall v. C.I.A.*,
437 F.3d 94 (D.C. Cir. 2006) .......................................................................... 22

*Hall v. Haws*,
861 F.3d 977 (9th Cir. 2017) .......................................................................... 25

*Hamdan v. U.S. D.O.J.*,
797 F.3d 759 (9th Cir. 2015) ........................................................................... 6

*Harrison v. PPG Industries, Inc.*,
446 U.S. 578 (1980) ....................................................................................... 19

*Henson v. Fid. Nat'l Fin., Inc.*,
943 F.3d 434 (9th Cir. 2019) .......................................................................... 24

*Horne v. Flores*,
557 U.S. 433 (2009) .......................................................................... 4, 20, 21, 24

*Humble Oil & Refining Co. v. American Oil Co.*,
405 F.2d 803 (8th Cir.1969) ........................................................................... 24

*Liljeberg v. Health Servs. Acquisition Corp.*,
486 U.S. 847 (1988) ....................................................................................... 20

*Ma v. Ashcroft*,
361 F.3d 553 (9th Cir.2004) .................................................................................. 17

*Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
2026 WL 143346 (D.D.C. Jan. 20, 2026) ............................................. 13, 14, 19

*Microsoft Corp. v. I4I Ltd. P'ship*,
564 U.S. 91 (2011) ................................................................................................ 16

*Minier v. Cent. Intel. Agency*,
88 F.3d 796 (9th Cir. 1996)........................................................................... 4, 9, 15

*N.L.R.B. v. Robbins Tire & Rubber Co.*,
437 U.S. 214 (1978) ................................................................................................ 6

*Pennsylvania v. Wheeling & Belmont Bridge Co.*
59 U.S. 421 (18 How.) (1855)................................................................... 22, 25, 26

*Phelps v. Alameida*,
569 F.3d 1120 (9th Cir. 2009)......................................................... 2, 4, 24, 25

*Radzanower v. Touche Ross & Co.*,
426 U.S. 148 (1976) .............................................................................................. 11

*Rufo* v. *Inmates of Suffolk County Jail*,
502 U.S. 367 (1992) .............................................................................................. 20

*Russello v. U.S.*,
464 U.S. 16 (1983) ................................................................................................ 13

*Shea v. Kerry*,
961 F. Supp. 2d 17, 29 n.3 (D.D.C. 2013), *aff'd,* 796 F.3d 42 (D.C. Cir. 2015).......................................................................................................................... 13

*Stokors S.A. v. Morrison*,
147 F.3d 759 (8th Cir. 1998)................................................................................. 23

*Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*,
364 U.S. 642 (1961) .............................................................................................. 26

*Twelve John Does v. District of Columbia*,
841 F.2d 1133 (D.C. Cir.1988).......................................................................... 21, 22

*U.S. v. Alpine Land & Reservoir Co.*,
984 F.2d 1047 (9th Cir. 1993)................................................................................. 4

*U.S. v. Melot*,
    712 F. App'x 719 (10th Cir. 2017) ............................................................21, 22

*United States v. Swift & Co.*,
    286 U.S. 106 (1932) .................................................................................... 21

*Whitman v. Am. Trucking Associations*,
    531 U.S. 457 (2001) .................................................................................... 19

**Statutes**

5 U.S.C.
    § 552(b)........................................................................................................ 6
    § 552(b)(3) .............................................................................................. 6, 12
    § 552(b)(3)(A)(i).......................................................................................... 5
    § 552(b)(3)(A)(ii) ........................................................................................ 5
    § 552(b)(3)(B)........................................................................................ 5, 10

34 U.S.C.
    § 8205 ................................................................................................*passim*
    § 8205(a)...................................................................................................... 8
    § 8205(b)............................................................................................*passim*
    § 10231 ............................................................................................1, 9, 16, 20
    § 10231(a) ..........................................................................................*passim*
    § 10231(d)................................................................................................. 16
    § 10281 ........................................................................................................ 8
    § 60105(a)................................................................................................. 15

**Rules**

Fed. R. Civ. P. 60(b) ..............................................................................*passim*

Fed. R. Civ. P. 60(b)(5) ..........................................................................*passim*

Fed. R. Civ. P. 60(b)(6) ..........................................................................*passim*

**Other Authorities**

113 Cong. Rec. H8047-49 (daily ed. Dec. 12, 2013) ............................................ 7

113 Cong. Rec. S6579-80 (daily ed. Dec. 10, 2014)............................................ 7

146 Cong. Rec. H6736-37 (daily ed. July 24, 2000)............................................ 6

155 Cong. Rec. S3175 (daily ed. Mar. 17, 2009)................................................. 6

National Defense Authorization Act for Fiscal Year 2026, Pub. L. No. 119-60, 139 Stat. 718 (2025) ........................................................................... *passim*

Plaintiffs Ethan Corey and The Appeal, Inc. respectfully submit this memorandum of law in opposition to the motion ("Mot.") (ECF No. 95) of Defendant U.S. Department of Justice's Office of Justice Programs ("Defendant" or "DOJ") for relief pursuant to Rule 60(b).

**INTRODUCTION**

The DOJ asks this Court to vacate its obligation under the Freedom of Information Act ("FOIA") to produce the Death in Custody Reporting Act ("DCRA") records Plaintiffs requested, based on the "plain reading" of two sentences in the National Defense Authorization Act for Fiscal Year 2026, Pub. L. 119-60, 139 Stat. 718 ("NDAA")—a 1,260-page document.  The DOJ's interpretation, however, both overcomplicates and oversimplifies the law, leading to absurd results.  Therefore, Plaintiffs emphatically oppose.

Notably, at the outset, Defendant's motion does not rely on changes to FOIA or DCRA, the controlling statutes.  Instead, its demand rests entirely and erroneously on Section 8205(b) of the NDAA, which amends Section 10231(a) of the Crime Control Act ("CCA")—a confidentiality provision for records "furnished under" Chapter 101 of the CCA.  Two courts have already rejected Section 10231's application to these records.  Nevertheless, Defendant argues that the new Section 10231(a) effectively prohibits *all* disclosures by OJP of *any* documents in its possession. Mot. at 7-8.  Apparently, Defendant believes Congress turned a public research and grant administration component into an impenetrable fortress,

1

protecting not only records collected after Section 8205's enactment, but also every record held by OJP under any law, rule, regulation, or delegation of authority since December 1979.  *Id.*  This interpretation, however, ignores DCRA itself, the purpose of the NDAA and of Section 8205, and Congress's decision not to include a citation to Exemption 3.  In short, neither the NDAA, Section 8205(b), nor Section 10231(a) is an exemption statute under FOIA.  And, even if they were, DCRA records are not covered by them.

Because Defendant relies on a gross misreading of the law, it has not satisfied the high standard for relief under Rule 60(b)(5) or 60(b)(6).  Relief cannot be granted here because Defendant has not shown i) that the order has a "prospective application," ii) that complying with FOIA is "no longer equitable," or iii) that these are "extraordinary circumstances" curing a "manifest injustice."  A change in law is not an automatic shortcut to relief.  Rather, the DOJ must show that a "clear and authoritative change in the governing law" applies to *this* case.  *Phelps v. Alameida*, 569 F.3d 1120, 1131-32, n.13 (9th Cir. 2009) (citing *Clifton v. Att'y Gen. of State of Cal.*, 997 F.2d 660, 664 n.5 (9th Cir. 1993)).  It has not.

The information this Court previously ordered the DOJ to release has never been more important for the public to receive.  Under DCRA, the DOJ collects the details of deaths occurring during nearly all interactions with law enforcement at the local, state, tribal, and federal levels.  The DOJ's strained analysis of the NDAA cannot serve to keep such information hidden from the public.

2

Case 5:22-cv-02111-WLH-SK    Document 100    Filed 03/20/26    Page 10 of 35    Page ID #:1221

**PROCEDURAL BACKGROUND**

Defendant seeks to withhold the remaining DCRA records pursuant to FOIA Exemption 3. But, two courts already found Exemptions 3, 6, and 7 did not justify such withholding.[1] *The Appeal, Inc. v. D.O.J.'s OJP*, No. 5:22-cv-02111, (C.D. Cal. Oct. 15, 2024), ECF No. 54 at 7-9; *see also Gannett Satellite Info. Network, LLC v. U.S. Dep't of Just.*, 2025 WL 416258, at *19 (D.D.C. Feb. 6, 2025). On summary judgment, this Court found that while Section 10231(a), which was last amended in 2006, was "the type of statute that invokes FOIA's Exemption 3," it did not apply because the records were "furnished under" DCRA, *not* Chapter 101. ECF No. 54 at 7. On that basis, the Court ordered production. *Id.* at 17-18.

**LEGAL STANDARDS**

F.R.C.P. Rules 60(b)(5) and 60(b))(6) state in relevant part that "the court may relieve a party…from a final judgment [or] order…for the following reasons: * * * (5) * * * applying [the judgment] prospectively is no longer equitable; or (6) any other reason that justifies relief." Movants must satisfy a high burden to merit relief. Here, Defendant must show the order has a "prospective application or effect" that is "no longer equitable" under Rule 60(b)(5). *Agostini v. Felton*, 521 U.S. 203, 215, 239 (1997); *see* Mot. at 4. Alternatively, Rule 60(b)(6) is used "sparingly…to prevent manifest injustice" and "only where extraordinary

---

[1] Defendant does not challenge the application of Exemptions 6 and 7, so it is not addressed here.

circumstances" are shown.  *A.C.L.U. of S. Cal. v. I.C.E.*, 347 F.R.D. 518, 525 (C.D. Cal. 2024) (citing *U.S. v. Alpine Land & Reservoir Co.*, 984 F.2d 1047, 1049 (9th Cir. 1993)).   The movant "bears the burden of establishing that changed circumstances warrant relief."  *Horne v. Flores*, 557 U.S. 433, 447 (2009); *see* Mot. 4-5.

To prevail based on a change in law, it must be "a clear and authoritative change in the governing law."  *Phelps*, 569 F.3d at 1131-32, n.13 (citing *Clifton*, 997 F.2d at 664 n.5).  "Intervening developments in the law by themselves rarely constitute the extraordinary circumstances required for relief…."  *Agostini,* 521 U.S. at 239; *see also Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).  And "Rule 60(b) relief is normally to be withheld where a party has made a deliberate choice not to pursue an appeal."  *Clifton*, 997 F.2d at 664 n.5.

Defendant purports to be prohibited from producing DCRA records under FOIA's Exemption 3. Mot. 5-7.  For Exemption 3 to apply, "a court must determine whether there is a statute within the scope of Exemption 3.  Then, it must determine whether the requested information falls within the scope of the statute."  *Minier v. Cent. Intel. Agency*, 88 F.3d 796, 801 (9th Cir. 1996) (citations omitted); *Ctr. for Investigative Reporting v. U.S. Dep't of Just.*, 14 F.4th 916, 926–27 ("*C.I.R v. D.O.J.*") (9th Cir. 2021).   Exemption 3 applies only if a statute requires nondisclosure "in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of

4

matters to be withheld." 5 U.S.C. § 552(b)(3)(A)(i) and (ii). Further, statutes enacted after 2009 must "specifically cite[] to this paragraph," *i.e.* § 552(b)(3)(B), to be an exemption statute. *Id.*

## ARGUMENT

Defendant's reliance on the NDAA, which is unrelated to DCRA, is misplaced. Section 8205 is not an exemption statute and certainly not as applied to DCRA. Thus, Rule 60(b) relief is unwarranted.

## I. THE NDAA DOES NOT PROHIBIT PRODUCTION OF DCRA RECORDS

### A. FOIA and DCRA, the Controlling Statutes, Mandate Disclosure[2]

This Court ordered production of the DCRA records pursuant to DCRA and FOIA, which were both enacted to increase government transparency and accountability. ECF No. 54 at 17-18. Disclosing DCRA data unquestionably achieves those goals.

Specifically, FOIA "'permit[s] access to official information long shielded from public view' and thereby 'pierce[s] the veil of administrative secrecy' that clouded the workings of federal agencies." *C.I.R. v. D.O.J.*, 14 F.4th at 922 (citing *Dep't of Air Force v. Rose*, 425 U.S. 352, 361 (1976)). "'Government transparency is critical' to ensure 'the people have the information needed to check public corruption, hold government leaders accountable, and elect leaders who will carry

---

[2] *See* ECF No. 44-1 at 2-13 for more information on DCRA and the CCA.

out their preferred policies.'" *Id.* (citing *Hamdan v. U.S. D.O.J.*, 797 F.3d 759, 769–70 (9th Cir. 2015)). In short, it is "'vital to the functioning of a democratic society.'" *Id.* (citing *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978)). To that end, agency records are presumptively available through FOIA and can only be withheld under narrow exemptions. 5 U.S.C. § 552(b). The 2009 OPEN FOIA Act's citation requirement "was a direct response to 'exemption creep,' whereby 'an alarming number of FOIA (b)(3) exemptions' were snuck into legislation 'to the detriment of the American public's right to know.'" *C.I.R. v. D.O.J.,* 14 F.4th at 931 (citing 155 Cong. Rec. S3175 (daily ed. Mar. 17, 2009) (stmt. of Sen. Leahy)).

DCRA, first enacted in 2000, was passed to determine the extent of the problem of suspicious or preventable deaths in custody after several reports caught Congress's attention. The data's collection and study were meant to "serve as a deterrent to future misconduct by wrongdoers who will know that someone will be monitoring their actions."[3] 146 Cong. Rec. H6736-37 (daily ed. July 24, 2000) (stmt. of Rep. Asa Hutchinson). DCRA required the Attorney General—not OJP—

---

[3] Rep. Robert Scott stated that "with no one looking at these deaths…we do not know whether there is any pattern or practice relating to such deaths nor whether there is any training needed among law enforcement officials which could limit such occurrences." *Id.* at H6737; *see also id.* at H6736-37 (stmt. of Rep. Hutchinson) ("we are one step closer to bringing a new level of accountability to our Nation's correctional institutions.").

6

to collect the data, and the Attorney General delegated the task to OJP's subcomponents.  *See* ECF No. 44-2 at 16.

DCRA 2000 expired in 2006, but the mission remained the same.  In a 2007 hearing to reauthorize DCRA, Benjamin Sedgewick, the Director of the Bureau of Justice Statistics (a subcomponent of OJP), testified that the information was publicly available in different forms.  *See* ECF No. 44-4, Charlton Decl. ISO SJ, Ex. X at 327-28; *see also id.* at 322 (testimony of the Director of International Citizens United for Rehabilitation of Errants).  When DCRA 2013 was passed, the sponsors reinforced that this "national resource" was meant to help "understand[] mortality in the criminal justice system" and "restor[e] some measure of trust in these communities."[4]  113 Cong. Rec. S6579-80 (daily ed. Dec. 10, 2014); *see also* 113 Cong. Rec. H8047-49 (daily ed. Dec. 12, 2013) (stmt. of Rep. Collins) (stmt. of Sen. Leahy).  This post-2009 version of DCRA does not reference Exemption 3.

Thus, under both FOIA and DCRA, it is clear that Congress never intended these records to be hidden away.

**B.      The NDAA and Section 8205(b) are Entirely Unrelated to DCRA**

The NDAA was enacted on December 18, 2025.  It "sets forth policies and authorities" for "Department of Defense programs and activities, military construction, and the national security programs of the Department of Energy" as

---

[4] One Senator remarked that it was "an important week for transparency," because the FOIA Improvement Act also passed the Senate.  *Id.* at S6580 (stmt. of Sen. Leahy).

7

well as "policies and authorities for the Department of State, the Coast Guard, and the Intelligence Community."[5]  As DCRA is not a defense-related matter, it is unsurprising that the NDAA does not cite to, mention, or otherwise address it.  The NDAA references the DOJ solely to inform how it interacts with the defense agencies to achieve the NDAA's objectives.  *See* NDAA at 139 Stat. 1624, 1938-41 (drones); *id.* 1840 (child trafficking); *id.* 1849-50 (Public Safety Officers' Benefits); 1886-87 (Ukraine War).

Nevertheless, Defendant now relies on Section 8205, "Honoring Our Fallen Heroes."  Section 8205 expands the Public Safety Officers' Benefits program, 34 U.S.C. § 10281 *et seq.* (CCA Chapter 101, Subsection XI), to cover first responders who die or become disabled by cancers contracted in the line of duty.  *See* NDAA at 139 Stat. 1846-50.[6]  Section 8205(a) amends definitions of qualifying officers and conditions for the program.  NDAA at 139 Stat. 1846-48.  Section 8205(b) amends Section 10231(a)—the Chapter 101 confidentiality provision—to protect that health information and establishes an effective date of December 27, 1979, when the provision was first enacted.

The NDAA changed Section 10231(a) as follows:

---

[5]  *See*  https://www.congress.gov/bill/119th-congress/senate-bill/1071  (Dec. 10, 2025).

[6] News Release, *Klobuchar and Cramer's Honoring Our Fallen Heroes Act Passes Senate,* (Oct. 10, 2025), at https://www.klobuchar.senate.gov/public/index.cfm/2025/10/klobuchar-and-cramer-s-honoring-our-fallen-heroes-act-passes-senate.

> No officer or employee of the Federal Government, and no recipient of assistance under the provisions of [Chapter 101][7] shall use or reveal any research or statistical information ~~furnished under this title by any person and identifiable to any specific private person~~ **furnished under any law to any component of the Office of Justice Programs, or furnished otherwise under [Chapter 101], by any entity or person, including any information identifiable to any specific private person,** for any purpose other than the purpose for which it was obtained in accordance with [Chapter 101]. Such information and copies thereof shall be immune from legal process, and shall not, without the consent of the ~~person furnishing such information~~ **entity or person furnishing such information or to whom such information pertains**, be admitted as evidence or used for any purpose in any action, suit, or other judicial, legislative, or administrative proceedings.

34 U.S.C. § 10231(a) ("Confidentiality of Information – Research Or Statistical Information; Immunity From Process; Prohibition Against Admission As Evidence Or Use In Any Proceedings").

**C.    Section 8205 is Not an Exemption Statute**

This Court has already found that Section 10231 is not applicable to the DCRA records.  ECF No. 54 at 17.  Even assuming the NDAA were somehow relevant, Section 8205 does not affect that analysis.  It does not cite Exemption 3 or amend Section 10231 to cite Exemption 3.  Therefore, it fails the first step of the inquiry.  *See Minier*, 88 F.3d at 801; *C.I.R. v. DOJ,* 14 F.4th at 927 ("must expressly cite to that subsection to constitute statutes of exemption").  Defendant acknowledges this, but argues that 1) the FOIA requirement simply does not apply here because Section 8205(b) has a retroactive application, and 2) Congress's

---

[7] *See* ECF No. 44-1 n.3, n.15.

"implied" will was for Exemption 3 to apply.  Mot. 6-8.  These arguments must be rejected.

### 1.    OPEN FOIA's citation requirement applies.

Defendant seems to argue that since the amendments to Section 10231(a) "shall take effect for all purposes as if enacted on December 27, 1979," Section 8205(b) was enacted in 1979 and, therefore, the citation requirement does not apply.  Mot. at 3.  To put it simply, that is not how it works.[8]  There is no time machine.  The NDAA and Section 8205 were undoubtedly enacted—or "made into law by authoritative act," Black's Law Dictionary, ENACT (12th ed. 2024)—in December 2025, triggering the requirement to cite to Exemption 3.  *See* NDAA at 139 Stat. 718; 5 § U.S.C. 552(b)(3)(B).  Indeed, Section 8205's plain language, "take effect *as if* enacted," is a dead giveaway that the statute was *not*, in fact, enacted in 1979.  Retroactivity regarding *which* data the provision covers does not change *when* the Act was enacted.

Under Ninth Circuit law, even if the new Section 10231(a) is considered separately, it too was "enacted" in 2025 when the provisions amending the statute were enacted.  *See C.I.R. v. D.O.J.,* 14 F.4th at 926–27.  In *C.I.R. v. D.O.J.*, the Court found that the 2010 Tiahrt Rider "impliedly repealed" earlier versions, and

---

[8] Plaintiffs also dispute that this action is "pending, before the Department of Justice or otherwise, as of the date of enactment of this Act."  NDAA at 139 Stat. 1849. This action was not pending in December 2025.  As Defendant states, "On July 28, 2025, this Court issued its Final Summary Judgment Order."  Mot. at 1.

its enactment was the operative date for purposes of Exemption 3. *Id.* at 927. Repeals by implication are appropriate in two cases: "(1) where provisions in the two acts are in irreconcilable conflict ....; and (2) [where] the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Id.*at 927-28 (citing *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 154 (1976)). "In either case, the intention of the legislature to repeal must be clear and manifest." *Id.*

The same analysis is warranted here. Like in *C.I.R.*, the old and new Section 10231(a) are "in irreconcilable conflict" because "a permissible disclosure under the [old Section] may or may not be permissible under the [new Section]. Or it may still be impermissible, but for a new reason entirely." *C.I.R. v. D.O.J.*, 14 F.4th at 930. The retroactive effect is further evidence that the new Section 10231(a) was "clearly intended…as a substitute" for the original provision. *See id.*; *see also Everytown for Gun Safety Support Fund v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 984 F.3d 30, 37 (2d Cir. 2020) (agreeing "that Congress impliedly repealed the Tiahrt Riders predating the OPEN FOIA Act 'by comprehensive revision'"). Therefore, both Section 8205 (enacted via the NDAA) and the new Section 10231(a) ("impliedly repeal[ing]" the prior one, *C.I.R. v. D.O.J.,* 14 F.4th at 928) were enacted in 2025, and the "magic words" apply. *See* Mot. at 7. Because there is no real question that the citation requirement applies, its omission is fatal. *C.I.R. v. D.O.J.,* 14 F.4th at 928.

11

**2.      Congress purposefully omitted the Exemption 3 citation.**

Nonetheless, thwarted by the mechanics of time, Defendant argues that the "will of Congress" should overrule FOIA's "magic words requirement."  Mot. at 8 (citing *Dorsey v. U.S.*, 567 U.S. 260, 274 (2012) (citation omitted) ("when an earlier Congress purports to impose an express-reference requirement…, courts must evaluate the intent of the later Congress and give full effect to 'the will of Congress as manifested either expressly or by necessary implication in a subsequent enactment.'"); *see also Everytown*, 984 F.3d at 34 ("an earlier statute 'cannot bind a later Congress,' … and Congress 'remains free to express any such intention either expressly or by implication as it chooses.'").  Plaintiffs do not dispute this principle of statutory interpretation.  However, while Defendant only speculates on Congress's will, its express will is clearly that Section 8205(b) and, thus, the new Section 10231(a) are *not* exemption statutes.

That Congress *did not* eschew the FOIA requirement when drafting and enacting the NDAA is evident on its face.  On multiple occasions, the NDAA refers to matters of transparency and privacy.[9]  And it specifically cites to Exemption 3 to provide for the nondisclosure of certain information.  *See, e.g.*, NDAA at 139 Stat. 1931 ("under section 552(b)(3)…no such information or documentary material [related to covered national security transactions] may be made public");

---

[9] *See, e.g.,* NDAA at 139 Stat. 1788, 1794 (related to sexual misconduct cases in the Coast Guard); *id.* at 1871 (related to anti-corruption programs in the Western Balkans); *id.* at 1737 (related to the Coast Guard reporting drug overdoses).

*id.* at 1917 (prohibiting disclosure of certain confidential information related to the South Pacific Tuna Treaty). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. U.S.*, 464 U.S. 16, 23 (1983) (citation omitted). Therefore, it is reasonable to conclude that Congress intended to comply with FOIA when enacting the NDAA and that it purposefully omitted the Exemption reference in Section 8205. It certainly would be unreasonable to surmise that, *only* for this Section, Congress's will would be manifested through silence. *See Shea v. Kerry*, 961 F. Supp. 2d 17, 29 n.3 (D.D.C. 2013) ("'[n]othing is to be added to what the text states or reasonably implies…. That is, a matter not covered is to be treated as not covered.") (citing Antonin Scalia & Brian A. Garner, Reading Law: The Interpretation Of Legal Texts 93–100 (2012)), *aff'd,* 796 F.3d 42 (D.C. Cir. 2015).

Defendant cites two cases to support its arguments, but those cases are based on different facts. Mot. at 8; *Everytown*, 984 F.3d at 37; *Mayor & City Council of Baltimore v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 2026 WL 143346, at *14 (D.D.C. Jan. 20, 2026). Like *C.I.R. v. D.O.J.*, both cases considered the Tiahrt Riders, which regulated the disclosure of firearms tracing data collected by the ATF. After a new rider was adopted in 2010 without the OPEN FOIA language, the courts looked to Congress's intentions to determine whether it was an exemption statute. Unlike here, Congress's intention to withhold that

13

information was supported by years of litigation and Congressional action. *Everytown*, 984 F.3d at 38-42; *Baltimore*, 2026 WL 143346, at *7-9. The first Rider, enacted in 2003, prohibited the use of funds for disclosures under FOIA and was passed in response to the Seventh Circuit finding that the data was not exempt from FOIA. *Everytown,* 984 F.3d at 34, 40-41. In 2004, the Rider was amended to state "that appropriated funds could not be used 'to disclose to the public the contents'" of the database. *Id.* at 35. The disclosure language was again strengthened in 2005 and remained through 2010. *Id.* The 2010 Rider was passed just two months after OPEN FOIA in that year's Appropriations Act[10] and was undoubtedly drafted before OPEN FOIA was effective law. *Id.* at 36. Based on this specific judicial and legislative history, both courts found that Congress intended to maintain nondisclosure rather than open the data to the public. *Id.* at 37; *Baltimore*, 2026 WL 143346, at *14.

Here, sidestepping both DCRA and this Court's prior rulings, Defendant has presented only its own interpretation of the statute as evidence that Congress "intended" Section 10231(a) to prohibit FOIA disclosures. This cannot suffice. The only reasonable interpretation is that Congress did not intend Section 8205 to block FOIA.

---

[10]   *See*   https://www.congress.gov/111/plaws/publ117/PLAW-111publ117.pdf (Dec. 16, 2009) at 123 Stat. 3128.

**D.    Even If Section 8205(b) is An Exemption Statute, DCRA Records Are Not Covered By It**

In any event, for the new Section 10231(a) to prohibit disclosure, Defendant must still show that "the requested information falls within the scope of the statute." *Minier*, 88 F.3d at 801.  Defendant argues that the phrase "furnished under any law to any component of the Office of Justice Programs, or furnished otherwise under [Chapter 101]" "eliminates any need to discern whether the information was furnished under the CCA or DCRA."  Mot. at 6.  This is incorrect.  In fact, because DCRA records were not furnished "under any law" or Chapter 101 to OJP and are disclosed "for the purposes for which they were obtained," Section 10231(a) still does not apply.

First, DCRA records were not "furnished under *any* law" to *OJP*.  Defendant has not and cannot identify a law mandating the collection of this data by OJP.  The only federal law that governs the reporting of deaths in custody is DCRA.  *See* ECF No. 54 at 8.  And DCRA mandates data collection by the *Attorney General*.  34 U.S.C. § 60105(a).  While other DOJ offices could reasonably serve as a repository for DCRA data, the Attorney General chose OJP.  However, discretionary delegation is not "law."  *See D.H.S. v. MacLean*, 574 U.S. 383, 395 (2015) ("when Congress used the phrase 'specifically prohibited by law' instead of 'specifically prohibited by law, rule, or regulation,' it meant to exclude rules and regulations").  In contrast, the Public Safety Officers' Benefits program data is submitted to the Director of the Bureau of Justice Assistance, an OJP subcomponent.  NDAA at 139

15

Stat. 1848.  And Section 10231(d) clearly distinguishes between the types of authority when it establishes fines for violating "any rule, regulation, or order" issued pursuant to Section 10231, as well as "any other penalty imposed by law."[11]

Defendant also ignores the restricting language in the second phrase: "furnished otherwise *under [Chapter 101]*."  *See* Mot. at 6 ("The amended statute now protects from disclosure all identifiable statistical information 'furnished otherwise' to the Office of Justice Programs.").  In doing so, the DOJ suggests that *any* information OJP possesses is exempt from FOIA.  But, in fact, there is no support for that reading.  Indeed, "the canon against superfluity" precludes it, because there is a "competing interpretation [that] gives effect 'to every clause and word of [the] statute.'"  *Microsoft Corp. v. I4I Ltd. P'ship*, 564 U.S. 91, 106 (2011).  Like in the old provision, requiring that the information was " furnished under Chapter 101" limits the information that can be withheld.  This Court has already determined that, while DCRA is in effect, its collection is not "furnished under Chapter 101."  ECF No. 54 at 7-8.  Therefore, DCRA records are not furnished to OJP "under any law" or "otherwise under Chapter 101."  *See* NDAA at 139 Stat. 1849.

---

[11] In reality, Congress's decision not to cite to Exemption 3 in the amended Section 10231 means that all DCRA records must be disclosed, including those "furnished" to OJP between DCRA authorizations.  Section 10231 now explicitly only pertains to records that are "furnished under any law" or "under [Chapter 101]."  NDAA at 139 Stat. 1849.  Neither the Attorney General's discretion nor voluntary compliance by law enforcement agencies fits that standard.  And without the Exemption 3 citation, the information is presumptively disclosable.

16

Furthermore, the statute's protection is limited to disclosures "other than the purpose for which it was obtained."  34 U.S.C. § 10231(a).  Even accepting the DOJ's reading, these documents were and are collected by OJP to fulfill the Attorney General's obligations under DCRA; and DCRA's purpose remains the same.  *See supra* Sec. I.A.  Production of DCRA records is well-within the "purpose for which [they were] obtained" and, thus, does not conflict with the statute's purported mandate.  ECF No. 54 at 7–9.

**E.      The DOJ's Reading is Absurd**

In pursuit of relief, Defendant has radically deconstructed these statutes, and the implied consequences are startling.  For this independent reason, this motion must be denied.[12]  *See Arizona State Bd. For Charter Schs. v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir. 2006) ("statutory interpretations which would produce absurd results are to be avoided." (citing *Ma v. Ashcroft,* 361 F.3d 553, 558 (9th Cir.2004)); *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 789 n.4 (2020) (Kavanaugh, J. dissenting) ("The absurdity canon is 'an implementation of (rather than ... an exception to) the ordinary meaning rule.'") (citation omitted).

Taken to its logical end, Defendant is arguing that, without deliberation or explanation, Congress used the Honoring Our Fallen Heroes provision to morph the OJP into an impenetrable fortress controlled by the Attorney General—not

---

[12] Affirming the DOJ's questionable statutory interpretation on a Rule 60(b) motion would set a dangerous precedent.  It should not be entertained when a matter has been heard and decided and especially without compelling, or any, evidence.

Congress. Further, the Attorney General's discretion would be tantamount to "law," and the Attorney General would be empowered to rewrite actual laws by simply ignoring vital, limiting statutory language—like "otherwise furnished *under Chapter 101*" and "for the purpose for which it was obtained." 34 U.S.C. § 10231(a). In practice, this means the Attorney General could prohibit disclosure of any record it wanted by routing it to OJP—even records of public interest, that do not contain sensitive information, that were voluntarily provided, that were directed by Congress to another DOJ office, or that were collected by OJP for public disclosure. This would apply not only prospectively but going back more than 46 years.[13] It would produce exactly the kind of executive-branch-controlled secrecy, unmoored from any congressional judgment, that the 1976 and 2009 amendments to Exemption 3 were designed to prevent. *See C.I.R. v. D.O.J.,* 14 F.4th at 931.

Beyond that, reinterpreting, amending, or appealing statutes in this manner quite obviously would create major conflicts in the law. Here, the DOJ's reading necessarily implies that the NDAA has overruled DCRA via its amendment of an entirely unrelated provision. This conflict would arise any time the Attorney General routed information to OJP in the absence of, or in spite of, a direct mandate from Congress.

---

[13] Many of the states and agencies required to report under DCRA regularly publish that information. ECF No. 44-1 at 37. Under the DOJ's reading, it is unclear whether that disclosure would be permissible.

18

Defendant's reading also eviscerates FOIA.  The misplaced reliance on *Everytown* and *Baltimore*, which were grounded in extensive legislative and judicial history, implies that any law without an Exemption 3 citation could be read to include one.  The omission of the citation would have the same effect as citing it.

The vast change in multiple laws that the DOJ asserts is based on only two sentences from a section expanding health benefits for first responders within a 1,260-page appropriations act.  The leap from protecting the Fallen Heroes' data to invalidating DCRA's transparency mandate and blocking access to any and all documents held by OJP is astounding.  Congress simply would not have hidden such a sweeping change in two sentences in an unrelated statute.  *See Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468  (2001) ("Congress…does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes."); *Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991) ("Congress' silence in this regard can be likened to the dog that did not bark."); *Harrison v. PPG Industries, Inc.,* 446 U.S. 578, 602 (1980) (Rehnquist, J., dissenting) ("where the construction of legislative language…makes so sweeping and so relatively unorthodox a change as that made here, I think judges as well as detectives may take into consideration the fact that a watchdog did not bark in the night").

On the other hand, the expanded protections that are evident on the face of the statute are limited and reasonable. The first responders' health data is protected from disclosure for purposes not related to the Honoring Our Fallen Heroes program. And FOIA remains intact. Documents that are explicitly protected by Section 10231 may be exempt or subject to the remaining FOIA exemptions, including Exemption 6, which protects against "clearly unwarranted invasions of privacy." Either way, as Congress intended, each inquiry would be evaluated on its own merits. Walling off OJP from the world is exactly why FOIA requires a citation to Exemption 3. *C.I.R. v. D.O.J.*, 14 F.4th at 931. Defendant should not be allowed to wiggle around it.

## II.      THESE FACTS DO NOT MERIT RELIEF UNDER RULE 60(B)

Because the judicial system cannot function without finality, reconsidering a resolved matter is only appropriate under limited circumstances. Rule 60(b) requires "'a significant change…in law'" such that it "renders continued enforcement 'detrimental to the public interest.'" *Horne*, 557 U.S. at 447 (modifying an injunction related to "institutional reform litigation") (citing *Rufo* v. *Inmates of Suffolk County Jail,* 502 U.S. 367, 384 (1992)).[14] Defendant warns that

---

[14] Relief under "Rule 60(b)(6) is only available when 'the motion ... is not premised on one of the grounds for relief enumerated in clauses (b)(1) through (b)(5).'" *Elec. Priv. Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 811 F. Supp. 2d 216, 231 (D.D.C. 2011) (citing *Liljeberg v. Health Servs. Acquisition Corp.,* 486 U.S. 847, 863, (1988)); *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 211 (2025) ("It covers 'any *other* reason' that justifies relief; that is, Rule 60(b)(6) provides only grounds for relief not already covered by the preceding five paragraphs."). Therefore, because

20

"'[i]f a party carries its burden of establishing that 'changed circumstances warrant relief,' a 'court abuses its discretion when it refuses to modify an injunction or consent decree in light of such changes.'" Mot. at 4 (citing *Horne*, 557 U.S. at 447). But Defendant has not carried its burden. It has failed to show that this Court's order has "prospective application" that is "no longer equitable" or that there are "extraordinary circumstances" curing a "manifest injustice." Therefore, the motion must be denied.

## A.    The Summary Judgment Order is Not Prospective

Rule 60(b)(5) applies "only to the extent that [the order] has 'prospective application.'" *Twelve John Does v. District of Columbia,* 841 F.2d 1133, 1138 (D.C. Cir.1988). This one does not.

A judgment has prospective application if it is "executory"[15] or if it "involve[s] the supervision of changing conduct or conditions and [is] thus provisional and tentative." *Id.* at 1138-39 (citing *United States v. Swift & Co.*, 286 U.S. 106, 114 (1932)). "[I]njunctions are 'usually executory'" because "they restrain or compel particular conduct; they are directed toward the future." *U.S. v. Melot*, 712 F.App'x 719, 720–21 (10th Cir. 2017) (citing *Twelve John Does,* 841 F.2d at 1139). However, the mere fact that "a court's action has continuing

Defendant uses the same grounds for relief in support of both rules, Rule 60(b)(6) cannot apply here.

[15] "Taking full effect at a future time." Black's Law Dictionary, EXECUTORY (12th ed. 2024).

21

consequences ... does not necessarily mean that it has 'prospective application.'" *Twelve John Does,* 841 F.2d at 1138.  For example, "[a] money judgment…simply remedies a past wrong; it isn't executory…," even if it has "some reverberations into the future" until satisfied.  *Melot,* 712 F. App'x at 720-21 (citing cases) (rejecting the accrual of interest on a money judgment as a "future changing condition") (citing *Twelve John Does*, 841 F.2d at 1138).  And having a "preclusive effect," like many final orders do, is also insufficient.  *Hall v. C.I.A.*, 437 F.3d 94, 101 (D.C. Cir. 2006) ("preclusive effects do not qualify as 'prospective application[s]' under Rule 60(b)(5)").[16]

Here, this order has no "prospective application."  It directs Defendant's behavior only as it relates to this case and functions primarily to remedy a past wrong, *i.e.* Defendant's failure to comply with Plaintiffs' FOIA requests.  The production itself does not require the court's supervision.  And any future intervention would be, like a money judgment, based only on Defendant's failure to satisfy its obligations.  Furthermore, that Defendant, almost six months later, still has not completed its production, or that collateral issues such as attorney's fees

---

[16] "*Pennsylvania v. Wheeling & Belmont Bridge Co.* 59 U.S. 421 (18 How.) (1855) "provides the definitive example of an executory decree." *Conservation Force v. Salazar*, 915 F. Supp. 2d 1, 4 (D.D.C. 2013).  There, the contested order required defendants to either elevate or demolish a bridge and, if demolished, forbid them from rebuilding it.  *Wheeling & Belmont Bridge Co.*, 59 U.S. at 430 (unlike damages, "the decree 'is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance.").

22

remain to be finalized, does not change this analysis. *Elser v. I.A.M. Nat. Pension Fund*, 579 F. Supp. 1375, 1382 (C.D. Cal. 1984) (declining to apply (b)(5), where attorney's fees remained outstanding as they are "not pertinent to the merits of the case"); *Colon v. Berryhill*, 2019 WL 5305469, at *5 (W.D.N.Y. Oct. 21, 2019) ("judgment may be 'prospective' to extent that [judgment debtor] has failed to pay it in timely manner, it is nevertheless a final order and is not 'prospective' for purposes of" the rule) (citing *Stokors S.A. v. Morrison*, 147 F.3d 759, 762 (8th Cir. 1998) and 12 Federal Practice § 60.47[1][b] & n.3.1).

Indeed, if FOIA decisions had a "prospective application," Defendant would either be obligated to continue producing records to Plaintiffs as they are created in the future, or it would be bound by this decision in all cases. It is not. Once production is complete, Plaintiffs will be required to make a new FOIA request for any additional documents. And the rulings by this Court and the *Gannett* court, which reached independent conclusions on the application of Exemption 6, show that the decisions may have persuasive value but are not indefinitely binding. *See Gannett*, 2025 WL 416258, at *19 (finding Exemption 6 does not apply to the DCRA records and ordering unredacted production). Because Defendant seeks to vacate a run-of-the-mill final order, Rule 60(b)(5) does not apply.

**B.      Defendant Has Not Demonstrated That Complying with The Order Is "No Longer Equitable" Under Rule 60(b)(5) or That The NDAA's Enactment Constitutes "Extraordinary Circumstances" or "Manifest Injustice" Under Rule 60(b)(6)**

Even if this were a prospective application, Defendant has not shown that compliance with the order is "no longer equitable" under Rule 60(b)(5), *Horne*, 557 U.S. at 447, or that enactment of the NDAA is an "extraordinary circumstance" or creates a "manifest injustice" under Rule 60(b)(6). *Henson v. Fid. Nat'l Fin., Inc.*, 943 F.3d 434, at 446–47 & n.6 (9th Cir. 2019). A change in law is not automatically a "hardship." To show the order is "no longer equitable," Defendant must identify "clear and authoritative" changes in "governing law," *Phelps*, 569 F.3d at 1131-32 & n.12, and "must establish that it is suffering hardship so extreme and unexpected that it constitutes oppression." *Elser*, 579 F. Supp. at 1382 (citing *Humble Oil & Refining Co. v. American Oil Co.,* 405 F.2d 803, 813 (8th Cir. 1969)).

Under Rule 60(b)(6), "a change in the controlling law can—but does not always—provide a sufficient basis for granting relief." *Henson,* 943 F.3d at 444–45. Courts must make a "case-by-case inquiry" to assess the circumstances and "should not in rote fashion rely on the conclusion from a different context that any particular type of change in the law favors or disfavors relief." *Id.* at 446–47. Instead, courts "should weigh whether the specific nature of the change in the law … makes granting relief more or less justified under all of the circumstances, and should support its conclusion with a reasoned explanation grounded in the equitable considerations raised by the case at bench." *Id.* There is no "rigid or exhaustive

24

checklist," but relevant factors include "interest in finality" and "degree of connection between the extraordinary circumstance and the decision for which reconsideration is sought." *Hall v. Haws*, 861 F.3d 977, 987-88 (9th Cir. 2017) (granting Rule 60(b)(6) where petitioner's "habeas petition was dismissed without reaching the merits of his claim, while his co-defendant was granted habeas relief on the same claim based on the same error from the same trial") (citing *Phelps,* 569 F.3d at 1135–40); *see also BLOM Bank*, 605 U.S. at 206 ("clarification of the test … did not 'constitute extraordinary circumstances,' particularly when plaintiffs were unlikely to succeed under that standard"). "'[A] more compelling showing of inequity or hardship is necessary to warrant relief under subsection (6) than under subsection (5)." *Conservation Force*, 915 F. Supp. 2d at 5–6. Here, the movant "failed to demonstrate inequity or hardship that satisfies Rule 60(b)(5), let alone Rule 60(b)(6)." *Id.*

While Defendant's authorities properly state this law, they do not require the Court to grant its motion. *See* Mot. at 5. Indeed, where 60(b)(5) was applied, there was no question that the governing law had changed, requiring the underlying injunction or consent order to be modified. In *Wheeling & Belmont Bridge Co.*, defendants moved for relief after the federal government passed a law designating the bridge in question as a postal route and requiring the defendant "to have and maintain it at its present site and elevation" and "regulate such navigation so as not to interfere with it." Thus, complying with the court's prior order to demolish the

25

bridge was, of course, a hardship. 59 U.S. at 430. In *Sys. Fed'n No. 91, Ry. Emp. Dep't, AFL-CIO v. Wright*, an order interpreting union policy under the Railway Labor Act was modified under Rule 60(b)(5) when the *same act* was amended to permit the conduct the court had early proscribed. 364 U.S. 642, 644–45 (1961). In *California Dep't of Soc. Servs. v. Leavitt*, a law created a new eligibility standard for child services investigations, "remov[ing] the legal basis for the continuing application of the court's Order." 523 F.3d 1025, 1032 (9th Cir. 2008) (citing *Agostini,* 521 U.S. at 237). In *Agostini*, the Court found that the Establishment Clause jurisprudence had significantly changed and undermined the premises of the original consent order. Complying with the prior order would have indefinitely prevented children in parochial schools from receiving government assistance. 521 U.S. at 237.

But, again, a change in the controlling law is not always enough. In *Elser v. I.A.M. Nat. Pension Fund*, based on "the enactment of new federal and state interest rate statutes which establish[ed] higher interest rates," plaintiffs attempted to modify a court order that set the interest rate for their future pensions below these new standards. 579 F. Supp. at 1382. The court denied their motion, because "such discomfort is not the sort of extreme hardship which justifies a modification of a final judgment." *Id.*

Here, not only has Defendant failed to identify a "clear and authoritative" change in the *controlling* law, *see supra* Sec. I.B–I.D, but it has also made no effort

26

to explain what part of the order was "no longer equitable" or identify a hardship. Instead, Defendant relies solely on its presumption that the NDAA somehow applied to this case. It does not. Thus, at most, the "hardship" is that Defendant must produce these records pursuant to FOIA. *See* Mot. at 1 ("seek[ing] relief from its production obligations") ("harms stemming from the disclosures…are irreparable"). But, complying with its statutory duty under FOIA—especially for records collected for the express purpose of increasing government accountability and transparency—is not a matter of Defendant's "equity." It can scarcely be considered a hardship, and certainly not "oppression."

Similarly, there is no way to determine whether compliance is manifestly unjust where the party did "not explain what the potential manifest injustice is or what 'extraordinary circumstances' require the Court to reconsider its Order." *Am. C.L. Union Found. of S. California*, 347 F.R.D. at 528. In *A.C.L.U. Union Found.,* a FOIA case, the court denied the agency's 60(b) motion as it had provided no explanation for a "basis by which [the court] can agree with DHS OIG that its Motion is necessary to prevent manifest injustice." *Id.* The same result is warranted here.

Two sentences in a national defense act, in a section that provides additional health benefits to our Fallen Heroes and that does not mention DCRA or FOIA are not "extraordinary circumstances" or "governing law." They should not be applied to this case as if they were. *See California by & through Becerra v. U.S. Env't Prot.*

27

*Agency*, 978 F.3d 708, 713 (9th Cir. 2020) ("[T]he liberty of considering all cases in an equitable light must not be indulged too far, lest thereby we destroy all law…."). The Court should not entertain this "Hail Mary!" attempt to avoid completing production. The records must be produced.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion for relief from final judgment and order Defendant to immediately resume production of responsive records.

DATED: March 20, 2026              DAVIS WRIGHT TREMAINE LLP


                                   By: */s/ Thomas R. Burke*
                                       Thomas R. Burke
                                       *Attorneys for Plaintiffs*


## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1

The undersigned, counsel of record for Plaintiffs certifies that this brief contains 6,343 words, which complies with the word limit of L.R. 11-6.1.


                                   */s/ Thomas R. Burke*
                                       Thomas R. Burke